IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN CIVIL LIBERTIES UNION,
et al.,

                    Plaintiff,

          v.

CENTRAL INTELLIGENCE AGENCY, et
al.

                    Defendants.

Case No. 1:16-CV-01256 (EGS)

DECLARATION OF ANTOINETTE B. SHINER,
INFORMATION REVIEW OFFICER FOR THE
LITIGATION INFORMATION REVIEW OFFICE
CENTRAL INTELLIGENCE AGENCY

I, ANTOINETTE B. SHINER, hereby declare and state:

I.   **INTRODUCTION**

1.    I currently serve as the Information Review Officer
("IRO") for the Litigation Information Review Office ("LIRO") at
the Central Intelligence Agency ("CIA" or "Agency"). I have held
this position since 19 January 2016 and have worked in the
information review and release field since 2000.

2.    I am a senior CIA official and hold original
classification authority at the TOP SECRET level under written
delegation of authority pursuant to section 1.3(c) of Executive
Order 13526, 75 Fed. Reg. 707 (Jan. 5, 2010). This means that I
am authorized to assess the current, proper classification of
CIA information, up to and including TOP SECRET information,

1

based on the classification criteria of Executive Order 13526 and applicable regulations.

3. Among other things, I am responsible for the classification review of CIA documents and information that may be the subject of court proceedings or public requests for information under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.

4. Through the exercise of my official duties, I have become familiar with this civil action and the underlying FOIA request. I make the following statements based upon my personal knowledge and information made available to me in my official capacity. I am submitting this declaration, in support of the Motion for Summary Judgment to be filed by the United States Department of Justice in this proceeding.

II. **BACKGROUND**

5. This matter concerns a FOIA request from Plaintiffs to CIA dated 3 March 2016 seeking expedited processing for the following records:

- Policies, standards, and guidance related to prepublication review;

- Final legal analyses of past, present, or proposed prepublication-review requirements;

- Final decisions of officials conducting prepublication reviews;

- Correspondence with former agency employees (or their representatives) who have submitted materials for prepublication review since January 1, 2009;

- Statistics relating to prepublication review, including but not limited to information documenting the total numbers of individuals who have submitted works for review, the total number of works submitted for review, the total number of submissions approved without change, the total number of submissions returned with proposed redactions or other modifications, the total number of pending submissions, and the duration of prepublication review processes;

- Titles, subject matters, and dates of works submitted for prepublication review; and

- Information about enforcement proceedings instituted or contemplated on the basis of violations of prepublication-review requirements, including breach-of-contract actions, agency administrative proceedings, and civil or criminal litigation.

A true and correct copy of the FOIA Request is attached as Exhibit "A".

6.   By letter dated 11 March 2016, the CIA acknowledged receipt of Plaintiffs' FOIA request, assigned it the reference number F-2016-01216, and denied Plaintiffs' request for expedited processing. The letter advised the Plaintiffs of their right to appeal this determination. A true and correct copy of this letter is attached as Exhibit "B".

7.   By letter dated 8 April 2016, Plaintiffs appealed the CIA's denial of expedited processing. A true and correct copy of this letter is attached as Exhibit "C".

8.   By letter dated 15 April 2016, the CIA acknowledged receipt of plaintiff's 8 April 2016 appeal letter, and reaffirmed CIA's denial of plaintiffs' request for expedited processing. A true and correct copy of this letter is attached as Exhibit "D".

9.   On 4 April 2016, Plaintiffs called the CIA's FOIA public phone line requesting a status update on their 3 march 2016 FOIA request. By letter dated 16 June 2016, CIA acknowledged the phone call, explained that the request was still in process, and directed the Plaintiffs to the CIA's two prior response letters. A true and correct copy of this letter is attached as Exhibit "E".

10.   On 21 June 2016, Plaintiffs filed a complaint in this Court naming CIA as a defendant.

11.   CIA identified and searched all CIA components that were likely to possess records responsive to Plaintiff's FOIA request and used search methods that were reasonably likely to identify all responsive CIA records.

12.   By letter dated 7 April 2017, the CIA made a first production responsive to Plaintiffs' FOIA request. Nine documents were released in part and seven documents were withheld in full. A true and correct copy of these letters are attached as Exhibit "F".

13.   By letter dated 23 June 2017, the CIA made a second, and final, production responsive to the FOIA Request to Plaintiffs. Fifty-nine documents were released in part and three documents were withheld in full. A true and correct copy of these letters are attached as Exhibit "G".

14.   I understand that Plaintiffs have indicated their intent to challenge a single redaction in one document which protects the names of several CIA employees. Therefore, only that redaction is addressed by this declaration. The single redaction was made pursuant to FOIA Exemptions (b)(1), (b)(3), and (b)(6).[1]

---

[1] In the initial production to Plaintiffs the document was marked only with FOIA Exemptions (b)(3) and (b)(6). However, as explained further below, CIA reviewed the document pursuant to Plaintiffs' informal questions hoping to

## III. **APPLICABLE FOIA EXEMPTIONS**

### A. **Exemption (b)(1)**

15. Exemption (b)(1) provides that the FOIA does not require the production of records that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Here, the Exemption (b)(1) withholdings in the documents at issue satisfy the procedural and the substantive requirements of Executive Order 13526, which governs classification. *See* E.O. 13526 § 1.1(a), § 1.4(c).

16. As an original classification authority, I have determined that the information at issue in this case is currently and properly classified, and appropriately withheld from disclosure. Additionally, this information is owned by, and is under the control of, the U.S. Government. As described below, the information falls under classification category § 1.4(c) of the Executive Order because it concerns

---

prevent litigation, and noticed that the document contained classified information. LIRO then sought approval to mark the document "SECRET//NOFORN" to reflect the current and proper classification level. Approval was granted after determining that the document had been improperly marked, and should be properly marked SECRET//NOFORN in accordance with E.O. 13256 § 1.7(d). A corrected copy of the document with the proper portion marks and the updated FOIA exemptions was provided to Plaintiffs via email from CIA's counsel on 12 August 2019.

"intelligence activities (including covert action), [or] intelligence sources or methods." Further, its unauthorized disclosure could reasonably be expected to result in damage to national security.  None of the information at issue has been classified in order to conceal violations of law, inefficiency, or administrative error; prevent embarrassment to a person, organization, or agency; restrain competition; or prevent or delay the release of information that does not require protection in the interests of national security.  Further, the classified information is properly marked in accordance with § 1.6 of the Executive Order. To the greatest extent possible, I have attempted to explain on the public record the nature of the information subject to Exemption (b)(1).

17.   The redaction made pursuant to Exemption (b)(1) protects the name of a covert Agency officer.  In order to carry out the mission of gathering and disseminating intelligence information, the CIA places many Agency officers under cover to protect the fact, nature, and details of the CIA's interest in foreign activities and the intelligence sources and methods employed to assist those activities. Revealing the identity of a covert officer puts the officer and his or her family in jeopardy, exposes the cover provider to unwarranted risk, and degrades the effectiveness of current and future intelligence activities.  Compromise of an officer's cover can also allow

7

hostile intelligence services and terrorist organizations to determine the locations in which the officer has worked and the people with whom the officer has met.  Disclosing the identity of a covert officer can thus jeopardize anyone -- even innocent individuals -- with whom the officer had contact.

18.  In sum, I have determined that information withheld pursuant to Exemption (b)(1) has been properly withheld because its disclosure could reasonably be expected to damage national security.

**B.    Exemption (b)(3)**

19.  Exemption (b)(3) protects information that is specifically exempted from disclosure by statute. To justify withholding under Exemption (b)(3), a statute must either (i) require that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (ii) establish particular criteria for withholding or refer to particular types of matters to be withheld.  5 U.S.C. § 552(b)(3).

20.  Section 6 of the Central Intelligence Agency Act of 1949, as amended, 50 U.S.C. § 3507 (the "CIA Act"), provides that the CIA shall be exempted from the provisions of "any other law" (in this case, FOIA) which requires the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency.  Accordingly, under Section 6, the CIA is exempt from

disclosing information relating to employees' names and personal identifiers. The CIA Act therefore constitutes a federal statute that "establish[es] particular criteria for withholding or refer[s] to particular types of matters to be withheld" and is well-established as a qualifying withholding statute under Exemption (b)(3). 5 U.S.C. § 552(b)(3). The redaction at issue contains the names of personnel currently or formerly employed by the CIA, the disclosure of which the CIA Act expressly prohibits.

21. Although withholdings pursuant to the CIA Act do not require the CIA to identify or describe the damage to national security that reasonably could be expected to result from their unauthorized disclosure, the release of this information is reasonably likely to significantly impair the CIA's ability to carry out its core mission of gathering and analyzing intelligence.

**C. Exemption (b)(6)**

22. I have also determined that certain information must be withheld pursuant to FOIA Exemption (b)(6). 5 U.S.C. § 552(b)(6) exempts from disclosure: "personnel and medical files and similar files when the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy."

23.   Therefore, in addition to withholding the names of CIA officers pursuant to the CIA Act, the CIA has also asserted Exemption (b)(6) to withhold names of CIA personnel contained in the redaction at issue. The persons mentioned in this document maintain a strong privacy interest in this information. Revealing the individuals could subject them to harassment or unwanted contact by the media.

24.   Conversely, plaintiff has not set forth and, I am unable to identify, any qualifying public interest that would be served by such a disclosure.  The release of the identities of these individuals would not serve the core purpose of the FOIA -- informing the public about the operations or activities of the government.  Accordingly, because there is no qualifying public interest in disclosure, I have determined that the release of this information would constitute a clearly unwarranted invasion of these individuals' personal privacy.

## IV.   SEGREGABILITY

25.   In evaluating the responsive document, the CIA conducted a line-by-line review and released all reasonably segregable non-exempt information.  In this case, much of the withheld information is protected by several, overlapping FOIA exemptions.  After reviewing the record at issue, I have determined that no additional information can be released without jeopardizing classified material, individuals' personal

privacy, and/or other protected information that falls within the scope of one or more FOIA exemptions.

26.   Therefore, for the reasons set forth above, the document is redacted in part pursuant to Exemptions (b)(1), (b)(3), and (b)(6).

*     *     *

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed this 12ᵗʰ day of September 2019.


Antoinette B. Shiner
Information Review Officer
Litigation Information Review Office
Central Intelligence Agency

# Exhibit A

C06552597                    UNCLASSIFIED

LEGAL DEPARTMENT

**ACLU**
AMERICAN CIVIL LIBERTIES UNION FOUNDATION

F-2016-01216

MAR 0 8 2016

March 3, 2016

Headquarters Air Force / AAII (FOIA)
1000 Air Force Pentagon
Washington, D.C. 20330-1000
Fax: 571-256-3109
Email: usaf.pentagon.saf-aa-mbx.haf-foia-workflow@mail.mil

Department of the Army
Freedom of Information Act Office Suite 144
7701 Telegraph Road, Room 150
Alexandria, VA 22315-3905
Fax: 703-428-6522
Email: usarmy.belvoir.hqda-oaa-aha.mbx.rmda-foia@mail.mil

Commandant (CG-611)
Attn: FOIA Officer
U.S. Coast Guard Stop 7710
2703 Martin Luther King, Jr. Ave., SE
Washington, D.C. 20593-7710
Email: EFOIA@uscg.mil

Defense Intelligence Agency
Attn: DAN-1A (FOIA)
200 MacDill Blvd.
Washington, D.C. 20340-5100
Fax: 301-394-5356
Email: foia@dodiis.mil

Department of Energy
FOIA Requester Service Center
1000 Independence Ave., SW
Mail Stop MA-90
Washington, D.C. 20585
Fax: 202-586-0575
Email: FOIA-Central@hq.doe.gov

Department of Homeland Security
Office of Intelligence & Analysis
FOIA Officer / Requester Service Center Contact
Washington, D.C. 20528
Fax: 202-612-1936
Email: I&AFOIA@hq.dhs.gov

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
NATIONAL OFFICE
125 BROAD STREET, 18TH FL
NEW YORK, NY 10004-2400
T/212 549.2500
WWW.ACLU.ORG

OFFICERS AND DIRECTORS
SUSAN N. HERMAN
PRESIDENT

ANTHONY D. ROMERO
EXECUTIVE DIRECTOR

ROBERT B. REMAR
TREASURER

C06532397                     UNCLASSIFIED

FOIA Request
Department of the Treasury
Washington, D.C. 20220
Fax: 202-622-3895

Chief, Freedom of Information / Privacy Act Unit, FOI / Records Management
   Section
Drug Enforcement Administration
8701 Morrissette Drive
Springfield, VA 22152
Fax: 202-307-8556
Email: dea.foia@usdoj.gov

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

Head, FOIA/PA
Headquarters U.S. Marine Corps (ARSF), FOIA/PA Section (ARSF)
3000 Marine Corps Pentagon
Washington, D.C. 20350-3000
Fax: 703-614-6287
Email: hqmcfoia@usmc.mil

FOIA Contact
Mail Stop S01-EGM
7500 GEOINT Drive
Springfield, VA 22150
Fax: 571-557-3130
Email: foianga@nga.mil

FOIA Contact
Attn: OCIO / Information Review and Release Group
14675 Lee Road
Chantilly, VA 20151-1715
Fax: 703-227-9198

FOIA Contact, Chief of Naval Operations
DNS-36
2000 Navy Pentagon
Washington, D.C. 20350-2000
Fax: 202-685-6580

Federal Bureau of Investigation
FOI/PA Request
Record / Information Dissemination Section
170 Marcel Drive
Winchester, VA 22602-4843
Fax: 540-868-4391

2

UNCLASSIFIED

Email: foiparequest@ic.fbi.gov

Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505
Fax: 703-613-3007

Office of Freedom of Information
Department of Defense
1155 Defense Pentagon, Room 2C757
Washington, D.C. 20301-1155
Fax: 571-372-0500

National Security Agency
FOIA/PA Office (DJ4)
9800 Savage Road, Suite 6248
Ft. George G. Meade, MD 20755-6248
Fax: 443-479-3612

Director, Information Management Division
Office of the Director of National Intelligence
Washington, D.C. 20511
Fax: 703-874-8910
Email: dni-foia@dni.gov

Office of Information Programs and Services
A/GIS/IPS/RL
U.S. Department of State
Washington, D. C. 20522-8100
Fax: 202-261-8579

FOIA/PA Mail Referral Unit
Justice Management Division
Department of Justice
Room 115
LOC Building
Washington, DC 20530-0001
Fax: 202-261-8579

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

3

Re:   **Request Under Freedom of Information Act
(Expedited Processing Requested)**

To whom it may concern:

The American Civil Liberties Union and the American Civil Liberties Union Foundation (together, the "ACLU")[1] submit this Freedom of Information Act ("FOIA") request (the "Request") for records pertaining to the use of prepublication review processes in Intelligence Community agencies.

## I. Background

For many decades, the government has required a vast number of its employees to submit any works—written and oral, fiction and non-fiction—that discuss their government service for security review before public release.[2] In recent years, the government's "prepublication review" processes have grown increasingly far-reaching and burdensome, resulting in escalating public and congressional concern about their legality and fairness.[3] The details of these processes are not governed by any uniform executive-branch policy. Instead, they are determined by individual agencies' regulations, which have varying standards and requirements.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[1] The American Civil Liberties Union Foundation is a 501(c)(3) organization that provides legal representation free of charge to individuals and organizations in civil rights and civil liberties cases, educates the public about the civil rights and civil liberties implications of pending and proposed state and federal legislation, provides analyses of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators. The American Civil Liberties Union is a separate non-profit, 501(c)(4) membership organization that educates the public about the civil liberties implications of pending and proposed state and federal legislation, provides analysis of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators.

[2] *See* Jack Goldsmith & Oona Hathaway, *The Government's Prepublication Review Process is Broken*, Wash. Post, Dec. 25, 2015, http://wapo.st/1YTgg1j; Jack Goldsmith & Oona Hathaway, *The Scope of the Prepublication Review Problem, and What to Do About It*, Lawfare, Dec. 30, 2015, https://www.lawfareblog.com/scope-prepublication-review-problem-and-what-do-about-it; Oona Hathaway & Jack Goldsmith, *Path Dependence and the Prepublication Review Process*, Just Security, Dec. 28, 2015, https://www.justsecurity.org/28552/path-dependence-prepublication-review-process; Oona Hathaway & Jack Goldsmith, *More Problems with Prepublication Review*, Just Security, Dec. 28, 2015, https://www.justsecurity.org/28548/problems-prepublication-review/; Kevin Casey, Note, *Till Death Do Us Part: Prepublication Review in the Intelligence Community*, 115 Colum. L. Rev. 417 (2015).

[3] *See, e.g.*, Michael V. Hayden, *Playing to the Edge: American Intelligence in the Age of Terror* 426 (2016) ("Since all of my writing has to be cleared for classification, I dutifully submitted the piece and was told that no articles about drones would be cleared *regardless of the content*. I actually think that's a misuse of the review process, but beyond that, it's just plain stupid."); *see also id.* at xii, 121–22.

4

There is very little publicly available information regarding these policies, or the bodies within agencies that administer them.[4] What little information is public, however, makes clear that prepublication-review criteria are frequently overbroad, and that the process is both riddled with delays and susceptible to abuse by the officials overseeing it. These known features of the process raise serious questions about whether prepublication review, as currently constituted, violates authors' First Amendment rights to speak and the public's First Amendment right to receive important information about the government.[5]

In an effort to supplement the public record with information about agencies' prepublication review policies and practices, and to identify their potential impacts on free-speech rights and government transparency and accountability, the ACLU seeks such information through this FOIA request.

## II. Requested Records

The ACLU seeks the release of records that are or contain the following:

(1)    policies, standards, and guidance related to prepublication review;

(2)    final legal analyses of past, present, or proposed prepublication-review requirements;

(3)    final decisions of officials conducting prepublication reviews;

(4)    correspondence with former agency employees (or their representatives) who have submitted materials for prepublication review since January 1, 2009;

(5)    statistics relating to prepublication review, including but not limited to information documenting the total numbers of individuals who have submitted works for review, the total number of works submitted for review, the total number of submissions approved without change, the total number of submissions returned with proposed redactions or other

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[4] The authorities within agencies that administer prepublication review standards appear to have varying names. For example, the Central Intelligence Agency refers to a "Publications Review Board"; the Federal Bureau of Investigation refers to a "Prepublication Review Office"; and the National Security Agency refers to a "Prepublication Review Authority." *See* FBI, Prepublication Review Policy Guide (June 4, 2015), http://1.usa.gov/1LBt63I; NSA, Policy 1-30 ¶ 5(h) (Oct. 28, 2014), http://1.usa.gov/1LBt9fL; John Hollister Hedley, *Reviewing the Work of CIA Authors: Secrets, Free Speech, and Fig Leaves*, CIA.gov (May 8, 2007), http://1.usa.gov/1LBteAg.

[5] *See, e.g.*, Steven Aftergood, *Fixing Pre-Publication Review: What Should Be Done?*, Just Security, Jan 15, 2016, https://www.justsecurity.org/28827/fixing-pre-publication-review-done (suggesting that the process "has become dysfunctional, overstepping legitimate national security boundaries and infringing on freedom of speech as well as the public's right to know").

modifications, the total number of pending submissions, and the duration of prepublication review processes.

(6)  titles, subject matters, and dates of works submitted for prepublication review; and

(7)  information about enforcement proceedings instituted or contemplated on the basis of violations of prepublication-review requirements, including breach-of-contract actions, agency administrative proceedings, and civil or criminal litigation.

With respect to the form of production, *see* 5 U.S.C. § 552(a)(3)(B), the ACLU requests that responsive electronic records be provided electronically in their native file format, if possible. Alternatively, the ACLU requests that the records be provided electronically in a text-searchable, static-image format (PDF), in the best image quality in the agency's possession, and that the records be provided in separate, Bates-stamped files.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

## III. Application for Expedited Processing

The ACLU requests expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E).[6] There is a "compelling need" for these records, as defined in the statute, because the information requested is "urgent[ly]" needed by an organization primarily engaged in disseminating information "to inform the public about actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

A.  *The ACLU is an organization primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.*

The ACLU is "primarily engaged in disseminating information" within the meaning of the statute. 5 U.S.C. § 552(a)(6)(E)(v)(II). Obtaining information about government activity, analyzing that information, and widely publishing and disseminating that information to the press and public are critical and substantial components of the ACLU's work and are among its primary activities. *See ACLU v. DOJ*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information").[7]

---

[6] *See also* 6 C.F.R. § 5.5(d); 10 C.F.R. § 1004.5(d)(6); 22 C.F.R. § 171.12(b); 28 C.F.R. § 16.5(e); 31 C.F.R. § 1.5(e); 32 C.F.R. §§ 1700.12, 1900.34(c).

[7] Courts have found that the ACLU as well as other organizations with similar missions that engage in information-dissemination activities similar to the ACLU are "primarily engaged in

6

The ACLU regularly publishes a newsletter that reports on and analyzes civil liberties-related current events. The newsletter is disseminated to approximately 450,000 people. The ACLU also publishes a bi-weekly electronic newsletter, which is distributed to subscribers (both ACLU members and non-members) by email. The electronic newsletter is disseminated to approximately 300,000 people. Both of these newsletters often include descriptions and analysis of information obtained through FOIA requests.

The ACLU also regularly issues press releases to call attention to documents obtained through FOIA requests, as well as other breaking news,[8] and ACLU attorneys are interviewed frequently for news stories about documents released through ACLU FOIA requests.[9]

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

disseminating information." *See, e.g., Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005); *ACLU*, 321 F. Supp. 2d at 29 n.5; *Elec. Privacy Info. Ctr. v. DOD*, 241 F. Supp. 2d 5, 11 (D.D.C. 2003).

[8] *See, e.g.*, Press Release, American Civil Liberties Union, U.S. Releases Targeted Killing Memo in Response to Long-Running ACLU Lawsuit (June 23, 2014), https://www.aclu.org/national-security/us-releases-targeted-killing-memo-response-long-running-aclu-lawsuit; Press Release, American Civil Liberties Union, Justice Department White Paper Details Rationale for Targeted Killing of Americans (Feb. 4, 2013), https://www.aclu.org/national-security/justice-department-white-paper-details-rationale-targeted-killing-americans; Press Release, American Civil Liberties Union, Documents Show FBI Monitored Bay Area Occupy Movement (Sept. 14, 2012), https://www.aclu.org/news/documents-show-fbi-monitored-bay-area-occupy-movement-insidebayareacom; Press Release, American Civil Liberties Union, FOIA Documents Show FBI Using "Mosque Outreach" for Intelligence Gathering (Mar. 27, 2012), http://www.aclu.org/national-security/foia-documents-show-fbi-using-mosque-outreach-intelligence-gathering; Press Release, American Civil Liberties Union, FOIA Documents Show FBI Illegally Collecting Intelligence Under Guise of "Community Outreach" (Dec. 1, 2011), https://www.aclu.org/news/foia-documents-show-fbi-illegally-collecting-intelligence-under-guise-community-outreach; Press Release, American Civil Liberties Union, FOIA Documents from FBI Show Unconstitutional Racial Profiling (Oct. 20, 2011), http://www.aclu.org/national-security/foia-documents-fbi-show-unconstitutional-racial-profiling; Press Release, American Civil Liberties Union, Documents Obtained by ACLU Show Sexual Abuse of Immigration Detainees is Widespread National Problem (Oct. 19, 2011), http://www.aclu.org/immigrants-rights-prisoners-rights-prisoners-rights/documents-obtained-aclu-show-sexual-abuse; Press Release, American Civil Liberties Union, ACLU Lawsuit Seeks Information from FBI on Nationwide System for Collecting "Suspicious Activity" Information (Aug. 25, 2011), https://www.aclu.org/national-security/aclu-lawsuit-seeks-information-fbi-nationwide-system-collecting-suspicious; Press Release, American Civil Liberties Union, New Evidence of Abuse at Bagram Underscores Need for Full Disclosure About Prison, Says ACLU (June 24, 2009), http://www.aclu.org/ national-security/new-evidence-abuse-bagram-underscores-need-full-disclosure-about-prison-says-aclu.

[9] *See, e.g.*, Brad Knickerbocker, *ACLU: FBI Guilty of "Industrial Scale" Racial Profiling*, The Christian Science Monitor, Oct. 21, 2011, http://www.csmonitor.com/USA/Justice/2011/1021/ACLU-FBI-guilty-of-industrial-scale-racial-profiling; Joshua E.S. Phillips, *Inside the Detainee Abuse Task Force*, The Nation, May 13, 2011, http://www.thenation.com/article/inside-detainee-abuse-task-force/ (quoting ACLU staff attorney Alexander Abdo); Scott Shane & Benjamin Weiser, *Dossier Shows Push for More Attacks After 9/11*, N.Y. Times, Apr.

7

Similarly, the ACLU publishes reports about government conduct and civil liberties issues based on its analysis of information derived from various sources, including information obtained from the government through FOIA requests. This material is broadly circulated to the public and widely available to everyone for no cost or, sometimes, for a small fee. Since 2011 alone, ACLU national projects have published and disseminated dozens of reports, many of which include a description and analysis of government documents obtained through FOIA requests.[10] The ACLU also regularly publishes books, "know your rights" materials, fact sheets, and educational brochures and pamphlets designed to educate the public about civil liberties issues and government policies that implicate civil rights and liberties.

The ACLU publishes a widely-read blog where original editorial content reporting on and analyzing civil rights and civil liberties news is posted daily. *See* http://www.aclu.org/blog. The ACLU creates and disseminates original editorial and educational content on civil rights and civil liberties news through multi-media projects, including videos, podcasts, and interactive features. *See* http://www.aclu.org/multimedia. The ACLU also publishes, analyzes, and disseminates information through its heavily visited website, www.aclu.org. The website addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

25, 2011, http://nyti.ms/ty47ZA (quoting ACLU project director Hina Shamsi); Eric Lichtblau, *Court Revives Lawsuit Over Government Surveillance*, N.Y. Times, Mar. 21, 2011, http://nyti.ms/tgFpkd (quoting ACLU deputy legal director Jameel Jaffer).

[10] *See, e.g.*, ACLU, FBI Releases Details of 'Zero-Day' Exploit Decisionmaking Process (June 26, 2015), https://www.aclu.org/blog/free-future/fbi-releases-details-zero-day-exploit-decisionmaking-process; ACLU, ACLU Eye on the FBI: Documents Reveal Lack of Privacy Safeguards and Guidance in Government's "Suspicious Activity Report" Systems (Oct. 29, 2013), https://www.aclu.org/aclu-eye-fbi-documents-reveal-lack-privacy-safeguards-and-guidance-governments-suspicious-activity-0; ACLU, Unleashed and Unaccountable: The FBI's Unchecked Abuse of Authority (Sept. 2013), https://www.aclu.org/unleashed-and-unaccountable-fbis-unchecked-abuse-authority; Yale Law School and ACLU, Victims of Complacency: The Ongoing Trafficking and Abuse of Third Country Nationals by U.S. Government Contractors (June 2012), https://www.aclu.org/sites/default/files/field_document/hrp_traffickingreport_web_0.pdf; Human Rights Watch and ACLU, Deportation by Default: Mental Disability, Unfair Hearings, and Indefinite Detention in the US Immigration System (July 2010), https://www.aclu.org/files/assets/usdeportation0710_0.pdf; ACLU, Reclaiming Patriotism: A Call to Reconsider the Patriot Act (March 2009), https://www.aclu.org/files/pdfs/safefree/patriot_report_20090310.pdf; ACLU, The Excluded: Ideological Exclusion and the War on Ideas (Oct. 2007), https://www.aclu.org/sites/default/files/field_document/the_excluded_report.pdf; ACLU, History Repeated: The Dangers of Domestic Spying by Federal Law Enforcement (May 2007), https://www.aclu.org/sites/default/files/field_document/asset_upload_file893_29902.pdf; ACLU, No Real Threat: The Pentagon's Secret Database on Peaceful Protest (Jan. 2007), https://www.aclu.org/report/no-real-threat-pentagons-secret-database-peaceful-protest; ACLU, Unpatriotic Acts: The FBI's Power to Rifle Through Your Records and Personal Belongings Without Telling You (July 2003), http://www.aclu.org/FilesPDFs/spies_report.pdf.

8

CU6532397   UNCLASSIFIED

thousands of documents relating to the issues on which the ACLU is focused. The ACLU's website also serves as a clearinghouse for news about ACLU cases, as well as analysis about case developments, and an archive of case-related documents. Through these pages, and with respect to each specific civil liberties issue, the ACLU provides the public with educational material, recent news, analyses of relevant Congressional or executive branch action, government documents obtained through FOIA, and further in-depth analytic and educational multi-media features.

The ACLU website includes many features on information obtained through the FOIA.[11] For example, the ACLU's "Predator Drones FOIA" webpage, https://www.aclu.org/national-security/predator-drones-foia, contains commentary about the ACLU's FOIA request, press releases, analysis of the FOIA documents, numerous blog posts on the issue, documents related to litigation over the FOIA request, frequently asked questions about targeted killing, and links to the documents themselves. Similarly, the ACLU maintains an online "Torture Database," a compilation of over 100,000 pages of FOIA documents that allows researchers and the public to conduct sophisticated searches of FOIA documents relating to government policies on rendition, detention, and interrogation.[12]

The ACLU has also published a number of charts and explanatory materials that collect, summarize, and analyze information it has obtained through FOIA. For example, through compilation and analysis of information gathered from various sources—including information obtained from the government through FOIA—the ACLU created an original chart that provides the public and news media with a comprehensive summary of index of Bush-era Office of Legal Counsel memos relating to interrogation, detention, rendition, and surveillance.[13] Similarly, the ACLU produced a summary of documents released in response to a FOIA request related to the FISA Amendments Act[14]; a chart of original statistics about the Defense Department's use of National

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[11] *See, e.g.*, https://www.aclu.org/blog/free-future/fbi-releases-details-zero-day-exploit-decisionmaking-process; https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights; http://www.aclu.org/national-security/predator-drone-foia; http://www.aclu.org/national-security/anwar-al-awlaki-foia-request; https://www.aclu.org/cases/aclu-v-department-defense; http://www.aclu.org/mappingthefbi; https://www.aclu.org/cases/bagram-foia; https://www.aclu.org/national-security/csrt-foia; http://www.aclu.org/safefree/nsaspying/30022res20060207.html; https://www.aclu.org/patriot-foia; http://www.aclu.org/spyfiles; http://www.aclu.org/safefree/nationalsecurityletters/32140res 20071011.html; https://www.aclu.org/national-security/ideological-exclusion.

[12] http://www.torturedatabase.org. *See also* https://www.aclu.org/national-security/aclu-v-department-defense.

[13] https://www.aclu.org/sites/default/files/pdfs/safefree/olcmemos_2009_0305.pdf.

[14] https://www.aclu.org/files/pdfs/natsec/faafoia20101129/20101129Summary.pdf.

9

Security Letters based on its own analysis of records obtained through FOIA[15]; and an analysis of documents obtained through FOIA about FBI surveillance flights over Baltimore.[16]

The ACLU plans to analyze, publish, and disseminate to the public the information gathered through this Request. The records requested are not sought for commercial use and the requesters plan to disseminate the information disclosed as a result of this Request to the public at no cost.

B.      *The records sought are urgently needed to inform the public about actual or alleged government activity.*

These records are urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II).[17] Specifically, the requested records relate to government agencies' prepublication review processes. As discussed in Part I, *supra*, the lawfulness and effectiveness of government agencies' prepublication review processes—and the related problem of overclassification of government information[18]—are the subject of widespread public controversy and media attention.[19] The records sought relate to a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence.[20]

<span style="float:left">AMERICAN CIVIL LIBERTIES<br>UNION FOUNDATION</span>

Given the foregoing, the ACLU has satisfied the requirements for expedited processing of this Request.

## IV. Application for Waiver or Limitation of Fees

The ACLU requests a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and because disclosure is "likely to contribute significantly to

---

[15] https://www.aclu.org/sites/default/files/field_document/nsl_stats.pdf.

[16] https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights.

[17] *See also* 6 C.F.R. § 5.5(d)(ii); 10 C.F.R. § 1004.5(d)(6); 22 C.F.R. § 171.12(b)(2); 28 C.F.R. § 16.5(e)(ii); 31 C.F.R. § 1.5(e)(2)(ii); 32 C.F.R. §§ 1700.12(c)(2), 1900.34(c)(2).

[18] *See, e.g.*, Steven Lee Myers & Matt Apuzzo, *As Presidential Campaign Unfolds, So Do Inquiries Into Clinton's Emails*, N.Y. Times, Mar. 2, 2016, http://nyti.ms/1LBvur2; Abbe David Lowell, *The Broken System of Classifying Government Documents*, N.Y. Times, Feb. 29, 2016, http://nyti.ms/1LBvnMc.

[19] *See supra* notes 2, 3, and 5, and accompanying text.

[20] *See id.*

UNCLASSIFIED

UNCLASSIFIED

public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).[21]

As discussed above, news accounts underscore the substantial public interest in the records sought through this Request. Given the ongoing and widespread media attention to this issue, the records sought will significantly contribute to public understanding of an issue of profound public importance. Because little specific information about the government's prepublication-review process is publicly available, the records sought are certain to contribute significantly to the public's understanding of the law, policies, and process being applied by government agencies in their reviews of authors' works.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

The ACLU is not filing this Request to further its commercial interest. As described above, any information disclosed by the ACLU as a result of this FOIA Request will be available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." (quotation marks omitted)).

The ACLU also requests a waiver of search fees on the grounds that the ACLU qualifies as a "representative[] of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). The ACLU meets the statutory and regulatory definitions of a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)[22]; *see also Nat'l Sec. Archive v. DOD*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA); *Serv. Women's Action Network v. DOD*, 888 F. Supp. 2d 282 (D. Conn. 2012) (requesters, including ACLU, were representatives of the news media and thus qualified for fee waivers for FOIA requests to the Department of Defense and Department of Veterans Affairs); *ACLU of Wash. v. DOJ*, No. C09–0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011) (finding that the ACLU of Washington is an entity that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a

---

[21] *See also* 6 C.F.R. § 5.11(k); 10 C.F.R. § 1004.9(a)(8); 22 C.F.R. § 171.17; 28 C.F.R. § 16.10(k); 31 C.F.R. § 1.7(b)-(d); 32 C.F.R. §§ 1700.6(b), 1900.13(b).

[22] *See also* 6 C.F.R. § 5.11(b)(6), (d)(1), (k)(2)(iii), (k)(3)(ii); 10 C.F.R. § 1004.9(a)(8), (b)(3); 22 C.F.R. § 171.15(c); 28 C.F.R. § 16.10(b)(6), (c)(1)(i), (d)(1); 31 C.F.R. § 1.7(a)(3); 32 C.F.R. §§ 1700.6(i)(2), 1900.13(i)(2).

11

distinct work, and distributes that work to an audience"); *ACLU*, 321 F. Supp. 2d at 30 n.5 (finding non-profit public interest group to be "primarily engaged in disseminating information"). The ACLU is therefore a "representative of the news media" for the same reasons it is "primarily engaged in the dissemination of information."

Furthermore, courts have found other organizations whose mission, function, publishing, and public education activities are similar in kind to the ACLU's to be "representatives of the news media" as well. *See, e.g., Cause of Action v. IRS*, No. 13-0920, 2015 WL 5120863 (D.C. Cir. Aug. 28, 2015); *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 10–15 (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. DOJ*, 133 F. Supp. 2d 52, 53–54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).[23]

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

On account of these factors, fees associated with responding to FOIA requests are regularly waived for the ACLU as a "representative of the news media."[24] As was true in those instances, the ACLU meets the requirements for a fee waiver here.

---

[23] Courts have found these organizations to be "representatives of the news media" even though they engage in litigation and lobbying activities beyond their dissemination of information / public education activities. *See, e.g., Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d 5; *Nat'l Sec. Archive*, 880 F.2d at 1387; *see also Leadership Conference on Civil Rights*, 404 F. Supp. 2d at 260; *Judicial Watch, Inc.*, 133 F. Supp. 2d at 53-54.

[24] In April 2013, the National Security Division of the DOJ granted a fee-waiver request with respect to a request for documents relating to the FISA Amendments Act. Also in April 2013, the DOJ granted a fee-waiver request regarding a FOIA request for documents related to "national security letters" issued under the Electronic Communications Privacy Act. In August 2013, the FBI granted the fee-waiver request related to the same FOIA request issued to the DOJ. In June 2011, the DOJ National Security Division granted a fee waiver to the ACLU with respect to a request for documents relating to the interpretation and implementation of a section of the PATRIOT Act. In October 2010, the Department of the Navy granted a fee waiver to the ACLU with respect to a request for documents regarding the deaths of detainees in U.S. custody. In January 2009, the CIA granted a fee waiver with respect to the same request. In March 2009, the State Department granted a fee waiver to the ACLU with regard to a FOIA request for documents relating to the detention, interrogation, treatment, or prosecution of suspected terrorists. Likewise, in December 2008, the Department of Justice granted the ACLU a fee waiver with respect to the same request. In November 2006, the Department of Health and Human Services granted a fee waiver to the ACLU with regard to a FOIA request submitted in November of 2006. In May 2005, the U.S. Department of Commerce granted a fee waiver to the ACLU with respect to its request for information regarding the radio-frequency identification chips in United States passports. In March 2005, the Department of State granted a fee waiver to the ACLU on a request regarding the use of immigration laws to exclude prominent non-citizen scholars and intellectuals from the country because of their political views, statements, or associations. In addition, the Department of Defense did not charge the ACLU fees associated with FOIA requests submitted by the ACLU in April 2007, June 2006, February 2006, and October 2003. The DOJ did not charge the ACLU fees associated with FOIA requests submitted

12

\*      \*      \*

Pursuant to applicable statutes and regulations, the ACLU expects a determination regarding expedited processing within 10 days. *See* 5 U.S.C. § 552(a)(6)(E)(ii); 6 C.F.R. § 5.5(d)(4) (Department of Homeland Security); 10 C.F.R. § 1004.5(d)(7) (Department of Energy); 22 C.F.R. § 171.12(b) (State Department); 28 C.F.R. § 16.5(e) (Department of Justice); 31 C.F.R. § 1.5(e)(4) (Treasury Department); 32 C.F.R. §§ 1700.12(b) (Department of Defense); *id.* § 1900.34(c) (Central Intelligence Agency).

If the Request is denied in whole or in part, the ACLU asks that you justify all deletions by reference to specific exemptions to FOIA. The ACLU expects the release of all segregable portions of otherwise exempt material. The ACLU reserves the right to appeal a decision to withhold any information or deny a waiver of fees.

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**

Thank you for your prompt attention to this matter. Please furnish the applicable records to:

Benjamin Good
American Civil Liberties Union
125 Broad Street—18th Floor
New York, NY 10004
T: 212.549.2500
F: 212.549.2654
bgood@aclu.org

---

by the ACLU in November 2007, December 2005, and December 2004. Finally, three separate agencies—the Federal Bureau of Investigation, the Office of Intelligence Policy and Review, and the DOJ Office of Information and Privacy—did not charge the ACLU fees associated with a FOIA request submitted by the ACLU in August 2002.

13

UNCLASSIFIED

I affirm that the information provided supporting the request for expedited processing is true and correct to the best of my knowledge and belief. *See* 5 U.S.C. § 552(a)(6)(E)(vi).

Respectfully,

Benjamin Good
American Civil Liberties Union
    Foundation
125 Broad Street—18th Floor
New York, NY 10004
T: 212.549.2500
F: 212.549.2654
bgood@aclu.org

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

14

UNCLASSIFIED

100% Recycled fiber
80% Post-Consumer

Visit **ups.com®** or call **1-800-PICK-UPS®** (1-800-742-5877)
to schedule a pickup or find a drop off location near you.

**Domestic Shipments**
· To qualify for the Letter rate, UPS Express Envelopes may only contain correspondence, urgent documents, and/or electronic media, and must weigh 8 oz. or less. UPS Express Envelopes containing items other than those listed or weighing more than 8

**International Shipments**
· The UPS Express Envelope may be us value. Certain countries consider elec ups.com/importexport to verify if you

· To qualify for the Letter rate, the UPS UPS Express Envelopes weighing mor

**Note:** Express Envelopes are not recom containing sensitive personal informati or cash equivalent.

Use this envelope with the ship or inkjet printer on plain pap

**Window ENV**

https://www.campusship.ups.com/cship/create?ActionOriginPair=default__PrintWindowPage&key=label/WindowB&y=pg=htmldoc=en_US&instr=A&doc=ship...

BEN WIZNER
2125492500 2530
ACLU2
125 BROAD ST 18THFLOOR
NEW YORK NY 100042400

0.0 LBS     LTR          1 OF 1

SHIP TO:
INFORMATION AND PRIVACY COORDINATOR
CENTRAL INTELLIGENCE AGENCY
CENTRAL INTELLIGENCE AGENCY

1 CIA

WASHINGTON DC 20505

P: 4        S: ORANGE   I: 4
**427B - 1300**                    ☐
1Z1490E0139181   4344      1500
HUSDL4H      HDLBC3S8      MAR 07 04:10:58 2016
US 2003    HIP 18.9.3    294505

UPS NEXT DAY AIR SAVER        **1P**
TRACKING #: 1Z 149 0E0 13 9181 4344

BILLING: P/P

Department: NATIONAL SECURITY
Case/Accounting Code: 99999        CS 78.0.22   WNINV50 72.0A 01/2016

Insert shipping documen
under window from this
Do not use this envelope for:

# Exhibit B

Central Intelligence Agency



Washington, D.C. 20505

11 March 2016

Mr. Benjamin Good
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004

Reference:  F-2016-01216

Dear Mr. Good:

On 8 March 2016, the office of the Information and Privacy Coordinator received your
3 March 2016 Freedom of Information Act (FOIA) request, submitted on behalf of the American Civil
Liberties Union Foundation, for **"records pertaining to the use of prepublication review processes
in Intelligence Community agencies."**  Specifically, you are requesting **"the release of records that
are or contain the following:**

1. **policies, standards, and guidance related to prepublication review;**
2. **final legal analyses of past, present, or proposed prepublication-review
   requirements;**
3. **final decisions of officials conducting prepublication reviews;**
4. **correspondence with former agency employees (or their representatives) who have
   submitted materials for prepublication review since January 1, 2009;**
5. **statistics relating to prepublication review, including but not limited to information
   documenting the total numbers of individuals who have submitted works for review,
   the total number of submissions approved without change, the total number of
   submissions returned with proposed redactions or other modifications, the total
   number of pending submissions, and the duration of prepublication review
   processes.**
6. **titles, subject matters, and dates of works submitted for prepublication review; and**
7. **information about enforcement proceedings instituted or contemplated on the basis
   of violations of prepublication-review requirements, including breach-of-contract
   actions, agency administrative proceedings, and civil or criminal litigation."**

We have assigned your request the reference number above.  Please use this number when
corresponding so that we can identify it easily.

You have requested expedited processing.  We handle all requests in the order we receive
them; that is, "first-in, first-out."  We make exceptions to this rule only when a requester established a
compelling need in accordance with the FOIA, 5 U.S.C. § 552, as amended.  Your request does not
demonstrate a "compelling need" and, therefore, we deny your request for expedited processing.  You
may appeal this decision, in my care, within 45 days from the date of this letter.  Should you choose to
appeal the denial of your request for expedited processing, you are encouraged to provide an
explanation supporting your appeal.

Our officers will review your request and will advise you should they encounter any problems or if they cannot begin the search without additional information.  Unless you object, we will limit our search to CIA-originated records up to and including the date the Agency starts its search.

Sincerely,

*Michael Lavergne*

Michael Lavergne
Information and Privacy Coordinator

# Exhibit C

LEGAL DEPARTMENT



April 8, 2016

Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505

*Via UPS*

**Re:** **FREEDOM OF INFORMATION ACT APPEAL /**
**FOIA CASE NO. F-2016-01216**

To Whom It May Concern:

The American Civil Liberties Union and the American Civil
Liberties Union Foundation (together, the "ACLU") write to appeal the
Central Intelligence Agency ("CIA") interim response to Freedom of
Information Act ("FOIA") Request No. F-2016-01216 (the "Request,"
attached as "Exhibit A"). The Request seeks records pertaining to the use of
prepublication review processes.

In a letter dated March 11, 2016 (the "Interim Response," attached as
"Exhibit B"), the CIA denied the ACLU's request for expedited processing.
The ACLU hereby appeals from this decision.[1]

\* \* \*

As explained in detail in the Request, there is a "compelling need"
for the requested records, as defined in the statute and regulations, because
the records are urgently needed by an organization primarily engaged in
disseminating information in order to inform the public about actual or
alleged government activity. 5 U.S.C. § 552(a)(6)(E)(v); 32 C.F.R.
§ 1900.34(c)(2). Expedited processing is therefore warranted.[2]

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
LEGAL DEPARTMENT
NATIONAL OFFICE
125 BROAD STREET, 18TH F
NEW YORK, NY 10004 2400
T/212.549 7500
F/212.549.265
WWW.ACLU.ORG

OFFICERS AND DIRECTORS
SUSAN N. HERMAN
*PRESIDENT*

ANTHONY D. ROMERO
*EXECUTIVE DIRECTOR*

RICHARD ZACKS
*TREASURER*

---

[1] The CIA has not responded to the ACLU's requests for a waiver of all
fees pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and a waiver of search fees pursuant to
5 U.S.C. § 552(a)(4)(A)(ii)(II). The ACLU reserves the right to appeal any adverse
determination on its fee waiver requests at such time as the agency expressly
addresses these requests. To the extent the CIA's failure to address the ACLU's fee
waiver requests in its interim response constitutes a denial of those requests, the
ACLU appeals from any such denials. For the reasons explained in the Request, a
fee waiver is warranted in this case. *See* Request at 10–13.

[2] As of April 8, 2016, at least one agency—the National Geospatial-
Intelligence Agency—has granted expedited processing of an identical FOIA
request.

APR 1 3 2016

The ACLU is "primarily engaged in disseminating information" because it "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience." *ACLU v. DOJ*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004); *see also Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005) (finding an organization that, like the ACLU, "disseminates information regarding civil rights and voting rights to educate the public, promote[s] effective civil rights laws, and ensure[s] their enforcement" was "primarily engaged in disseminating information"); Request at 6–10 (explaining in detail the ACLU's extensive information-dissemination activities, which include publishing information obtained through FOIA requests).

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

There is, moreover, an urgent need for the information sought through the Request. The requested records pertain to the CIA's prepublication review process, which appears to affect not just the thousands of government employees who must submit publications for review each year,[3] but also the countless Americans who seek to read these publications and thereby learn about the operations of their government. Due to its increasing burdens on the speech rights of current and former government employees and their audiences, prepublication review has been the subject of recent widespread public controversy and media attention. *See, e.g.*, Jack Goldsmith & Oona Hathaway, *The Government's Prepublication Review Process Is Broken*, Wash. Post, Dec. 25, 2015, http://wapo.st/1 YTgg1j.[4] Little, however, is publicly known about how the prepublication review process actually works. *See* Jack Goldsmith, *ACLU Takes First Step*

---

[3] For example, records provided in partial response to an identical FOIA request directed to the Office of the Director of National Intelligence ("ODNI") indicate that in Fiscal Year 2015, approximately 2,700 works were submitted to ODNI for prepublication review by approximately 900 individuals. *See* ODNI, Prepub Stats for FY 2015 (attached as "Exhibit C").

[4] *See also* Steven Aftergood, *Fixing Pre-Publication Review: What Should Be Done?*, Just Security, Jan. 15, 2016, https://www.justsecurity.org/28827/fixing-pre-publication-review-done; Oona Hathaway & Jack Goldsmith, *The Scope of the Prepublication Review Problem, and What to Do About It*, Lawfare, Dec. 30, 2015, https://www.justsecurity.org/28585/scope-prepublication-review-problem/; Oona Hathaway & Jack Goldsmith, *Path Dependence and the Prepublication Review Process*, Just Security, Dec. 28, 2015, https://www.justsecurity.org/28552/path-dependence-prepublication-review-process/; Oona Hathaway & Jack Goldsmith, *More Problems with Prepublication Review*, Just Security, Dec. 28, 2015, https://www.justsecurity.org/28548/problems-prepublication-review; Kevin Casey, Note, *Till Death Do Us Part: Prepublication Review in the Intelligence Community*, 115 Colum. L. Rev. 417 (2015); Michael V. Hayden, *Playing to the Edge: American Intelligence in the Age of Terror* 426 (2016).

*Towards Prepublication Review Reform*, Lawfare, Mar. 11, 2016, https://www.lawfareblog.com/aclu-takes-first-step-towards-prepublication-review-reform. Delaying a response to the Request will therefore deprive the American public of an urgent and compelling interest in understanding the operations and activities of the government.

\*       \*       \*

For the reasons explained above, as well as those set forth in the Request, the CIA's decision to deny the ACLU's request for expedited processing was in error. The CIA should grant expedited processing and promptly process the Request.

Thank you for your attention to this matter. Please furnish all further correspondence to:

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

Benjamin Good
American Civil Liberties Union
125 Broad Street—18th Floor
New York, NY 10004
T: 212.549.2500
F: 212.549.2654

I affirm that the information provided supporting the request for expedited processing is true and correct to the best of my knowledge and belief.

Sincerely,

Benjamin Good
American Civil Liberties Union
125 Broad Street—18th Floor
New York, NY 10004
T: 212.549.2500
F: 212.549.2654
bgood@aclu.org

Exhibit A

LEGAL DEPARTMENT



March 3, 2016

Headquarters Air Force / AAII (FOIA)
1000 Air Force Pentagon
Washington, D.C. 20330-1000
Fax: 571-256-3109
Email: usaf.pentagon.saf-aa-mbx.haf-foia-workflow@mail.mil

Department of the Army
Freedom of Information Act Office Suite 144
7701 Telegraph Road, Room 150
Alexandria, VA 22315-3905
Fax: 703-428-6522
Email: usarmy.belvoir.hqda-oaa-aha.mbx.rmda-foia@mail.mil

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
NATIONAL OFFICE
125 BROAD STREET, 18TH FL.
NEW YORK, NY 10004-2400
T/212.549.2500
WWW.ACLU.ORG

OFFICERS AND DIRECTORS
SUSAN N. HERMAN
PRESIDENT

ANTHONY D. ROMERO
EXECUTIVE DIRECTOR

ROBERT B. REMAR
TREASURER

Commandant (CG-611)
Attn: FOIA Officer
U.S. Coast Guard Stop 7710
2703 Martin Luther King, Jr. Ave., SE
Washington, D.C. 20593-7710
Email: EFOIA@uscg.mil

Defense Intelligence Agency
Attn: DAN-1A (FOIA)
200 MacDill Blvd.
Washington, D.C. 20340-5100
Fax: 301-394-5356
Email: foia@dodiis.mil

Department of Energy
FOIA Requester Service Center
1000 Independence Ave., SW
Mail Stop MA-90
Washington, D.C. 20585
Fax: 202-586-0575
Email: FOIA-Central@hq.doe.gov

Department of Homeland Security
Office of Intelligence & Analysis
FOIA Officer / Requester Service Center Contact
Washington, D.C. 20528
Fax: 202-612-1936
Email: I&AFOIA@hq.dhs.gov

FOIA Request
Department of the Treasury
Washington, D.C. 20220
Fax: 202-622-3895

Chief, Freedom of Information / Privacy Act Unit, FOI / Records Management
  Section
Drug Enforcement Administration
8701 Morrissette Drive
Springfield, VA 22152
Fax: 202-307-8556
Email: dea.foia@usdoj.gov

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

Head, FOIA/PA
Headquarters U.S. Marine Corps (ARSF), FOIA/PA Section (ARSF)
3000 Marine Corps Pentagon
Washington, D.C. 20350-3000
Fax: 703-614-6287
Email: hqmcfoia@usmc.mil

FOIA Contact
Mail Stop S01-EGM
7500 GEOINT Drive
Springfield, VA 22150
Fax: 571-557-3130
Email: foianga@nga.mil

FOIA Contact
Attn: OCIO / Information Review and Release Group
14675 Lee Road
Chantilly, VA 20151-1715
Fax: 703-227-9198

FOIA Contact, Chief of Naval Operations
DNS-36
2000 Navy Pentagon
Washington, D.C. 20350-2000
Fax: 202-685-6580

Federal Bureau of Investigation
FOI/PA Request
Record / Information Dissemination Section
170 Marcel Drive
Winchester, VA 22602-4843
Fax: 540-868-4391

2

Email: foiparequest@ic.fbi.gov

Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505
Fax: 703-613-3007

Office of Freedom of Information
Department of Defense
1155 Defense Pentagon, Room 2C757
Washington, D.C. 20301-1155
Fax: 571-372-0500

National Security Agency
FOIA/PA Office (DJ4)
9800 Savage Road, Suite 6248
Ft. George G. Meade, MD 20755-6248
Fax: 443-479-3612

Director, Information Management Division
Office of the Director of National Intelligence
Washington, D.C. 20511
Fax: 703-874-8910
Email: dni-foia@dni.gov

Office of Information Programs and Services
A/GIS/IPS/RL
U.S. Department of State
Washington, D. C. 20522-8100
Fax: 202-261-8579

FOIA/PA Mail Referral Unit
Justice Management Division
Department of Justice
Room 115
LOC Building
Washington, DC 20530-0001
Fax: 202-261-8579

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

3

**Re:**    **Request Under Freedom of Information Act**
**(Expedited Processing Requested)**

To whom it may concern:

The American Civil Liberties Union and the American Civil Liberties Union Foundation (together, the "ACLU")[1] submit this Freedom of Information Act ("FOIA") request (the "Request") for records pertaining to the use of prepublication review processes in Intelligence Community agencies.

## I. Background

For many decades, the government has required a vast number of its employees to submit any works—written and oral, fiction and non-fiction—that discuss their government service for security review before public release.[2] In recent years, the government's "prepublication review" processes have grown increasingly far-reaching and burdensome, resulting in escalating public and congressional concern about their legality and fairness.[3] The details of these processes are not governed by any uniform executive-branch policy. Instead, they are determined by individual agencies' regulations, which have varying standards and requirements.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[1] The American Civil Liberties Union Foundation is a 501(c)(3) organization that provides legal representation free of charge to individuals and organizations in civil rights and civil liberties cases, educates the public about the civil rights and civil liberties implications of pending and proposed state and federal legislation, provides analyses of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators. The American Civil Liberties Union is a separate non-profit, 501(c)(4) membership organization that educates the public about the civil liberties implications of pending and proposed state and federal legislation, provides analysis of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators.

[2] *See* Jack Goldsmith & Oona Hathaway, *The Government's Prepublication Review Process is Broken*, Wash. Post, Dec. 25, 2015, http://wapo.st/1YTgg1j; Jack Goldsmith & Oona Hathaway, *The Scope of the Prepublication Review Problem, and What to Do About It*, Lawfare, Dec. 30, 2015, https://www.lawfareblog.com/scope-prepublication-review-problem-and-what-do-about-it; Oona Hathaway & Jack Goldsmith, *Path Dependence and the Prepublication Review Process*, Just Security, Dec. 28, 2015, https://www.justsecurity.org/28552/path-dependence-prepublication-review-process; Oona Hathaway & Jack Goldsmith, *More Problems with Prepublication Review*, Just Security, Dec. 28, 2015, https://www.justsecurity.org/28548/problems-prepublication-review/; Kevin Casey, Note, *Till Death Do Us Part: Prepublication Review in the Intelligence Community*, 115 Colum. L. Rev. 417 (2015).

[3] *See, e.g.*, Michael V. Hayden, *Playing to the Edge: American Intelligence in the Age of Terror* 426 (2016) ("Since all of my writing has to be cleared for classification, I dutifully submitted the piece and was told that no articles about drones would be cleared *regardless of the content*. I actually think that's a misuse of the review process, but beyond that, it's just plain stupid."); *see also id.* at xii, 121–22.

There is very little publicly available information regarding these policies, or the bodies within agencies that administer them.[4] What little information is public, however, makes clear that prepublication-review criteria are frequently overbroad, and that the process is both riddled with delays and susceptible to abuse by the officials overseeing it. These known features of the process raise serious questions about whether prepublication review, as currently constituted, violates authors' First Amendment rights to speak and the public's First Amendment right to receive important information about the government.[5]

In an effort to supplement the public record with information about agencies' prepublication review policies and practices, and to identify their potential impacts on free-speech rights and government transparency and accountability, the ACLU seeks such information through this FOIA request.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

## II. Requested Records

The ACLU seeks the release of records that are or contain the following:

(1)     policies, standards, and guidance related to prepublication review;

(2)     final legal analyses of past, present, or proposed prepublication-review requirements;

(3)     final decisions of officials conducting prepublication reviews;

(4)     correspondence with former agency employees (or their representatives) who have submitted materials for prepublication review since January 1, 2009;

(5)     statistics relating to prepublication review, including but not limited to information documenting the total numbers of individuals who have submitted works for review, the total number of works submitted for review, the total number of submissions approved without change, the total number of submissions returned with proposed redactions or other

---

[4] The authorities within agencies that administer prepublication review standards appear to have varying names. For example, the Central Intelligence Agency refers to a "Publications Review Board"; the Federal Bureau of Investigation refers to a "Prepublication Review Office"; and the National Security Agency refers to a "Prepublication Review Authority." See FBI, Prepublication Review Policy Guide (June 4, 2015), http://1.usa.gov/1LBt63I; NSA, Policy 1-30 ¶ 5(h) (Oct. 28, 2014), http://1.usa.gov/1LBt9fL; John Hollister Hedley, Reviewing the Work of CIA Authors: Secrets, Free Speech, and Fig Leaves, CIA.gov (May 8, 2007), http://1.usa.gov/1LBteAg.

[5] See, e.g., Steven Aftergood, Fixing Pre-Publication Review: What Should Be Done?, Just Security, Jan 15, 2016, https://www.justsecurity.org/28827/fixing-pre-publication-review-done (suggesting that the process "has become dysfunctional, overstepping legitimate national security boundaries and infringing on freedom of speech as well as the public's right to know").

modifications, the total number of pending submissions, and the duration of prepublication review processes.

(6)     titles, subject matters, and dates of works submitted for prepublication review; and

(7)     information about enforcement proceedings instituted or contemplated on the basis of violations of prepublication-review requirements, including breach-of-contract actions, agency administrative proceedings, and civil or criminal litigation.

With respect to the form of production, *see* 5 U.S.C. § 552(a)(3)(B), the ACLU requests that responsive electronic records be provided electronically in their native file format, if possible. Alternatively, the ACLU requests that the records be provided electronically in a text-searchable, static-image format (PDF), in the best image quality in the agency's possession, and that the records be provided in separate, Bates-stamped files.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

### III. Application for Expedited Processing

The ACLU requests expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E).[6] There is a "compelling need" for these records, as defined in the statute, because the information requested is "urgent[ly]" needed by an organization primarily engaged in disseminating information "to inform the public about actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

A.     *The ACLU is an organization primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.*

The ACLU is "primarily engaged in disseminating information" within the meaning of the statute. 5 U.S.C. § 552(a)(6)(E)(v)(II). Obtaining information about government activity, analyzing that information, and widely publishing and disseminating that information to the press and public are critical and substantial components of the ACLU's work and are among its primary activities. *See ACLU v. DOJ*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information").[7]

---

[6] *See also* 6 C.F.R. § 5.5(d); 10 C.F.R. § 1004.5(d)(6); 22 C.F.R. § 171.12(b); 28 C.F.R. § 16.5(e); 31 C.F.R. § 1.5(e); 32 C.F.R. §§ 1700.12, 1900.34(c).

[7] Courts have found that the ACLU as well as other organizations with similar missions that engage in information-dissemination activities similar to the ACLU are "primarily engaged in

The ACLU regularly publishes a newsletter that reports on and analyzes civil liberties-related current events. The newsletter is disseminated to approximately 450,000 people. The ACLU also publishes a bi-weekly electronic newsletter, which is distributed to subscribers (both ACLU members and non-members) by email. The electronic newsletter is disseminated to approximately 300,000 people. Both of these newsletters often include descriptions and analysis of information obtained through FOIA requests.

The ACLU also regularly issues press releases to call attention to documents obtained through FOIA requests, as well as other breaking news,[8] and ACLU attorneys are interviewed frequently for news stories about documents released through ACLU FOIA requests.[9]

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

disseminating information." *See, e.g., Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005); *ACLU*, 321 F. Supp. 2d at 29 n.5; *Elec. Privacy Info. Ctr. v. DOD*, 241 F. Supp. 2d 5, 11 (D.D.C. 2003).

[8] *See, e.g.*, Press Release, American Civil Liberties Union, U.S. Releases Targeted Killing Memo in Response to Long-Running ACLU Lawsuit (June 23, 2014), https://www.aclu.org/national-security/us-releases-targeted-killing-memo-response-long-running-aclu-lawsuit; Press Release, American Civil Liberties Union, Justice Department White Paper Details Rationale for Targeted Killing of Americans (Feb. 4, 2013), https://www.aclu.org/national-security/justice-department-white-paper-details-rationale-targeted-killing-americans; Press Release, American Civil Liberties Union, Documents Show FBI Monitored Bay Area Occupy Movement (Sept. 14, 2012), https://www.aclu.org/news/documents-show-fbi-monitored-bay-area-occupy-movement-insidebayareacom; Press Release, American Civil Liberties Union, FOIA Documents Show FBI Using "Mosque Outreach" for Intelligence Gathering (Mar. 27, 2012), http://www.aclu.org/national-security/foia-documents-show-fbi-using-mosque-outreach-intelligence-gathering; Press Release, American Civil Liberties Union, FOIA Documents Show FBI Illegally Collecting Intelligence Under Guise of "Community Outreach" (Dec. 1, 2011), https://www.aclu.org/news/foia-documents-show-fbi-illegally-collecting-intelligence-under-guise-community-outreach; Press Release, American Civil Liberties Union, FOIA Documents from FBI Show Unconstitutional Racial Profiling (Oct. 20, 2011), http://www.aclu.org/national-security/foia-documents-fbi-show-unconstitutional-racial-profiling; Press Release, American Civil Liberties Union, Documents Obtained by ACLU Show Sexual Abuse of Immigration Detainees is Widespread National Problem (Oct. 19, 2011), http://www.aclu.org/immigrants-rights-prisoners-rights-prisoners-rights/documents-obtained-aclu-show-sexual-abuse; Press Release, American Civil Liberties Union, ACLU Lawsuit Seeks Information from FBI on Nationwide System for Collecting "Suspicious Activity" Information (Aug. 25, 2011), https://www.aclu.org/national-security/aclu-lawsuit-seeks-information-fbi-nationwide-system-collecting-suspicious; Press Release, American Civil Liberties Union, New Evidence of Abuse at Bagram Underscores Need for Full Disclosure About Prison, Says ACLU (June 24, 2009), http://www.aclu.org/ national-security/new-evidence-abuse-bagram-underscores-need-full-disclosure-about-prison-says-aclu.

[9] *See, e.g.*, Brad Knickerbocker, *ACLU: FBI Guilty of "Industrial Scale" Racial Profiling*, The Christian Science Monitor, Oct. 21, 2011, http://www.csmonitor.com/USA/Justice/ 2011/1021/ACLU-FBI-guilty-of-industrial-scale-racial-profiling; Joshua E.S. Phillips, *Inside the Detainee Abuse Task Force*, The Nation, May 13, 2011, http://www.thenation.com/ article/inside-detainee-abuse-task-force/ (quoting ACLU staff attorney Alexander Abdo); Scott Shane & Benjamin Weiser, *Dossier Shows Push for More Attacks After 9/11*, N.Y. Times, Apr.

Similarly, the ACLU publishes reports about government conduct and civil liberties issues based on its analysis of information derived from various sources, including information obtained from the government through FOIA requests. This material is broadly circulated to the public and widely available to everyone for no cost or, sometimes, for a small fee. Since 2011 alone, ACLU national projects have published and disseminated dozens of reports, many of which include a description and analysis of government documents obtained through FOIA requests.[10] The ACLU also regularly publishes books, "know your rights" materials, fact sheets, and educational brochures and pamphlets designed to educate the public about civil liberties issues and government policies that implicate civil rights and liberties.

The ACLU publishes a widely-read blog where original editorial content reporting on and analyzing civil rights and civil liberties news is posted daily. *See* http://www.aclu.org/blog. The ACLU creates and disseminates original editorial and educational content on civil rights and civil liberties news through multi-media projects, including videos, podcasts, and interactive features. *See* http://www.aclu.org/multimedia. The ACLU also publishes, analyzes, and disseminates information through its heavily visited website, www.aclu.org. The website addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

25, 2011, http://nyti.ms/ty47ZA (quoting ACLU project director Hina Shamsi); Eric Lichtblau, *Court Revives Lawsuit Over Government Surveillance*, N.Y. Times, Mar. 21, 2011, http://nyti.ms/tgFpkd (quoting ACLU deputy legal director Jameel Jaffer).

[10] *See, e.g.*, ACLU, FBI Releases Details of 'Zero-Day' Exploit Decisionmaking Process (June 26, 2015), https://www.aclu.org/blog/free-future/fbi-releases-details-zero-day-exploit-decisionmaking-process; ACLU, ACLU Eye on the FBI: Documents Reveal Lack of Privacy Safeguards and Guidance in Government's "Suspicious Activity Report" Systems (Oct. 29, 2013), https://www.aclu.org/aclu-eye-fbi-documents-reveal-lack-privacy-safeguards-and-guidance-governments-suspicious-activity-0; ACLU, Unleashed and Unaccountable: The FBI's Unchecked Abuse of Authority (Sept. 2013), https://www.aclu.org/unleashed-and-unaccountable-fbis-unchecked-abuse-authority; Yale Law School and ACLU, Victims of Complacency: The Ongoing Trafficking and Abuse of Third Country Nationals by U.S. Government Contractors (June 2012), https://www.aclu.org/sites/default/files/field_document/hrp_traffickingreport_web_0.pdf; Human Rights Watch and ACLU, Deportation by Default: Mental Disability, Unfair Hearings, and Indefinite Detention in the US Immigration System (July 2010), https://www.aclu.org/files/assets/ usdeportation0710_0.pdf; ACLU, Reclaiming Patriotism: A Call to Reconsider the Patriot Act (March 2009), https://www.aclu.org/files/pdfs/safefree/patriot_report_20090310.pdf; ACLU, The Excluded: Ideological Exclusion and the War on Ideas (Oct. 2007), https://www.aclu.org/sites/default/files/field_document/the_excluded_report.pdf; ACLU, History Repeated: The Dangers of Domestic Spying by Federal Law Enforcement (May 2007), https://www.aclu.org/sites/default/files/field_document/asset_upload_file893_29902.pdf; ACLU, No Real Threat: The Pentagon's Secret Database on Peaceful Protest (Jan. 2007), https://www.aclu.org/report/no-real-threat-pentagons-secret-database-peaceful-protest; ACLU, Unpatriotic Acts: The FBI's Power to Rifle Through Your Records and Personal Belongings Without Telling You (July 2003), http://www.aclu.org/FilesPDFs/spies_report.pdf.

thousands of documents relating to the issues on which the ACLU is focused. The ACLU's website also serves as a clearinghouse for news about ACLU cases, as well as analysis about case developments, and an archive of case-related documents. Through these pages, and with respect to each specific civil liberties issue, the ACLU provides the public with educational material, recent news, analyses of relevant Congressional or executive branch action, government documents obtained through FOIA, and further in-depth analytic and educational multi-media features.

The ACLU website includes many features on information obtained through the FOIA.[11] For example, the ACLU's "Predator Drones FOIA" webpage, https://www.aclu.org/national-security/predator-drones-foia, contains commentary about the ACLU's FOIA request, press releases, analysis of the FOIA documents, numerous blog posts on the issue, documents related to litigation over the FOIA request, frequently asked questions about targeted killing, and links to the documents themselves. Similarly, the ACLU maintains an online "Torture Database," a compilation of over 100,000 pages of FOIA documents that allows researchers and the public to conduct sophisticated searches of FOIA documents relating to government policies on rendition, detention, and interrogation.[12]

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

The ACLU has also published a number of charts and explanatory materials that collect, summarize, and analyze information it has obtained through FOIA. For example, through compilation and analysis of information gathered from various sources—including information obtained from the government through FOIA—the ACLU created an original chart that provides the public and news media with a comprehensive summary of index of Bush-era Office of Legal Counsel memos relating to interrogation, detention, rendition, and surveillance.[13] Similarly, the ACLU produced a summary of documents released in response to a FOIA request related to the FISA Amendments Act[14]; a chart of original statistics about the Defense Department's use of National

---

[11] *See, e.g.*, https://www.aclu.org/blog/free-future/fbi-releases-details-zero-day-exploit-decisionmaking-process; https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights; http://www.aclu.org/national-security/predator-drone-foia; http://www.aclu.org/national-security/anwar-al-awlaki-foia-request; https://www.aclu.org/cases/aclu-v-department-defense; http://www.aclu.org/mappingthefbi; https://www.aclu.org/cases/bagram-foia; https://www.aclu.org/national-security/csrt-foia; http://www.aclu.org/safefree/nsaspying/30022res20060207.html; https://www.aclu.org/patriot-foia; http://www.aclu.org/spyfiles; http://www.aclu.org/safefree/nationalsecurityletters/32140res 20071011.html; https://www.aclu.org/national-security/ideological-exclusion.

[12] http://www.torturedatabase.org. *See also* https://www.aclu.org/national-security/aclu-v-department-defense.

[13] https://www.aclu.org/sites/default/files/pdfs/safefree/olcmemos_2009_0305.pdf.

[14] https://www.aclu.org/files/pdfs/natsec/faafoia20101129/20101129Summary.pdf.

Security Letters based on its own analysis of records obtained through FOIA[15]; and an analysis of documents obtained through FOIA about FBI surveillance flights over Baltimore.[16]

The ACLU plans to analyze, publish, and disseminate to the public the information gathered through this Request. The records requested are not sought for commercial use and the requesters plan to disseminate the information disclosed as a result of this Request to the public at no cost.

B.      *The records sought are urgently needed to inform the public about actual or alleged government activity.*

These records are urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II).[17] Specifically, the requested records relate to government agencies' prepublication review processes. As discussed in Part I, *supra*, the lawfulness and effectiveness of government agencies' prepublication review processes—and the related problem of overclassification of government information[18]—are the subject of widespread public controversy and media attention.[19] The records sought relate to a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence.[20]

Given the foregoing, the ACLU has satisfied the requirements for expedited processing of this Request.

## IV. Application for Waiver or Limitation of Fees

The ACLU requests a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and because disclosure is "likely to contribute significantly to

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[15] https://www.aclu.org/sites/default/files/field_document/nsl_stats.pdf.

[16] https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights.

[17] *See also* 6 C.F.R. § 5.5(d)(ii); 10 C.F.R. § 1004.5(d)(6); 22 C.F.R. § 171.12(b)(2); 28 C.F.R. § 16.5(e)(ii); 31 C.F.R. § 1.5(e)(2)(ii); 32 C.F.R. §§ 1700.12(c)(2), 1900.34(c)(2).

[18] *See, e.g.,* Steven Lee Myers & Matt Apuzzo, *As Presidential Campaign Unfolds, So Do Inquiries Into Clinton's Emails,* N.Y. Times, Mar. 2, 2016, http://nyti.ms/1LBvur2; Abbe David Lowell, *The Broken System of Classifying Government Documents,* N.Y. Times, Feb. 29, 2016, http://nyti.ms/1LBvnMc.

[19] *See supra* notes 2, 3, and 5, and accompanying text.

[20] *See id.*

public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).[21]

As discussed above, news accounts underscore the substantial public interest in the records sought through this Request. Given the ongoing and widespread media attention to this issue, the records sought will significantly contribute to public understanding of an issue of profound public importance. Because little specific information about the government's prepublication-review process is publicly available, the records sought are certain to contribute significantly to the public's understanding of the law, policies, and process being applied by government agencies in their reviews of authors' works.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

The ACLU is not filing this Request to further its commercial interest. As described above, any information disclosed by the ACLU as a result of this FOIA Request will be available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." (quotation marks omitted)).

The ACLU also requests a waiver of search fees on the grounds that the ACLU qualifies as a "representative[] of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). The ACLU meets the statutory and regulatory definitions of a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)[22]; *see also Nat'l Sec. Archive v. DOD*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA); *Serv. Women's Action Network v. DOD*, 888 F. Supp. 2d 282 (D. Conn. 2012) (requesters, including ACLU, were representatives of the news media and thus qualified for fee waivers for FOIA requests to the Department of Defense and Department of Veterans Affairs); *ACLU of Wash. v. DOJ*, No. C09–0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011) (finding that the ACLU of Washington is an entity that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a

---

[21] *See also* 6 C.F.R. § 5.11(k); 10 C.F.R. § 1004.9(a)(8); 22 C.F.R. § 171.17; 28 C.F.R. § 16.10(k); 31 C.F.R. § 1.7(b)-(d); 32 C.F.R. §§ 1700.6(b), 1900.13(b).

[22] *See also* 6 C.F.R. § 5.11(b)(6), (d)(1), (k)(2)(iii), (k)(3)(ii); 10 C.F.R. § 1004.9(a)(8), (b)(3); 22 C.F.R. § 171.15(c); 28 C.F.R. § 16.10(b)(6), (c)(1)(i), (d)(1); 31 C.F.R. § 1.7(a)(3); 32 C.F.R. §§ 1700.6(i)(2), 1900.13(i)(2).

distinct work, and distributes that work to an audience"); *ACLU*, 321 F. Supp. 2d at 30 n.5 (finding non-profit public interest group to be "primarily engaged in disseminating information"). The ACLU is therefore a "representative of the news media" for the same reasons it is "primarily engaged in the dissemination of information."

Furthermore, courts have found other organizations whose mission, function, publishing, and public education activities are similar in kind to the ACLU's to be "representatives of the news media" as well. *See, e.g., Cause of Action v. IRS*, No. 13-0920, 2015 WL 5120863 (D.C. Cir. Aug. 28, 2015); *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 10–15 (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. DOJ*, 133 F. Supp. 2d 52, 53–54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).[23]

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

On account of these factors, fees associated with responding to FOIA requests are regularly waived for the ACLU as a "representative of the news media."[24] As was true in those instances, the ACLU meets the requirements for a fee waiver here.

---

[23] Courts have found these organizations to be "representatives of the news media" even though they engage in litigation and lobbying activities beyond their dissemination of information / public education activities. *See, e.g., Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d 5; *Nat'l Sec. Archive*, 880 F.2d at 1387; *see also Leadership Conference on Civil Rights*, 404 F. Supp. 2d at 260; *Judicial Watch, Inc.*, 133 F. Supp. 2d at 53-54.

[24] In April 2013, the National Security Division of the DOJ granted a fee-waiver request with respect to a request for documents relating to the FISA Amendments Act. Also in April 2013, the DOJ granted a fee-waiver request regarding a FOIA request for documents related to "national security letters" issued under the Electronic Communications Privacy Act. In August 2013, the FBI granted the fee-waiver request related to the same FOIA request issued to the DOJ. In June 2011, the DOJ National Security Division granted a fee waiver to the ACLU with respect to a request for documents relating to the interpretation and implementation of a section of the PATRIOT Act. In October 2010, the Department of the Navy granted a fee waiver to the ACLU with respect to a request for documents regarding the deaths of detainees in U.S. custody. In January 2009, the CIA granted a fee waiver with respect to the same request. In March 2009, the State Department granted a fee waiver to the ACLU with regard to a FOIA request for documents relating to the detention, interrogation, treatment, or prosecution of suspected terrorists. Likewise, in December 2008, the Department of Justice granted the ACLU a fee waiver with respect to the same request. In November 2006, the Department of Health and Human Services granted a fee waiver to the ACLU with regard to a FOIA request submitted in November of 2006. In May 2005, the U.S. Department of Commerce granted a fee waiver to the ACLU with respect to its request for information regarding the radio-frequency identification chips in United States passports. In March 2005, the Department of State granted a fee waiver to the ACLU on a request regarding the use of immigration laws to exclude prominent non-citizen scholars and intellectuals from the country because of their political views, statements, or associations. In addition, the Department of Defense did not charge the ACLU fees associated with FOIA requests submitted by the ACLU in April 2007, June 2006, February 2006, and October 2003. The DOJ did not charge the ACLU fees associated with FOIA requests submitted

\*　　\*　　\*

Pursuant to applicable statutes and regulations, the ACLU expects a determination regarding expedited processing within 10 days. *See* 5 U.S.C. § 552(a)(6)(E)(ii); 6 C.F.R. § 5.5(d)(4) (Department of Homeland Security); 10 C.F.R. § 1004.5(d)(7) (Department of Energy); 22 C.F.R. § 171.12(b) (State Department); 28 C.F.R. § 16.5(e) (Department of Justice); 31 C.F.R. § 1.5(e)(4) (Treasury Department); 32 C.F.R. §§ 1700.12(b) (Department of Defense); *id.* § 1900.34(c) (Central Intelligence Agency).

If the Request is denied in whole or in part, the ACLU asks that you justify all deletions by reference to specific exemptions to FOIA. The ACLU expects the release of all segregable portions of otherwise exempt material. The ACLU reserves the right to appeal a decision to withhold any information or deny a waiver of fees.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

Thank you for your prompt attention to this matter. Please furnish the applicable records to:

Benjamin Good
American Civil Liberties Union
125 Broad Street—18th Floor
New York, NY 10004
T: 212.549.2500
F: 212.549.2654
bgood@aclu.org

---

by the ACLU in November 2007, December 2005, and December 2004. Finally, three separate agencies—the Federal Bureau of Investigation, the Office of Intelligence Policy and Review, and the DOJ Office of Information and Privacy—did not charge the ACLU fees associated with a FOIA request submitted by the ACLU in August 2002.

13

I affirm that the information provided supporting the request for expedited processing is true and correct to the best of my knowledge and belief. *See* 5 U.S.C. § 552(a)(6)(E)(vi).

Respectfully,

Benjamin Good
American Civil Liberties Union
    Foundation
125 Broad Street—18th Floor
New York, NY 10004
T: 212.549.2500
F: 212.549.2654
bgood@aclu.org

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

14

Exhibit B

Central Intelligence Agency



Washington, D.C. 20505

11 March 2016

Mr. Benjamin Good
American Civil Liberties Union Foundation
125 Broad Street, 18ᵗʰ Floor
New York, NY 10004

Reference: F-2016-01216

Dear Mr. Good:

     On 8 March 2016, the office of the Information and Privacy Coordinator received your 3 March 2016 Freedom of Information Act (FOIA) request, submitted on behalf of the American Civil Liberties Union Foundation, for **"records pertaining to the use of prepublication review processes in Intelligence Community agencies."** Specifically, you are requesting **"the release of records that are or contain the following:**

1. **policies, standards, and guidance related to prepublication review;**
2. **final legal analyses of past, present, or proposed prepublication-review requirements;**
3. **final decisions of officials conducting prepublication reviews;**
4. **correspondence with former agency employees (or their representatives) who have submitted materials for prepublication review since January 1, 2009;**
5. **statistics relating to prepublication review, including but not limited to information documenting the total numbers of individuals who have submitted works for review, the total number of submissions approved without change, the total number of submissions returned with proposed redactions or other modifications, the total number of pending submissions, and the duration of prepublication review processes.**
6. **titles, subject matters, and dates of works submitted for prepublication review; and**
7. **information about enforcement proceedings instituted or contemplated on the basis of violations of prepublication-review requirements, including breach-of-contract actions, agency administrative proceedings, and civil or criminal litigation."**

We have assigned your request the reference number above. Please use this number when corresponding so that we can identify it easily.

     You have requested expedited processing. We handle all requests in the order we receive them; that is, "first-in, first-out." We make exceptions to this rule only when a requester established a compelling need in accordance with the FOIA, 5 U.S.C. § 552, as amended. Your request does not demonstrate a "compelling need" and, therefore, we deny your request for expedited processing. You may appeal this decision, in my care, within 45 days from the date of this letter. Should you choose to appeal the denial of your request for expedited processing, you are encouraged to provide an explanation supporting your appeal.

Our officers will review your request and will advise you should they encounter any problems or if they cannot begin the search without additional information. Unless you object, we will limit our search to CIA-originated records up to and including the date the Agency starts its search.

Sincerely,

*Michael Lavergne*

Michael Lavergne
Information and Privacy Coordinator

Exhibit C

**Pre Pub Stats for FY 2015:**

Approx. # of Individuals that submitted reviews:

900 (around 300 duplicate requestors)

Approx. # of works submitted for review:

2700 requests; 3200 artifacts; 26,000 pages
[official: 1700 requests; 2050 artifacts; 16,000 pages] [Non official / Resumes: 1000 requests; 1150 artifacts; 10,000 pages]

Approx. # works approved with no change:

2300 requests; 2500 artifacts; 20,000 pages
[official: 1500 requests; 1650 artifacts; 10,500 pages] [Non official / Resumes: 800 requests; 850 artifacts; 8,500 pages]

Approx. # works approved with changes:

400 requests; 600artifacts; 6,000 pages
[official: 200 requests; 350 artifacts; 4,800 pages] [Non official / Resumes: 200 requests; artifacts; 1,200 pages]

Approx. # works not approved:

40 requests; 70 artifacts; 750 pages
[official: 30 requests; 60 artifacts; 550 pages] [Non official / Resumes: 10 requests; 10 artifacts; 200 pages]

(Reasons for not approving the request: classified document for classified audience; documents not intended for public release; subject was classified; withdrawn by requestor [no reason stated])

ODNI Pre Pub's average return time for requests is: 5.4 days for non-official and 1.4 days for official.

BEN WIZNER
2125492500 2530
ACLU2
125 BROAD ST 18THFLOOR
NEW YORK NY 100042400

**0.0 LBS    LTR        1 OF 1**

SHIP TO:
    INFORMATION AND PRIVACY COORDINATOR
    CENTRAL INTELLIGENCE AGENCY
    **WASHINGTON  DC 20505-0001**



**MD 201 9-37**

## UPS NEXT DAY AIR SAVER **1P**
TRACKING #: 1Z 149 0E0 13 9637 7719



BILLING: P/P

Department: National Security
Case/Accounting Code: 99999

GS 18.1.10.    WNTNV50 72.0A 01/2016    

Insert shipping documents
under window from the top.

Do not use this envelope for:

UPS Worldwide Express®
UPS 2nd Day Air®

# Exhibit D

Central Intelligence Agency



Washington, D.C. 20505

15 April 2016

Mr. Benjamin Good
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004

Reference: F-2016-01216

Dear Mr. Good:

This is to acknowledge receipt of your 8 April 2016 letter, submitted on behalf of the American Civil Liberties Union Foundation, appealing our decision to deny your petition for expedited processing regarding your 3 March 2016 Freedom of Information Act (FOIA) request for **"records pertaining to the use of prepublication review processes in Intelligence Community agencies."** Specifically, you are requesting **"the release of records that are or contain the following:**

1. **policies, standards, and guidance related to prepublication review;**
2. **final legal analysis of past, present, or proposed prepublication-review requirements;**
3. **final decisions of officials conducting prepublication reviews;**
4. **correspondence with former agency employees (or their representatives) who have submitted materials for prepublication review since January 1, 2009;**
5. **statistics relating to prepublication review, including but not limited to information documenting the total numbers of individuals who have submitted for review, the total number of submissions approved without change, the total number of submissions returned with proposed redactions or other modifications, the total number of pending submissions, and the duration of prepublication review processes.**
6. **titles, subject matters, and dates of works submitted for prepublication review; and**
7. **information about enforcement proceedings instituted or contemplated on the basis of violations of prepublication-review requirements, including breach-of-contract actions, agency administrative proceedings, and civil or criminal litigation."**

We reconsidered your petition and determined it fails to meet the compelling need criteria, per the rules outlined in the FOIA, 5 U.S.C. § 552, as amended. We, therefore, reaffirm our prior denial of your petition for expedited processing.

Sincerely,

Michael Lavergne

Michael Lavergne
Executive Secretary
Agency Release Panel

# Exhibit E

Central Intelligence Agency



Washington, D.C. 20505

16 June 2016

Mr. Benjamin Good
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004

Reference: F-2016-01216

Dear Mr. Good:

This acknowledges receipt of your 4 April 2016 phone call to our Freedom of Information Act (FOIA) public phone line requesting the status concerning your 3 March 2016 FOIA request, submitted on behalf of the American Civil Liberties Union Foundation, for **"records pertaining to the use of prepublication review processes in Intelligence Community agencies."** Specifically, you are requesting **"the release of records that are or contain the following:**

1. **policies, standards, and guidance related to prepublication review;**
2. **final legal analysis of past, present, or proposed prepublication-review requirements;**
3. **final decisions of officials conducting prepublication reviews;**
4. **correspondence with former agency employees (or their representatives) who have submitted materials for prepublication review since January 1, 2009;**
5. **statistics relating to prepublication review, including but not limited to information documenting the total numbers of individuals who have submitted for review, the total number of submissions approved without change, the total number of submissions returned with proposed redactions or other modifications, the total number of pending submissions, and the duration of prepublication review processes.**
6. **titles, subject matters, and dates of works submitted for prepublication review; and**
7. **information about enforcement proceedings instituted or contemplated on the basis of violations of prepublication-review requirements, including breach-of-contract actions, agency administrative proceedings, and civil or criminal litigation."**

Our records indicate that we recently sent two acknowledgment responses to you concerning this request on 11 March 2016 and 15 April 2016, respectively. We are enclosing copies of our responses in the event that you did not receive them. Please be assured that your request is still in process. We can appreciate your concern with not having received a final response to your request. It is the overwhelming number of requests and their complexity that causes delays in our responses. Meanwhile, we appreciate your patience and understanding while we continue to review your request.

Sincerely,

*Michael Lavergne*

Michael Lavergne
Information and Privacy Coordinator

Enclosures

# Exhibit F

Central Intelligence Agency



Washington, D.C. 20505

7 April 2017

Mr. Brett Max Kaufman
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY  10004-2400

Reference: *Civil Action Number 1:16-cv-1256*
F-2016-01216

Dear Mr. Kaufman:

This letter is in response to your Freedom of Information Act (FOIA) request, dated 3 March 2016, and subsequent litigation, seeking records pertaining to the use of prepublication review processes in Intelligence Community agencies.

Your request was processed in accordance with the Freedom of Information Act (FOIA), 5 U.S.C. § 552.

We completed a thorough search for records responsive to your request.  At this time, 9 documents can be released in full.  20 documents can be released in part, with redactions made pursuant to FOIA exemptions (b)(1), (b)(3), (b)(5) and (b)(6).  7 documents must be denied in full based on FOIA exemptions (b)(1), (b)(3) and (b)(5).  Exemption (b)(3) pertains to Section 102A(i)(1) of the National Security Act of 1947, as amended, 50 U.S.C. § 3024, noted as "(b)(3)NatSecAct," on the enclosed documents, and Section 6 of the Central Intelligence Agency Act of 1949, 50 U.S.C. § 3507 noted as "(b)(3)CIAAct."  Copies of the released in full and released in part documents are enclosed on a CD.  Please note: This is the beginning of a rolling production, and another production of documents will follow.

Because the above-referenced request is a subject of pending litigation in federal court, in accordance with Agency regulations as set forth at Section 1900.42 of Title 32 of the Code of Federal Regulations, you are not entitled to appeal this determination administratively.

Sincerely,

Allison Fong
Information and Privacy Coordinator

Enclosure

# Exhibit G

Central Intelligence Agency



Washington, D.C. 20505

23 June 2017

Mr. Brett Max Kaufman
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004-2400

Reference: *Civil Action Number 1:16-cv-1256*
F-2016-01216

Dear Mr. Kaufman:

This letter is in response to your Freedom of Information Act (FOIA) request, dated 3 March 2016, and subsequent litigation, seeking records pertaining to the use of prepublication review processes in Intelligence Community agencies.

Your request was processed in accordance with the Freedom of Information Act (FOIA), 5 U.S.C. § 552, as amended.

We completed a thorough search for records responsive to your request, and on 7 April 2017, we produced a first set of records. At this time, an additional 59 documents can be released in part, with redactions made pursuant to FOIA exemptions (b)(1), (b)(3), (b)(5) and (b)(6). Three (3) documents must be denied in full based on FOIA exemptions (b)(1), (b)(3), (b)(5) and (b)(6). Exemption (b)(3) pertains to Section 102A(i)(1) of the National Security Act of 1947, as amended, 50 U.S.C. § 3024, noted as "(b)(3)NatSecAct," on the enclosed documents, and Section 6 of the Central Intelligence Agency Act of 1949, 50 U.S.C. § 3507 noted as "(b)(3)CIAAct." Copies of the documents released in part are enclosed on a CD.

This completes our response to the above referenced request.

Sincerely,

*Allison Fong*

Allison Fong
Information and Privacy Coordinator

Enclosure