**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION and AMERICAN CIVIL LIBERTIES UNION FOUNDATION, <br><br>         Plaintiffs, <br><br>    v. <br><br> CENTRAL INTELLIGENCE AGENCY, *et al*., <br><br>         Defendants. | **Oral Argument Requested** <br><br> Civil Action No. 1:16-cv-1256 |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR PARTIAL
SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT CIA'S MOTION FOR
SUMMARY JUDGMENT**

Brett Max Kaufman (D.C. Bar No. NY0224)
American Civil Liberties Union
125 Broad Street—18th Floor
New York, NY 10004
T: 212.549.2500
F: 212.549.2654
bkaufman@aclu.org

Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union
  of the District of Columbia
915 15th Street, NW—2d floor
Washington, D.C. 20005
T: 202.601.4266
aspitzer@acludc.org

Ramya Krishnan
Meenakshi Krishnan
Alex Abdo
Knight First Amendment Institute
  at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
T: 646.745.8500
ramya.krishnan@knightcolumbia.org

*Counsel for Plaintiffs*

## Table of Contents

Table of Authorities .................................................................................................ii

Introduction ...........................................................................................................1

Factual and Procedural Background .......................................................................4

Legal Framework ....................................................................................................5

Argument ...............................................................................................................6

    I.     The names of CIA employees who have been authorized to publish works
           under their own names are not withholdable under Exemption 3. ..............6

         A.     The approved authors' names are not protected by Section 6 of the
                CIA Act because they are not internal information that the CIA treats
                as confidential. ...............................................................................7

         B.     Even if the approved authors' names are protected by Section 6 of the
                CIA Act, they are not withholdable because they have been officially
                acknowledged. ...............................................................................11

    II.    The names of CIA employees who have been authorized to publish works
           under their own names are not withholdable under Exemption 6. .............14

         A.     The approved authors' names are not (and are not found in) personnel,
                medical, or similar files. ................................................................15

         B.     Disclosure would not constitute a clearly unwarranted invasion of
                privacy because the public's interest in the administration of the CIA's
                prepublication review processes outweighs any privacy interest in the
                approved authors' names. ...............................................................17

    III.   The name of a formerly covert CIA employee who has been authorized to
           publish works under their name is not withholdable under Exemption 1. ...19

    IV.   Alternatively, the court should require the government to submit a
           supplemental declaration and conduct an *in camera* review. ...................21

Conclusion ...........................................................................................................23

# Table of Authorities

**Cases**

*Afshar v. Dep't of State*, 702 F.2d 1125 (D.C. Cir. 1983) .................................................... 12, 14

*Am. Civil Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612 (D.C. Cir. 2011) ................. passim

*Am. Immigration Lawyers Ass'n v. U.S. Dep't of Homeland Sec.*, 852 F. Supp. 2d 66 (D.D.C. 2012) ...................................................................................................... 11

*AP v. FBI*, 265 F. Supp. 3d 82 (D.D.C. 2017) ............................................................... 21

*Arieff v. U.S. Dep't of Navy*, 712 F.2d 1462 (D.C. Cir. 1983) .................................................. 14

*Baker v. CIA*, 580 F.2d 664 (D.C. Cir.1978) ......................................................................... 8, 9

*Blazy v. Tenet*, 979 F. Supp. 10 (D.D.C. 1997) ...................................................................... 10

*BuzzFeed, Inc. v. Dep't of Justice*, 344 F. Supp. 3d 396 (D.D.C. 2018) ..................................... 11

*Carter v. U.S. Dep't of Commerce*, 830 F.2d 388 (D.C. Cir. 1987) ........................................... 6

*Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 922 F.3d 480 (D.C. Cir. 2019) ................................................................................................ 5

*Cottone v. Reno*, 193 F.3d 550 (D.C. Cir. 1999) .......................................................... 11, 13, 14

*Crestek, Inc. & Subsidiaries v. Internal Revenue Serv.*, 322 F. Supp. 3d 188 (D.D.C. 2018) ................................................................................................................ 21

*Davis v. U.S. Dep't of Justice*, 968 F.2d 1276 (D.C. Cir. 1992) ................................................ 11

*Dep't of Air Force v. Rose*, 425 U.S. 352 (1976) ......................................................... 15, 16, 18

*DiBacco v. Dep't of the Army*, 926 F.3d 827 (D.C. Cir. 2019) ............................................... 8, 10

*Ditlow v. Shultz*, 517 F.2d 166 (D.C. Cir. 1975) ................................................................... 17

*Elec. Frontier Found. v. Dep't of Justice*, 57 F. Supp. 3d 54 (D.D.C. 2014) ............................. 22

*Fitzgibbon v. CIA*, 911 F.2d 755 (D.C. Cir. 1990) ..................................................................... 6

*Florez v. CIA*, 829 F.3d 178 (2d Cir. 2016) ........................................................................... 11

*Friedman v. U.S. Secret Serv.*, 923 F. Supp. 2d 262 (D.D.C. 2013) .......................................... 16

*Hall v. CIA*, 268 F. Supp. 3d 148 (D.D.C. 2017) ................................................................... 22

*Halperin v. CIA*, 629 F.2d 144 (D.C. Cir. 1980) ........................................................8

*Inner City Press/Cmty. on the Move v. Bd. of Governors of Fed. Reserve Sys.*, 463 F.3d 239 (2d Cir. 2006) ..............................................................................13

*Juarez v. Dep't of Justice*, 518 F.3d 54 (D.C. Cir. 2008) ..........................................22

*Larson v. Dep't of State*, 565 F.3d 857 (D.C. Cir. 2009) ...........................................20

*Milner v. Dep't of Navy*, 562 U.S. 562 (2011) ...................................................15, 16

*Muslim Advocates v. U.S. Dep't of Justice*, 833 F. Supp. 2d 92 (D.D.C. 2011) ..........11

*N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978) .....................................5

*Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26 (D.C. Cir. 2002)............15, 16, 17, 18

*Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873 (D.C. Cir. 1989).........17, 18

*Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16 (D.C. Cir. 1999).............................................................................................................13

*People for the Ethical Treatment of Animals v. U.S. Dep't of Health & Human Servs.*, 901 F.3d 343 (D.C. Cir. 2018).........................................................5

*Phillippi v. CIA*, 546 F.2d 1009 (D.C. Cir. 1976).....................................................7, 9

*Ray v. Turner*, 587 F.2d 1187 (D.C. Cir. 1978)..........................................................15

*Reporters Comm. for Freedom of Press v. Fed. Bureau of Investigation*, 877 F.3d 399 (D.C. Cir. 2017) .....................................................................................5

*Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106 (D.C. Cir. 2007)...............................6

*U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595 (1982).......................................16

*VoteHemp, Inc. v. Drug Enforcement Admin.*, 567 F. Supp. 2d 1 (D.D.C. 2004).........17

**Statutes**

5 U.S.C. § 552 ...........................................................................................5, 6, 14, 20

Central Intelligence Act of 1949...............................................................................passim

Executive Order 13,526 ..............................................................................................20

**Other Authorities**

115 Cong. Rec. H3300–01 (daily ed. May 3, 2017)...................................................18

115 Cong. Rec. S2750 (daily ed. May 4, 2017) ........................................................18

Greg Miller & Julia Tate, *CIA Probes Publication Review Board over Allegations of Selective Censorship*, Wash. Post (May 31, 2012), http://wapo.st/2iLpUuP [https://perma.cc/3VND-3DP6] ......................................................................2, 19

H. Rep. No. 81-160 ...............................................................................................8

Jack Goldsmith & Oona Hathaway, *The Government's Prepublication Review Process is Broken*, Wash. Post (Dec. 25, 2015), http://wapo.st/2H0OPBJ [https://perma.cc/NBY8-Y664] ..........................................................................18

S. Rep. No. 81-106...............................................................................................8

**Introduction**

This Freedom of Information Act ("FOIA") lawsuit seeks records relating to a far-reaching system of government censorship known as "prepublication review." For decades, U.S. intelligence agencies have required current and former employees to submit any draft publications describing their government service for review before public release. In recent years, agency prepublication review processes have grown increasingly unfair and burdensome, resulting in escalating public and congressional concern that they are stifling free speech and suppressing the viewpoints of those most knowledgeable about government. The details of these policies are not governed by any uniform executive-branch policy, but by a tangle of regulations, policies, and contracts adopted by individual agencies.

To inform the public about these policies and about how agencies implement them, Plaintiffs American Civil Liberties Union and American Civil Liberties Union Foundation ("Plaintiffs") filed identical FOIA requests with nineteen federal agencies, seeking several categories of records. Plaintiffs eventually filed this suit to enforce their request, and since filing it, they have obtained over 18,000 pages of responsive records, providing significant new detail about the operation and pathologies of prepublication review. After the agencies completed their processing of Plaintiffs' requests, Plaintiffs stipulated to the dismissal of all but two agencies: the Central Intelligence Agency ("CIA") and the Air Force.

Through this cross-motion for partial summary judgment, Plaintiffs challenge a single redaction in a single CIA document, an internal blog titled "Review Exemption" and marked "UNCLASSIFIED."[1] The information redacted is a list of names of several current or former CIA

_____

[1] Plaintiffs have declined to dismiss the Air Force as a defendant in this suit until the Air Force resolves certain readability issues with several charts it produced to Plaintiffs. Based on conversations with government counsel, Plaintiffs do not anticipate challenging any aspect of the

employees, who, as of May 2009, were granted an exemption from the CIA's prepublication review requirement based on their "established record of prepublication review compliance." Krishnan Decl. Ex. B. The names are redacted pursuant to Exemptions 3 and 6. One of the names is also redacted pursuant to Exemption 1. *Id.*

The public interest in disclosure of the authors' names is significant. A growing number of former intelligence-agency employees have complained that the prepublication review system has become politicized. In 2012, the CIA opened an internal investigation into whether the agency's processes were being misused to suppress speech critical of the agency. According to the *Washington Post*, the investigation was sparked by "growing concern in the intelligence community that the review process is biased toward agency loyalists, particularly those from the executive ranks."[2] The CIA has not released or publicly described the investigation's findings, but evidence that the CIA exempted favored officials from the agency's prepublication review requirement would bear directly on the question.

The CIA has not met its burden under FOIA to justify withholding the names of the exempted authors. As noted above, the authors whose names are redacted are current or former CIA employees with an "established record of prepublication review compliance." Krishnan Decl. Ex. B. As explained below, based on that fact and on the details of the CIA's prepublication review requirement, it is very likely that the authors submitted works for review and received approval to publish on multiple occasions; that these works mentioned, with the CIA's authorization, the authors' association with the CIA; that the works were published under the authors' real names;

---

Air Force productions. However, until resolution of the readability issues, Plaintiffs do not dismiss the Air Force as a defendant.

[2] Greg Miller & Julia Tate, *CIA Probes Publication Review Board over Allegations of Selective Censorship*, Wash. Post (May 31, 2012), http://wapo.st/2iLpUuP [https://perma.cc/3VND-3DP6].

and that the authors complied with the CIA's prepublication review policy at the time, which required approved authors to publish a disclaimer that "[a]ll statements of fact, opinion, or analysis expressed are those of the author and do not reflect the official positions or views of the [CIA]," that "[n]othing in the contents should be construed as asserting or implying U.S. Government authentication of information or CIA endorsement of the author's views," and that the "material has been reviewed by the CIA to prevent the disclosure of classified information." Krishnan Decl. Ex. C § 2(b)(4). It is also very likely that the CIA complied with its policy by providing "formal approval in writing of submissions" to the authors. *Id*. §§ 2(f)(1) & 2(f)(2); 2(g)(1). Taking these facts as true, the CIA, far from treating the authors' names as confidential, repeatedly authorized their public disclosure.

For this reason, the CIA may not withhold the authors' names under Exemptions 1, 3 or 6. If the CIA did not follow the default practices established by its prepublication review policy, or permitted the authors to depart from those practices, the burden is on the agency to provide an explanation. But it has failed to do so. As explained below, prior to commencing this summary-judgment proceeding and in an effort to avoid unnecessary litigation, Plaintiffs asked the CIA several questions about the authors, the nature of their publications, and the scope of the review exemption. Krishnan Decl. Ex. E. The CIA declined to answer. *Id.* Regardless, on the record before the Court, the CIA has failed to justify its withholding of the authors' names, and Plaintiffs are entitled to summary judgment. At a minimum, the Court should require the CIA to submit a supplemental declaration addressing certain questions about the authors' prior publications, and conduct an *in camera* review.

## Factual and Procedural Background

This action arises from a FOIA request that Plaintiffs submitted to nineteen federal agencies on March 3, 2016. The request sought seven categories of records relating to agencies' prepublication review processes—including "policies, standards, and guidance related to prepublication review." ECF No. 1.

After failing to receive any responsive records from the CIA and exhausting their administrative remedies, Plaintiffs filed this lawsuit on June 21, 2016, naming the CIA as a Defendant, among other agencies. *Id.* On April 7, 2017, the CIA made an initial production, releasing nine documents in full, releasing 20 documents in part, and withholding seven documents in full. Shiner Decl. Ex. F. On June 23, 2017, the CIA made a final production, releasing an additional 59 documents in part and withholding three more in full. Shiner Decl. Ex. G. Plaintiffs challenge only one of the CIA's withholdings: a redaction that appears on the first page of one of the documents produced to Plaintiffs in the CIA's initial production. Krishnan Decl. Ex. B. The CIA has confirmed that the redaction in question is of "the names of several CIA employees." Shiner Decl. ¶ 14.

In the CIA's initial production, the redaction was marked only with Exemptions 3 and 6. *Id.* ¶ 14 n. 1; Krishnan Decl. Ex. A. In determining whether to challenge the redaction, and in an effort to avoid unnecessary litigation, Plaintiffs posed a number of questions to the CIA including: (1) whether the employees whose names are redacted are exempt from review solely for publications authored in the employees' official (rather than personal) capacities; (2) whether the employees whose names are redacted are individuals whose employment with the CIA is publicly known; and (3) whether the employees whose names are redacted have ever published anything in their personal capacities subject to prepublication review under their real names. Krishnan Decl.

Ex. E. The CIA declined to respond to these questions, instead stating only that, under its interpretations of the facts and law, none of the names had been "officially acknowledged." *Id.* After Plaintiffs informed the CIA that they intended to challenge the redaction, the CIA asserted that one of the authors' names was additionally subject to withholding under Exemption 1. Shiner Decl. ¶ 14 n.1. On August 12, 2019, the CIA re-issued an updated version of the document to reflect this assertion. Krishnan Decl. Ex. B.

### Legal Framework

Congress passed FOIA to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). Consistent with this congressional intent, FOIA "requires federal agencies to disclose information to the public upon reasonable request unless the records at issue fall within specifically delineated exemptions." *Reporters Comm. for Freedom of Press v. Fed. Bureau of Investigation*, 877 F.3d 399, 401 (D.C. Cir. 2017) (quoting *Judicial Watch, Inc. v. Fed. Bureau of Investigation*, 522 F.3d 364, 365–66 (D.C. Cir. 2008)).

Defending agencies bear the burden of demonstrating that any withheld documents or redactions fall within the claimed FOIA exemptions. 5 U.S.C. § 552(a)(4)(B); *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 922 F.3d 480, 487 (D.C. Cir. 2019). Agencies carry this burden through affidavits or declarations that "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *People for the Ethical Treatment of Animals v. U.S. Dep't of Health & Human Servs.*, 901 F.3d 343, 349 (D.C. Cir. 2018) (citation omitted); *see also*

*Am. Civil Liberties Union v. U.S. Dep't of Def.* (*ACLU*), 628 F.3d 612, 624 (D.C. Cir. 2011) (noting that to meet its burden, the CIA's justification for a FOIA exemption must "be both 'plausible' and 'logical.'").

At summary judgment, the court assesses *de novo* whether the agency has properly withheld documents under a specific FOIA exemption. 5 U.S.C. § 552(a)(4)(B). To ensure that the documents properly fall within the asserted exemptions, it is within the discretion of the court to require *in camera* inspection of the documents. *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 392–93 (D.C. Cir. 1987); *see also* 5 U.S.C. § 552(a)(4)(B). Finally, even when FOIA exemptions are applicable, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007).

**Argument**

**I.     The names of CIA employees who have been authorized to publish works under their own names are not withholdable under Exemption 3.**

Exemption 3 permits the government to withhold information "specifically exempted from disclosure by statute," if the statute either "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). To sustain a withholding under Exemption 3, the CIA must demonstrate that (1) the statute it has identified does in fact exempt information from disclosure, and (2) the information it has withheld falls within the statute's scope. *Fitzgibbon v. CIA*, 911 F.2d 755, 761 (D.C. Cir. 1990).

The CIA has failed to carry its burden. The CIA relies on Section 6 of the Central Intelligence Act of 1949 ("CIA Act"), but that statute protects only information that the CIA treats as confidential, not the names of authors it has repeatedly authorized to publish about their CIA

6

service under their own names. Moreover, even if Section 6 did protect the authors' names, the CIA has waived reliance on it through official acknowledgement.

A.      **The approved authors' names are not protected by Section 6 of the CIA Act because they are not internal information that the CIA treats as confidential.**

Although Section 6 of the CIA Act has been recognized to be an Exemption 3 statute, the authors' names do not fall within its scope. Section 6 protects the names of CIA personnel only to the extent the CIA treats those names—and their affiliation with the Agency—as confidential. Based on the record evidence, however, the only reasonable inference is that the CIA does not treat the authors' names and Agency affiliation as confidential.

Section 6 states:

In the interests of the security of the foreign intelligence activities of the United States and in order further to implement section 3024(i) of this title that the Director of National Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure, the Agency shall be exempted from the provisions of sections 1 and 2 of the Act of August 28, 1935 . . . and the provisions of any other law which require the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency.

Section 6 exempts the CIA from the requirement to "publi[sh] or disclos[e]" its internal structure, but the statute does not apply to information that the CIA does not treat as confidential. As the D.C. Circuit recognized in *Phillippi v. CIA*, "the wording of [Section 6] strongly suggests that the authority it confers is specifically directed at any statutes that would otherwise require the Agency to *divulge* information about its internal structure." 546 F.2d 1009, 1015 n.14 (D.C. Cir. 1976) (emphasis added). But where, as here, the CIA itself treats the information as non-confidential— and has already effectively "divulge[d]" it—Section 6 does not apply. Indeed, Plaintiffs are not aware of any case that has upheld reliance on Section 6 to protect information that the CIA does not treat as confidential.

This interpretation of Section 6 is consistent with the provision's clear purpose. As the D.C. Circuit has recognized, Section 6 is meant "to protect the security of foreign intelligence activities and to further the protection of intelligence sources and methods." *DiBacco v. Dep't of the Army*, 926 F.3d 827, 836 (D.C. Cir. 2019) (quoting *Halperin v. CIA*, 629 F.2d 144, 151 (D.C. Cir. 1980)). Although the CIA need not point to a specific "nexus" between "personnel data" withheld under Section 6 and the "security of foreign intelligence activities or the protection of intelligence sources and methods," *Baker v. CIA*, 580 F.2d 664, 669 (D.C. Cir.1978), the agency must still show that "the withheld material falls within a statute meeting the exemption's conditions." *DiBacco*, 926 F.3d at 835 (citation and quotation marks omitted). To meet that burden with respect to Section 6, the CIA must demonstrate that it treats the information as confidential.

The congressional reports accompanying the CIA Act support this interpretation. They indicate that the purpose of the CIA Act in general was to provide the CIA with the "authorities necessary for its proper administration," S. Rep. No. 81-106, at 1 (1949), and that the purpose of Section 6 in particular was to "protect[] the *confidential* nature of the Agency's functions." *Id*. (emphasis added); *see also* H. Rep. No. 81-160, at 2 (observing that Section 6 and other provisions of the CIA Act "relating to the internal administration of the Agency . . . will enable the Agency to protect its *confidential* functions" and "are essential to the successful operation of an efficient intelligence service" (emphasis added)). Relying on this legislative history, the D.C. Circuit has applied Section 6 to personnel information that is closely held by the CIA. For example, in *Halperin*, the Court cited the legislative history in interpreting "personnel employed by the Agency" to include personnel temporarily affiliated with the CIA. *Halperin*, 629 F.2d at 151 & 151 n.4. The Court recognized "the congressional intent [in Section 6] to protect 'the confidential nature of the [CIA]'s functions,'" and held, based in part on that intent, that the provision extends

to temporary personnel, observing that "a contrary interpretation" could "seriously impair the CIA's ability to conduct *classified* operations." *Id.* (emphasis added) (citing S. Rep. No. 81-106, at 1 (1949)).

The CIA urges a contrary interpretation that would exempt from disclosure the names of all CIA personnel, irrespective of whether the Agency has treated them as confidential. Gov't Br. 8. Under this interpretation, Section 6 would, for example, apply even to the names of the CIA director and other senior, public officials at the Agency. Such a result is inconsistent not only with Section 6's text and legislative history, but also the law of this circuit. The D.C. Circuit has repeatedly emphasized that Section 6 "is a very narrow and explicit exception to the requirements of the FOIA" and cautioned against reading it too broadly. *See Baker*, 580 F.2d at 670; *Phillippi*, 546 F.2d at 1015 n.14 (Section 6 does not "allow[] the Agency to refuse to provide any information at all about anything it does"); *id.* ("[T]here is no indication that that the section is to be read as a provision authorizing the Agency to withhold any information it may not, for some reason, desire to make public."). Indeed, it has held that "[o]nly the specific information on the CIA's personnel and internal structure that is listed in [Section 6] will obtain protection from disclosure," *Baker*, 580 F.2d at 670, and in cases where it has upheld claims under the statute there has been no record evidence indicating that the CIA treated the information as non-confidential.

Here, far from treating the authors' names as confidential, the CIA appears to have repeatedly authorized their disclosure. As explained above, the CIA granted the authors an exemption from prepublication review "based on an established record of prepublication review compliance." Krishnan Decl. Ex. B. It is very likely, therefore, that the CIA has authorized the authors to publish about their government service, and to disclose their names and Agency affiliation, multiple times. *See supra* pp. 1–3. It is also very likely that the CIA required those

authors to include a disclaimer in their publications, revealing that they were Agency employees subject to the Agency's prepublication review requirement.[3] *Id.* Finally, by granting the authors a review exemption, it is likely that the CIA granted the authors permission to continue publishing under their own names, even if that permission was "limited to a narrow topic or defined circumstance." Krishnan Decl. Ex. B.

In light of this conduct, the CIA's claim that release of the authors' names "is reasonably likely to significantly impair the CIA's ability to carry out its core mission of gathering and analyzing intelligence," Shiner Decl. ¶ 21, is neither logical nor plausible. *See ACLU*, 628 F.3d at 624. Almost certainly, the CIA did not regard the names of these authors—and the fact of their affiliation with the CIA—as confidential. The names do not, therefore, fall within the scope of Section 6, and the government has failed to meet its burden of demonstrating that Exemption 3 applies.[4]

---

[3] The full text of the disclaimer required by the CIA's prepublication review requirement in 2009 was as follows:

> All statements of fact, opinion, or analysis expressed are those of the author and do not reflect the official positions or views of the Central Intelligence Agency (CIA) or any other U.S. Government agency. Nothing in the contents should be construed as asserting or implying U.S. Government authentication of information or CIA endorsement of the author's views. This material has been reviewed by the CIA to prevent the disclosure of classified information.

Krishnan Decl. Ex. C § 2(b)(4).

The CIA's current prepublication review policy requires an identical disclaimer. Krishnan Decl. Ex. D § 2(b)(4).

[4] Neither of the cases cited by the government, *DiBacco* and *Blazy v. Tenet*, 979 F. Supp. 10, 25 (D.D.C. 1997), *aff'd*, No. 97-5330, 1998 WL 315583 (D.C. Cir. May 12, 1998), is to the contrary. Although the courts there sustained the CIA's withholding under Exemption 3 (and Section 6) of names of CIA employees, there was no indication in the record, as there is here, that the CIA had repeatedly treated the names as non-confidential.

**B.      Even if the approved authors' names are protected by Section 6 of the CIA Act, they are not withholdable because they have been officially acknowledged.**

Even if the authors' names are protected by Section 6 of the CIA Act, they are not protected by Exemption 3 because the CIA has officially acknowledged them. It is well-established that a FOIA plaintiff may compel disclosure of information "even over an agency's otherwise valid exemption claim" if the government previously "officially acknowledged" the information. *ACLU*, 628 F.3d at 620 (citations omitted); *see also Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1279 (D.C. Cir. 1992) ("[T]he government cannot rely on an otherwise valid exemption claim to justify withholding information that has been 'officially acknowledged' or is in the 'public domain.'" (quoting *Afshar v. Dep't of State*, 702 F.2d 1125, 1130–34 (D.C. Cir. 1983))).[5] The rationale behind the doctrine is that "once information has become public, any harm the agency fears from disclosure has already been sustained." *BuzzFeed*, 344 F. Supp. 3d at 407 (citing *Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16, 19 (D.C. Cir. 1999)); *see also Florez v. CIA*, 829 F.3d 178, 186 (2d Cir. 2016) (explaining that even public disclosures that fail the official acknowledgment test are relevant evidence on summary judgment that "may well shift the factual groundwork upon which a district court assesses the merits" of an agency's withholdings under FOIA).

---

[5] The D.C. Circuit has also relied on the "public-domain doctrine" to determine whether the government has waived a FOIA exemption. *See Muslim Advocates v. U.S. Dep't of Justice*, 833 F. Supp. 2d 92, 99 (D.D.C. 2011) (Sullivan, J.) (describing the public-domain doctrine as the "dominant paradigm for evaluating the waiver of a potential FOIA exemption"). Under that doctrine, "materials normally immunized from disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999). Although distinct, some district courts have treated the official acknowledgement and public domain doctrines interchangeably. *See, e.g., BuzzFeed, Inc. v. Dep't of Justice*, 344 F. Supp. 3d 396, 410 (D.D.C. 2018); *Am. Immigration Lawyers Ass'n v. U.S. Dep't of Homeland Sec.*, 852 F. Supp. 2d 66, 74 (D.D.C. 2012) (Sullivan, J.). The differences between the doctrines are not material here, as Plaintiffs succeed under either.

To qualify as officially acknowledged: "(1) the information requested must be as specific as the information previously released; (2) the information requested must match the information previously disclosed; and (3) the information requested must already have been made public through an official and documented disclosure." *ACLU*, 628 F.3d at 620–21. Thus, "a plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Afshar*, 702 F.2d at 1130. Plaintiffs satisfy this test.

As already discussed, the authors whose names are redacted are CIA employees with an "established record of prepublication review compliance." Krishnan Decl. Ex. B. It is evident, therefore, that the authors submitted works for review and received approval to publish on multiple occasions. *See supra* pp. 1–3. Based on the CIA's prepublication review policy at the time, it is very likely that the following are also true: First, because current and former CIA employees generally need only submit works that are based on their time in government service, any published works disclosed not only the authors' names but also their association with the Agency. Krishnan Decl. Ex. C §§ 2(b)(1) & (3). Second, by clearing the authors' works for publication, the CIA authorized that disclosure. *Id.* §§ 2(f)(2) & 2(g)(2). Third, the CIA sent clearance letters to the authors memorializing that authorization. *Id.* §§ 2(f)(1) & 2(g)(1). Fourth, the CIA required the authors to publish a disclaimer explaining that the material had been reviewed by the CIA, *id.* § 2(b)(4), thereby putting the public on notice that they were Agency employees subject to the Agency's prepublication review requirement.[6]

---

[6] In response to this FOIA lawsuit, the CIA produced several letters from the CIA's Publications Review Board to authors which confirm that the CIA requires approved authors to publish a disclaimer. Three letters state that "the Board requires you to include the following disclaimer" and then include the disclaimer contained in the CIA's prepublication review policy. Krishnan

These logical inferences about the authors' prior publications satisfy Plaintiffs' initial burden of production. The information requested—the authors' names together with the fact of their association with the CIA—matches and is as specific as information previously disclosed. Further, the CIA itself has published this information through operation of its prepublication review policy, which requires (1) that the CIA issue clearance letters to approved authors which authorize them to publish specific works under their own names, and (2) that approved authors include disclaimers which indicate that published works have been reviewed by the Agency. Krishnan Decl. Ex. C §§ 2(b)(4), 2(f)(1) & 2(g)(1). To satisfy Plaintiffs' initial burden of production, it is sufficient that Plaintiffs point to these policy requirements.[7] Collectively, they establish that the CIA disclosed the authors' names and CIA affiliation and preserved them in multiple "permanent public record[s]." *Cottone*, 193 F.3d at 554. Here, however, Plaintiffs can also point to the existence of the authors' works themselves, which, as explained above, very likely mention the authors' CIA service, and which were published with the CIA's authorization.

The fact that Plaintiffs cannot point to specific works published by the authors is not dispositive. The D.C. Circuit has expressly rejected a "uniform, inflexible rule requiring every public-domain claim to be substantiated with a hard copy simulacrum of the sought-after material." *Cottone*, 193 F.3d at 555. Plaintiffs have demonstrated that "specific information [is] in the public domain that appears to duplicate that being withheld." *Id.* (citing *Afshar*, 702 F.2d at 1130). Having done so, Plaintiffs have met their burden, and the CIA must now "rebut the plaintiffs' proof" by

---

Decl. Exs. F, G & H. A fourth letter thanks the approved author for "including the Board's required disclaimer in your book." *Id.* Ex. I.

[7] As the D.C. Circuit has recognized, a FOIA plaintiff may fulfill their initial burden of production by pointing to a regulation that requires the disclosure of the specific information sought. *See Niagara*, 169 F.3d at 20 (allowing a citation to a regulation requiring the filing of a public form to meet the burden of production); *see also Inner City Press/Cmty. on the Move v. Bd. of Governors of Fed. Reserve Sys.*, 463 F.3d 239, 249 (2d Cir. 2006) (same).

demonstrating that these acknowledgments have been "removed from the public domain." *Cottone*, 193 F.3d at 556. The CIA has made no such showing. Indeed, the very fact that the authors in question received an exemption from prepublication review suggests that they regularly publish works disclosing their names and the fact of their association with the Agency.

The government cites *Afshar*, but that case is not to the contrary. Gov't Br. 10. In *Afshar*, the D.C. Circuit rejected the plaintiff's claim that the CIA's "screening and approval of [certain] books [published by former CIA officials] brought them into the official realm and made the disclosures therein tantamount to official executive acknowledgments, rather than unauthorized comments by . . . former government official[s]." 702 F.2d at 1133–34 (quotation marks omitted). Crucially, however, the disclosures the court was addressing involved the contents of the books, not the fact that their authors were former CIA officials. The court held that the "fact of CIA approval" did not constitute an official acknowledgement of the books' statements regarding the CIA's relationship with a foreign intelligence service. *Id.* at 1134. The court did not, however, address whether the fact of the CIA's approval would constitute an official acknowledgement of the authors' names and association with the CIA. That is the question at issue here, and as explained above, the answer is "yes." Accordingly, even if the withheld information falls within an exemption statute, the CIA has waived its Exemption 3 claim over that information.

## II.    The names of CIA employees who have been authorized to publish works under their own names are not withholdable under Exemption 6.

FOIA's Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "When confronted with a challenge to a withholding of agency records on the basis of [Exemption 6], courts must make a two-step determination *de novo*." *Arieff v. U.S. Dep't of Navy*, 712 F.2d 1462, 1466 (D.C. Cir. 1983). First, they must determine whether the requested

information is "contained in a personnel, medical, or similar file." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002). Second, and if it is, they must address whether "the information is of such a nature that its disclosure would constitute a clearly unwarranted privacy invasion." *Id*.

The CIA fails at both steps. The exempted authors' names are not "personnel, medical, or similar file[s]" because they do not contain detailed personal information about agency employees. In any event, disclosure of the names would not involve a clearly unwarranted privacy invasion because the privacy interest in them is *de minimis*, and because this interest is clearly outweighed by the public's interest in further understanding the CIA's prepublication review regime, including, for example, whether it favors agency supporters and discriminates against agency critics.

### A. The approved authors' names are not (and are not found in) personnel, medical, or similar files.

The authors' names are not "personnel" files. Personnel files "ordinarily contain information such as 'where (an individual) was born, the names of his parents, where he has lived from time to time, his high school or other school records, results of examinations, evaluations of his work performance.'" *Ray v. Turner*, 587 F.2d 1187, 1221–22 (D.C. Cir. 1978) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 377 (1976)); *see also Milner v. Dep't of Navy*, 562 U.S. 562, 570 (2011). In other words, "personnel files" reveal "confidential personal data." *Rose*, 425 U.S. at 372. A list of names of CIA employees exempted from prepublication review, shorn of all other personal information, and circulated on an unclassified, internal blog, is not that kind of data.

*Rose* is instructive. In that case, the Supreme Court held that case summaries of honors and ethics hearings at a service academy, with personal references and other identifying material deleted, were not "personnel files" because they did not contain the "'vast amounts of personal

data' which constitute the kind of profile of an individual ordinarily to be found in his personnel file," and because access to the reports had not been "drastically limited, as is customarily true of personnel files, only to supervisory personnel." *Rose*, 425 U.S. at 377 (quoting S. Rep. No. 89-813, at 9 (1965)). So too, here. The list of names does not contain "vast amounts of personal data," merely the names themselves. *Id.* Moreover, the CIA does not appear to have "drastically limited" access to the list within the agency. *Id.* Rather, the list appears to have been available to *any* CIA employee who had access to the internal blog on which they were posted. *Id.*; *see also Milner*, 562 U.S. at 570 (noting that a personnel file is "the file typically maintained in the human resources office").

Nor are the authors' names "medical" or "similar" files. As the Supreme Court has recognized, Exemption 6 was "intended to cover detailed Government records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982) (quoting H.R. Rep. No. 89-1497, at 11 (1966)). The authors' names "are not files that would normally be described as 'detailed Government records on an individual.'" *Norton*, 309 F.3d at 33 (citing *Wash. Post Co.*, 456 U.S. at 602). The names do not contain medical information that applies to a particular individual. Nor do they contain "information on a person's date or place of birth, marriage or employment history, or other intimate details or 'damaging information.'" *Id.* In fact, they contain no personal information beyond the names themselves. Krishnan Decl. Ex. E ("The withholding in question is of CIA employee names only; there are no position titles behind the redaction."). And as this Court has held, the names of government employees, without more, are not ordinarily considered detailed personal information. *See, e.g.*, *Friedman v. U.S. Secret Serv.*, 923 F. Supp. 2d 262, 281 (D.D.C. 2013) (concluding that the names and work numbers of government employees and service members "ordinarily [are] not considered

'similar files' for purposes of Exemption 6"); *VoteHemp, Inc. v. Drug Enforcement Admin.*, 567 F. Supp. 2d 1, 14–15 (D.D.C. 2004) (finding that information which "merely identifies the names of government officials who authored documents and received documents from third parties concerning hemp" did not fit definition of similar files for purposes of Exemption 6).

### B. Disclosure would not constitute a clearly unwarranted invasion of privacy because the public's interest in the administration of the CIA's prepublication review processes outweighs any privacy interest in the approved authors' names.

Even assuming the exempted authors' names are somehow considered to be personnel, medical, or similar files, the CIA's invocation of Exemption 6 is unavailing because release of the names would not constitute a clearly unwarranted invasion of privacy. "[T]he disclosure of names . . . is not inherently and always a significant threat to the privacy of those listed." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 877 (D.C. Cir. 1989). "Rather, the privacy threat depends on the individual characteristics that the disclosure reveals and the consequences that are likely to ensue." *Norton*, 309 F.3d at 36. Disclosure of the authors' names here would implicate, at most, a *de minimis* privacy interest because the authors have apparently already decided to write publicly under their own names about their experiences in government. Indeed, the employees have published routinely enough to receive an exemption from the CIA's prepublication review requirement. *See* Krishnan Decl. Ex. B (noting that the authors are exempted from prepublication review "based on an established record of prepublication review compliance"). Further, the government has offered no reason why disclosure should "invite[] unwanted intrusion," embarrassment, or retaliatory action, and it is difficult to see any. *Horner*, 879 F.2d at 878; *cf. Ditlow v. Shultz*, 517 F.2d 166, 170 n.15 (D.C. Cir. 1975) (holding that the disclosure of airline passengers' names and addresses did not constitute a clearly unwarranted privacy invasion because "[t]he only consequence of the exposure" would be a "mailed notice" of

17

their membership in a class action). On Plaintiffs' understanding, the employees' names and their association with the CIA are a matter of public record.

Whatever privacy interest these authors possess in their names, however, is outweighed by the public's significant interest in better understanding the CIA's prepublication review regime. As the Supreme Court has recognized, "[t]he phrase 'clearly unwarranted invasion of personal privacy' enunciates a policy that will involve a balancing of interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information.'" *Rose*, 425 U.S. at 372. Courts balance these interests "guided by the instruction that, under Exemption 6, the presumption in favor of disclosure is as strong as can be found anywhere in the Act." *Norton*, 309 F.3d at 32 (quotation marks omitted). This approach is consistent with FOIA's "focus[] on the citizens' right to be informed about 'what their government is up to.'" *Horner*, 879 F.2d at 878 (citing *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).

Disclosure of the exempted authors' names "falls squarely within that statutory purpose." *Horner*, 879 F.2d at 879. In recent years, agency prepublication review processes have grown increasingly dysfunctional and politicized. *See, e.g.*, Jack Goldsmith & Oona Hathaway, *The Government's Prepublication Review Process is Broken*, Wash. Post (Dec. 25, 2015), http://wapo.st/2H0OPBJ [https://perma.cc/NBY8-Y664]; 115 Cong. Rec. H3300–01 (daily ed. May 3, 2017) (statement of Rep. Nunes); 115 Cong. Rec. S2750 (daily ed. May 4, 2017) (statement of Sen. Burr). Credible allegations have been made that agency processes, including the CIA's, discriminate between agency supporters and critics. For example, former intelligence-agency employees who wrote books criticizing the CIA's torture of prisoners apprehended in the "war on terror" have complained publicly that their books were heavily redacted even as former CIA

officials' supportive accounts of the same policies were published without significant excisions of similar information. Miller & Tate, *supra* note 2. In 2012, the CIA began internally investigating whether its prepublication review processes were being used in part to censor agency critics. *Id.* The CIA has not released or publicly described the investigation's findings.

Release of the authors' names would thus shed light on an area of significant public concern—how the CIA's prepublication review processes operate, including whether the CIA's processes have been politicized and discriminate on the basis of viewpoint. Specifically, it would shed light on why some individuals have received an exemption from the CIA's prepublication review requirement, and others have not; and the types of "narrow topic[s] or defined circumstance[s]" to which the exemption might extend. *See* Krishnan Decl. Ex. B. The public's substantial interest in this information outweighs any privacy interest in the exempted authors' names. Thus, the CIA has not met its burden to show that disclosing the authors' names would constitute a clearly unwarranted invasion of personal privacy, and it has therefore failed to justify its withholding under Exemption 6.

## III.   The name of a formerly covert CIA employee who has been authorized to publish works under their name is not withholdable under Exemption 1.

In addition to Exemptions 3 and 6, the CIA relies on Exemption 1 with respect to a single name that the Agency claims belongs to a current or formerly covert agency officer. Gov't Br. at 5–7; Shiner Decl. ¶ 17. Plaintiffs challenge the redaction of that name only insofar as two facts are true: first, the individual is a former, rather than a current, covert officer, and second, the formerly covert officer disclosed their affiliation with the CIA in one or more of their publications. In those circumstances, release of the officer's name could not harm the nation's security because the officer is no longer covert, and because it would reveal no more than what the public already knows—that the officer, who has repeatedly published under their own name, is associated with

the CIA. Further, even if the CIA has a valid Exemption 1 claim, it may not rely on that claim because the officer's name has been officially acknowledged.

The government may withhold information under Exemption 1 only if that information is "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" and if that information is "in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1); *see also ACLU*, 628 F.3d at 624. The CIA invokes Exemption 1 with respect to a single name pursuant to Executive Order 13,526. Gov't Br. at 5. Executive Order 13,526, which authorizes the classification of "intelligence sources or methods," provides that information "shall not be considered for classification" unless its authorization "could reasonably be expected to cause identifiable or describable damage to the national security," Exec. Order No. 13,526 § 1.4(c), and the government can "identify or describe the damage," *id.* § 1.1(a)(4). "Thus, the 'intelligence sources or methods' withheld by the government are properly classified" under Executive Order 13,526, "and therefore exempt from disclosure under exemption 1, only if the CIA can establish that public disclosure of the withheld information will harm national security." *ACLU*, 628 F.3d at 624.

The CIA has failed to establish that the withheld information is properly classified pursuant to Executive Order 13,526. Although the CIA asserts that the withholding protects the name of a covert agency officer, it has not provided "reasonable specificity of detail" to demonstrate that disclosure of the name would cause harm to national security. *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009). As discussed above, the officer (along with the other individuals whose names are redacted) received an exemption from prepublication review "based on an established record of prepublication review compliance." Krishnan Decl. Ex. B. It is very likely, therefore, that the officer has published multiple works under their name about their time in government. *See*

*supra* pp.1–3. Taking that fact as true, releasing the withheld information would not reveal any more than the public already knows—the formerly covert officer's name and affiliation with the CIA. The CIA's conclusory assertions of harm do not establish that such information logically falls within Exemption 1. *ACLU*, 628 F.3d at 625; *AP v. FBI*, 265 F. Supp. 3d 82, 92 (D.D.C. 2017) ("In cases where the applicability of certain FOIA exemptions is at issue, agencies may rely on supporting declarations that are reasonably detailed and non-conclusory").

The CIA's treatment of the officer's name is revealing. As detailed above, the CIA published the name on an unclassified internal blog. Indeed, the Agency did not claim Exemption 1 with respect to the name until Plaintiffs indicated their intention to challenge its withholding. To sustain its burden in this case, the CIA must show, at a minimum, that the officer is currently covert and, if they are not, that the officer has not previously published their affiliation with the CIA. If the Agency cannot demonstrate these facts, then it has failed to justify its withholding under Exemption 1.

Further, even if the CIA had a valid Exemption 1 claim, it has waived this claim by officially acknowledging the author's name, for the reasons previously explained. *See supra* I.B.

## IV.    Alternatively, the court should require the government to submit a supplemental declaration and conduct an *in camera* review.

When agencies' "initial declarations fail to provide all necessary information," courts "generally request supplemental declarations." *Crestek, Inc. & Subsidiaries v. Internal Revenue Serv.*, 322 F. Supp. 3d 188, 200 (D.D.C. 2018). Here, the CIA's declaration is insufficiently detailed to permit meaningful review of the Agency's exemption claims. This Court should require the CIA to submit a supplemental declaration addressing, at a minimum, the following questions: (1) Are the authors exempt from review solely for official-capacity publications?; (2) Have the authors published anything in their personal capacities subject to prepublication review under their

own names?; (3) If so, do their works mention their association with the CIA or include a disclaimer acknowledging that the works were reviewed by the CIA?; (4) Does the CIA's Exemption 1 claim relate to a CIA officer who is currently or formerly covert?; and (5) If the officer was formerly covert, have they published anything in their personal capacities subject to prepublication review that mentioned their covert status? The declaration should also provide a list of the works the authors submitted for prepublication review and, if possible, the works the authors actually published. In correspondence with counsel for the CIA, counsel for Plaintiffs requested that the CIA provide much of this information, but the CIA refused to provide it. Krishnan Decl. Ex. E. Without it, however, the Court cannot conduct a meaningful review of the CIA's claims of exemption.

In addition to ordering the CIA to submit a supplemental declaration, this Court should conduct an *in camera* review of the document containing the authors' names. Courts have discretion to conduct an *in camera* review of records if they believe that inspection is necessary "to make a responsible *de novo* determination on the claims of exemption." *Juarez v. Dep't of Justice*, 518 F.3d 54, 60 (D.C. Cir. 2008) (citation omitted). Courts have this discretion regardless of whether a case involves national security concerns, and regardless of bad faith. *Elec. Frontier Found. v. Dep't of Justice*, 57 F. Supp. 3d 54, 58 (D.D.C. 2014). *In camera* review is appropriate here. The Court cannot conduct a meaningful *de novo* determination on the CIA's exemption claims without reviewing the authors' names. Moreover, the names are contained in a single document, and so *in camera* review would not be burdensome. *See Hall v. CIA*, 268 F. Supp. 3d 148, 166 (D.D.C. 2017) (noting that *in camera* inspection may be "particularly appropriate . . . when the number of withheld documents is relatively small" (quoting *Quinon v. FBI*, 86 F.3d 1222, 1228 (D.C. Cir. 1996))).

**Conclusion**

For the reasons stated above, the CIA has failed to justify its withholding of the approved authors' names. Accordingly, this Court should grant summary judgment in favor of Plaintiffs and order the CIA to release the names. Alternatively, Plaintiffs respectfully ask the Court to require the CIA to submit a supplemental declaration to determine the propriety of the Agency's withholding, to conduct an *in camera* review of the withholding, and to identify any segregable information for prompt production to Plaintiffs.

October 10, 2019                                              Respectfully submitted,

 */s/ Brett Max Kaufman*                                       */s/ Ramya Krishnan*
Brett Max Kaufman (D.C. Bar No. NY0224)      Ramya Krishnan
American Civil Liberties Union                        Meenakshi Krishnan
125 Broad Street—18th Floor                           Alex Abdo
New York, NY 10004                                    Knight First Amendment Institute
T: 212.549.2500                                         at Columbia University
F: 212.549.2654                                       475 Riverside Drive, Suite 302
bkaufman@aclu.org                                     New York, NY 10115
                                                      T: 646.745.8500
Arthur B. Spitzer (D.C. Bar No. 235960)      ramya.krishnan@knightcolumbia.org
American Civil Liberties Union
  of the District of Columbia
915 15th Street, NW—2d floor
Washington, D.C. 20005
T: 202.601.4266
aspitzer@acludc.org

*Counsel for Plaintiffs*