IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION and AMERICAN CIVIL LIBERTIES UNION FOUNDATION, | ) ) ) ) | |
| *Plaintiffs*, | ) ) | Civil Action No. 1:16-cv-1256 (EGS) |
| *v.* | ) ) | |
| CENTRAL INTELLIGENCE AGENCY, *et al.*, | ) ) | |
| *Defendants*. | ) ) ) | |

**DEFENDANT CENTRAL INTELLIGENCE AGENCY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

    I.   The Challenged Redaction Is Proper under FOIA Exemptions 1, 3, and 6. ...................... 2

        A.  CIA Properly Withheld Information under Exemptions 1 and 3. ................................. 3

            1.  CIA Properly Invoked Exemptions 1 and 3 in the First Instance. ........................ 3

            2.  The CIA Did Not Waive Either Exemption through Any Official Acknowledgement. ................................................................................................ 4

        B.  CIA Properly Withheld Information under Exemption 6. ......................................... 11

    II.  No Additional Information Is Necessary to Resolve This Case. ...................................... 13

CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

## CASES

*Am. Civil Liberties Union v. CIA*,
  710 F.3d 422 (D.C. Cir. 2013) ("*ACLU v. CIA*") ............................................................. 1, 4, 14

*Am Civil Liberties Union v. DoD*,
  628 F.3d 612 (D.C. Cir. 2011) ("*ACLU v. DoD*") .......................................................... 3, 5, 13

*Afshar v. Dep't of State*,
  702 F.2d 1125 (D.C. Cir. 1983) ...................................................................................... 5

*Agility Pub. Warehousing Co. K.S.C. v. NSA*,
  113 F. Supp. 3d 313 (D.D.C. 2015) ................................................................................ 2

*Associated Press v. FBI*,
  265 F. Supp. 3d 82 (D.D.C. 2017) .................................................................................. 4, 6

*Canning v. DOJ*,
  848 F. Supp. 1037 (D.D.C. 1994) .................................................................................. 5, 6

*Canning v. DOJ*,
  No. CV 11-1295(GK), 2017 WL 2438765 (D.D.C. June 5, 2017) ................................ 3

*Carter v. U.S. Dep't of Commerce*,
  830 F.2d 388 .................................................................................................................. 12

*Competitive Enter. Inst. v. NSA*,
  78 F. Supp. 3d 45 (D.D.C. 2015) .................................................................................... 5, 7

*Ctr. for Auto Safety v. U.S. Dep't of Treasury*,
  133 F. Supp. 3d 109 (D.D.C. 2015) ................................................................................ 14

*Ctr. for Nat'l Sec. Studies v. DOJ*,
  331 F.3d 918 (D.C. Cir. 2003) ........................................................................................ 14

*Davy v. CIA*,
  357 F. Supp. 2d 76 (D.D.C. 2004) .................................................................................. 12

*DiBacco v. U.S. Dep't of Army*,
  983 F. Supp. 2d 44 (D.D.C. 2013), *aff'd in relevant part, remanded in part sub nom.*
  *DiBacco v. U.S. Army*, 795 F.3d 178 (D.C. Cir. 2015) ................................................. 3

*DOJ v. Reporters Comm. for Freedom of Press,*
   489 U.S. 749 (1989) ........................................................................................ 12

*Elec. Privacy Info. Ctr. v. DHS,*
   384 F. Supp. 2d 100 (D.D.C. 2005) ................................................................. 14

*Elec. Privacy Info. Ctr. v. NSA,*
   678 F.3d 926 (D.C. Cir. 2012) .......................................................................... 5

*Fitzgibbon v. CIA,*
   911 F.2d 755 (D.C. Cir. 1990) ................................................................. 4, 5, 10

*Hall v. CIA,*
   268 F. Supp. 3d 148 (D.D.C. 2017) ................................................................... 4

*In re Sealed Case,*
   494 F.3d 139 (D.C. Cir. 2007) .......................................................................... 3

*James Madison Project v. CIA,*
   607 F. Supp. 2d 109 (D.D.C. 2009) ................................................................... 4

*Klayman v. CIA,*
   170 F. Supp. 3d 114 (D.D.C. 2016) ................................................................... 3

*Larson v. Dep't of State,*
   565 F.3d 857 (D.C. Cir. 2009) ..................................................................... 13, 14

*Long v. OPM,*
   692 F.3d 185 (2d Cir. 2012) ............................................................................ 12

*Mobley v. CIA,*
   806 F.3d 568 (D.C. Cir. 2015) ......................................................................... 13

*Nat'l Ass'n of Ret'd Fed. Employees v. Horner,*
   879 F.2d 873 (D.C. Cir. 1989) ......................................................................... 13

*N.Y. Times Co. v. NASA,*
   852 F.2d 602 (D.C. Cir. 1988) ..................................................................... 11, 12

*Pub. Citizen v. Dep't of State,*
   11 F.3d 198 (D.C. Cir. 1993) ............................................................................. 5

*Ray v. Turner,*
   587 F.2d 1187 (D.C. Cir. 1978) ....................................................................... 14

*SafeCard Servs., Inc. v. SEC*,
   926 F.2d 1197 (D.C. Cir. 1991) ........................................................................ 7, 14

*U.S. Dep't of State v. Wash. Post Co.*,
   456 U.S. 595 (1982) ...................................................................................... 11, 12

*Valfells v. CIA*,
   717 F. Supp. 2d 110 (D.D.C. 2010), *aff'd sub nom.*
   *Moore v. CIA*, 666 F.3d 1330 (D.C. Cir. 2011) ..................................................... 5

*Wolf v. CIA*,
   473 F.3d 370 (D.C. Cir. 2007) ...................................................................... 4, 5, 10

## STATUTES

5 U.S.C. § 552 ............................................................................................... 11, 13

50 U.S.C. §§ 3501-3524 .......................................................................................... 3

50 U.S.C. § 3507 ........................................................................................... 3, 4, 10

## RULES

Fed. R. Civ. P. 56 .................................................................................................... 7

**<u>INTRODUCTION</u>**

In this Freedom of Information Act ("FOIA") action, Plaintiffs American Civil Liberties Union and American Civil Liberties Union Foundation (collectively, "the ACLU" or "Plaintiffs") challenge a single withholding, in a single Central Intelligence Agency ("CIA" or "Agency") document. As CIA has explained, the withholding in question redacts the names of certain current or former CIA employees who, as of May 2009, had been granted an exemption from the CIA's standard prepublication procedures—and the information in question is exempt from disclosure under FOIA Exemptions 1, 3, and 6.

With respect to CIA's Exemption 1 and 3 withholdings, the ACLU does not contend that the names are not properly protected by these exemptions in the first instance. Rather, they attempt to establish a waiver of the exemptions through the "official acknowledgement" doctrine, pursuant to which "when an agency has officially acknowledged otherwise exempt information through prior disclosure, the agency …waive[s] its right to claim an exemption with respect to that information." *Am. Civil Liberties Union v. CIA*, 710 F.3d 422, 426 (D.C. Cir. 2013) ("*ACLU v. CIA*"). This rule is strictly and narrowly construed, however, and is satisfied only when each of three criteria are met: (1) the information requested must be as specific as the information previously released; (2) the information requested must match the information previously disclosed; and (3) the information requested must already have been made public through an official and documented disclosure. *Id.* at 426-27. On Plaintiffs' theory, these elements are satisfied because "it is *very likely* that the authors submitted works for review and received approval to publish on multiple occasions; that these works mentioned, with the CIA's authorization, the authors' association with the CIA; . . . and that the authors complied with the CIA's prepublication review policy at the time, which required approved authors to publish a

1

disclaimer" to the effect that, in approving the work for publication, the CIA did not authenticate its contents. Pls.' Mem. in Supp. of Cross-Mot. for Partial Summ. J. and Opp'n to Def. CIA's Mot. for Summ. J. at 2-3 ("Pls.' Mem."), ECF No. 55-1 (emphasis added). But  "speculation" of this nature—*i.e.*, that is wholly unsupported by the factual record, much less by any specifically identified Agency disclosure—is simply "not sufficient to waive an agency's right to withhold information under FOIA." *Agility Pub. Warehousing Co. K.S.C. v. NSA*, 113 F. Supp. 3d 313, 330 (D.D.C. 2015). Moreover, and as set forth in detail below, Plaintiffs' stack of nested suppositions does not in any event withstand scrutiny, and cannot logically support the conclusions that Plaintiffs draw.

Finally, Plaintiffs also challenge CIA's application of Exemption 6 to the information at issue, and appear to argue that even in the absence of any official acknowledgement, the Exemption 6 withholding is improper. For the reasons given below, this argument likewise fails. Accordingly, the Court should properly enter summary judgment in CIA's favor, and deny Plaintiffs' motion for the same.

## **ARGUMENT**

### **I.     The Challenged Redaction Is Proper under FOIA Exemptions 1, 3, and 6.**

As explained, Plaintiffs challenge only a single withholding from a single CIA document, which redacts the names of certain current or former CIA employees who, as of May 2009, had been granted an exemption from the CIA's standard prepublication procedures. The withholding in question is proper in part under FOIA Exemptions 1, and in full under Exemptions 3 and 6.

A.    **CIA Properly Withheld Information under Exemptions 1 and 3.**

   1.    **CIA Properly Invoked Exemptions 1 and 3 in the First Instance.**

Because Plaintiffs' arguments that seek to overcome CIA's Exemption 1 and 3 withholdings are identical, CIA will address these exemptions together. First, CIA properly invoked Exemption 1 to protect one of the names in the challenged redaction, which is of a covert Agency officer. *See* Def. Mem. at 5-7; Shiner Decl. ¶ 17. It is well-established that such information may be classified and, accordingly, courts routinely uphold Exemption 1 assertions over the identities of persons whose affiliation with the Agency is covert. *See, e.g.*, *DiBacco v. U.S. Dep't of Army*, 983 F. Supp. 2d 44, 58-61 (D.D.C. 2013), *aff'd in relevant part, remanded in part sub nom. DiBacco v. U.S. Army*, 795 F.3d 178 (D.C. Cir. 2015) (upholding Exemption 1 assertion over, *inter alia*, "the true names of covert CIA employees"); *Canning v. DOJ*, No. CV 11-1295(GK), 2017 WL 2438765, at *7 (D.D.C. June 5, 2017) (same); *Klayman v. CIA*, 170 F. Supp. 3d 114, 120 (D.D.C. 2016) (upholding Exemption 1 *Glomar* assertion over "whether or not [a particular individual] was one of its covert contractors or employees"); *cf. In re Sealed Case*, 494 F.3d 139, 144 (D.C. Cir. 2007) (upholding the Government's assertion of the state secrets privilege over, *inter alia*, the identities of "covert operatives").

Second, CIA also invoked Exemption 3, which shields from disclosure information that is protected by "other shield statutes," *Am. Civil Liberties Union v. DoD*, 628 F.3d 612, 617-18 (D.C. Cir. 2011) ("*ACLU v. DoD*"), to protect all of the names in the withholding at issue. Specifically, CIA invoked Section 6 of the CIA Act, 50 U.S.C. §§ 3501-3524, which provides that:

> [T]he Agency shall be exempted from . . . the provisions of any other law which require[s] the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency.

3

50 U.S.C. § 3507. Thus, "[t]he CIA Act . . . plainly protects [*inter alia*] . . . employee names [and] titles"—*i.e.*, precisely the information that has been withheld here. *James Madison Project v. CIA*, 607 F. Supp. 2d 109, 126 (D.D.C. 2009); Shiner Decl. ¶ 20 ("The redaction at issue contains the names of personnel currently or formerly employed by the CIA, the disclosure of which the CIA Act expressly prohibits."); *see also, e.g.*, *Hall v. CIA*, 268 F. Supp. 3d 148, 164 (D.D.C. 2017) ("No profound logical stretch is necessary to read th[e] language [of the CIA Act] as encompassing persons currently or previously employed by the CIA, especially when considering the text and purpose of the statute as a whole.").

## 2. The CIA Did Not Waive Either Exemption through Any Official Acknowledgement.

Plaintiffs do not dispute that Exemption 1 properly exempts from disclosure the identities of covert CIA officers, nor that the CIA Act unequivocally protects all of the withheld names, in the first instance. Instead, Plaintiffs attempt to overcome both these exemptions through the "official acknowledgement" doctrine, pursuant to which "when an agency has officially acknowledged otherwise exempt information through prior disclosure, the agency . . . waive[s] its right to claim an exemption with respect to that information." *ACLU v. CIA*, 710 F.3d at 426. However, the D.C. Circuit has narrowly constrained the official acknowledgement principle, and in order to demonstrate an entitlement to the information requested, a plaintiff must satisfy three stringent criteria. *See Associated Press v. FBI*, 265 F. Supp. 3d 82, 96 (D.D.C. 2017) (a claim that information has been officially acknowledged must meet a "strict test").

"First, the information requested must be as specific as the information previously released." *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) (quoting *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990)) (additional citations omitted). "Prior disclosure of similar information

does not suffice; instead, the *specific* information sought by the plaintiff must already be in the public domain by official disclosure. The insistence on exactitude recognizes 'the Government's vital interest in information relating to national security and foreign affairs.'" *Id.* (quoting *Pub. Citizen v. Dep't of State*, 11 F.3d 198, 203 (D.C. Cir. 1993) (citations omitted); *see also Competitive Enter. Inst. v. NSA*, 78 F. Supp. 3d 45, 54 (D.D.C. 2015) ("Plaintiffs in this case must therefore point to specific information in the public domain establishing that the NSA has [the claimed information].").  "Second, the information requested must match the information previously disclosed[.]" *Wolf*, 473 F.3d at 378 (quoting *Fitzgibbon*, 911 F.2d at 765) (additional citations omitted). If there are "substantive differences" between the two, an official acknowledgement claim must fail. *ACLU v. DoD*, 628 F.3d at 621. "Third, . . . the information requested must already have been made public through an official and documented disclosure." *Wolf*, 473 F.3d at 378 (quoting *Fitzgibbon*, 911 F.2d at 765) (additional citations omitted).

"Thus, the fact that information exists in some form in the public domain does not necessarily mean that official disclosure will not cause harm cognizable under a FOIA exemption." *Id.* "As a consequence, 'a plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld.'" *Id.* (quoting *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983)); *see also*, *e.g.*, *Elec. Privacy Info. Ctr. v. NSA*, 678 F.3d 926, 933 (D.C. Cir. 2012) (similar). And—as especially relevant to the instant case—in meeting this burden, it is well-established that "inferences and assumptions" fall well short of an "*official* and actual acknowledgement[.]" *Competitive Enter. Inst.*, 78 F. Supp. 3d at 58; *see also Valfells v. CIA*, 717 F. Supp. 2d 110, 117 (D.D.C. 2010) ("Logical deductions are not . . . official acknowledgments."), *aff'd sub nom. Moore v. CIA*, 666 F.3d 1330 (D.C. Cir. 2011); *Canning v.*

*DOJ*, 848 F. Supp. 1037, 1047-48 (D.D.C. 1994) (rejecting plaintiff's official acknowledgment

challenge as "based primarily on speculation").

Plaintiffs fall well short of meeting these exacting standards for demonstrating a relevant

official acknowledgement—and indeed, do not even *purport* to identify any specific Agency

statement or disclosure that satisfies the elements set forth above. Instead, Plaintiffs offer only a

series of wholly speculative suppositions—to wit, that:

> Based on the CIA's prepublication review policy at the time, *it is very likely* that
> the following [propositions] are . . . true: First, because current and former CIA
> employees generally need only submit works that are based on their time in
> government service, any published works disclosed not only the authors' names
> but also their association with the Agency. Second, by clearing the authors' works
> for publication, the CIA authorized that disclosure. Third, the CIA sent clearance
> letters to the authors memorializing that authorization. Fourth, the CIA required
> the authors to publish a disclaimer explaining that the material had been reviewed
> by the CIA, thereby putting the public on notice that they were Agency employees
> subject to the Agency's prepublication review requirement.

Pls.' Mem. at 12 (emphasis added).[1]

Likewise, with respect to the Exemption 1 withholding in particular, Plaintiffs assert that

that they challenge CIA's Exemption 1 redaction "only insofar as two [completely hypothetical]

---

[1] With respect Exemption 3, Plaintiffs purport to advance two independent arguments regarding
CIA's alleged waiver. First, in § I.A of their brief, Plaintiffs contend that the CIA "likely" did
not "treat the authors' names and Agency affiliation as confidential." Pls.' Mem. at 7. Second, in
§ I.B, they invoke the actual official acknowledgement doctrine and test. *Id.* at 11-14.
Notwithstanding this ostensible bifurcation, Plaintiffs' respective arguments are identical in
substance: both attempt to establish a waiver of Exemption 3 on the alleged grounds that "far
from treating the authors' names as confidential, the CIA appears to have repeatedly authorized
their disclosure." *Id.* at 9. To the extent that an agency authorizes the disclosure of information,
however, it *officially acknowledges* such information. Accordingly, the arguments advanced by
Plaintiffs in Sections I.A. and I.B. of their memorandum are identical in both form and
substance—and the sole question they present is whether Plaintiffs have demonstrated any
applicable official acknowledgement by the CIA of the information in question, under the
"strict" test set forth above. *Associated Press*, 265 F. Supp. 3d at 96. As set forth *infra*, Plaintiffs
have not.

facts are true: first, the individual is a former, rather than a current, covert officer, and second,
the formerly covert officer disclosed their affiliation with the CIA in one or more of their
publications." *Id.* at 19. According to Plaintiffs, "[i]t is *very likely* . . . that the officer has
published multiple works under their name about their time in government. *Taking that fact as*
*true*, releasing the withheld information would not reveal any more than the public already
knows—the formerly covert officer's name and affiliation with the CIA." *Id.* at 20-21 (emphases
added).

Plaintiffs' arguments fly in the face of the well-established—and elementary—standards
for summary judgment. They cite no authority—because none exists—for the proposition that
they may simply assert wholly hypothetical propositions, "take" them to be true, and seek
summary judgment in their favor based on nothing more than such wishful, and wholly
speculative, thinking. Quite to the contrary, Rule 56 is explicit that summary judgment must be
based on "material fact[s]" as to which "no genuine dispute" exists, and that "[a] party asserting
that a fact cannot be … genuinely disputed *must support the assertion by . . . citing to particular*
*parts of materials in the record*[.]" Fed. R. Civ. P. 56 (a), (c)(1) (emphasis added). Because
Plaintiffs' assertions lack any modicum of support in the factual record before the Court, and
instead rely wholly on improper "inferences and assumptions," *Competitive Enter. Inst.*, 78 F.
Supp. 3d at 58, their motion should be denied, and CIA's granted, on this ground alone. *See, e.g.*,
*SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (agencies' FOIA
declarations are accorded "a presumption of good faith, which cannot be rebutted by purely
speculative claims[.]").

However, even apart from its lack of an evidentiary foundation, Plaintiffs' argument fails
in logic as well. That is, while summary judgment may not in any event be based on purely

hypothetical propositions, no matter how "likely" such hypotheticals may be, Plaintiffs'

assertions regarding the "likelihood" of their hypothetical "facts" are also demonstrably

specious. Initially, the CIA's contemporaneous Prepublication Review Regulation, which

Plaintiffs have attached as exhibit to their filing, made clear that:

> The prepublication review obligation applies to any written, oral, electronic, or other presentation intended for publication or public dissemination, whether personal or official, that mentions CIA or intelligence data or activities or material on any subject about which the author has had access to classified information in the course of his employment or other contact with the Agency. The obligation includes, but is not limited to, works of fiction; books; newspaper columns; academic journal articles; magazine articles; resumes or biographical information Agency employees (submission to the PRB is the exclusive procedure for obtaining approval of proposed resume text); … letters to the editor; book reviews; pamphlets; scholarly papers; scripts; screenplays; internet blogs, e-mails, or other writings; outlines of oral presentations; speeches; or testimony prepared for a Federal or state or local executive, legislative, judicial, or administrative entity …

Pls. Ex. C, ECF No. 55-3, § (e)(1).

Thus, the prepublication review requirement may extend, for example, to a scientist (or

psychologist) who has worked for the CIA (as either an employee or contractor), and who seeks

to author or co-author an academic journal article or textbook on the same area of scientific (or

psychological) research or application as was implicated in his or her work for the CIA. While

such a scientific or academic work would fall within the prepublication review requirement if,

"in the course of his [or her] employment or other contact with the Agency," the author had

"access to classified information" on the same subject, *id.*, it simply does not follow that the

subject of such a technical or scholarly publication would be, in Plaintiffs' words, the author's

"time in government service[.]" Pls.' Mem. at 12. Likewise, the prepublication obligation also

extends—to pick but two other possible examples, out of many—to works of fiction and

screenplays (again, provided that any such document "mentions CIA or intelligence data or

activities or material on any subject about which the author has had access to classified information in the course of his employment or other contact with the Agency"). *Id.* Simply put, Plaintiffs do not and cannot offer any reason why the publication of any of these works would necessarily, or even "likely," "disclose[] not only the authors' names but also their association with the Agency." Pls.' Mem. at 12.

> Plaintiffs further point out that the CIA Prepublication Regulation also provides that:
>
> > Agency approval for publication of nonofficial, personal works … does not represent Agency endorsement or verification of, or agreement with, such works. Therefore, *consistent with cover status*, authors are required, *unless waived in writing by the PRB*, to publish the following disclaimer: "All statements of fact, opinion, or analysis expressed are those of the author and do not reflect the official positons or views of the [CIA] or any other U.S. Government agency. Nothing in the context should be construed as asserting or implying U.S. Government authentication of information or CIA endorsement of the author's view. This material has been reviewed by the CIA to prevent the disclosure of classified information."

Pls. Ex. C § (b)(4) (emphasis added); *see* Pls.' Mem. at 3, 10 n.3. According to Plaintiffs, the inclusion of this disclaimer in a published work "reveal[s] that [the author was or is an] Agency employee[] subject to the Agency's prepublication review requirement." Pls.' Mem. at 10. But whatever the merits of this inference in the instance of an actual disclaimer that has appeared in print, attached to an identified publication, Plaintiffs' leap of logic in the circumstances presented is unwarranted, for at least two reasons. First, the Prepublication Regulation expressly allows the PRB to waive the disclaimer requirement, and Plaintiffs point to no evidence that such waivers were not given to the employees whose names have been withheld. Second, with respect to the Exemption 1 assertion in particular, the regulation expressly provides that such disclaimers are only required "consistent with cover status." Pls. Ex. C § (b)(4). Plaintiffs offer no reasoning as to why CIA would require—much less any evidence that CIA did in fact require—the covert

official, whose very identity is a classified fact, to include the disclaimer in his or her publication(s).

Thus, far from demonstrating any "likelihood" of an official disclosure, Plaintiffs' suppositions are simply that: suppositions, that neither support the conclusions they draw therefrom, nor even arguably entitle them to the entry of summary judgment in their favor. *See Wolf*, 473 F.3d at 378 ("[A] plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld.") (internal quotation omitted).

Nor do Plaintiffs' remaining arguments alter the above analysis. With respect to CIA's Exemption 1 withholding, Plaintiffs posit that the fact that CIA published the document in question, and thus the name of the covert employee, "on an unclassified internal blog[,]" is "revealing[.]" Pls.' Mem. at 21. But even though the internal blog was unclassified, it was nonetheless maintained on an internal, classified, CIA system—and, in any event, Plaintiffs cannot contend that a strictly intra-agency dissemination of information equates to making the information "'public through an official and documented disclosure.'" *Wolf*, 473 F.3d at 378 (quoting *Fitzgibbon*, 911 F.2d at 765).

Finally, with respect to CIA's Exemption 3 withholdings, Plaintiffs further argue that CIA's position "would exempt from disclosure the names of all CIA personnel, irrespective of whether the Agency has treated them as confidential. Under this interpretation, Section 6 would, for example, apply even to the names of the CIA director and other senior, public officials at the Agency." Pls.' Mem. at 9. Initially, as explained above, Section 6 of the CIA Act does indeed apply on its face to, *inter alia*, the "names" and "official titles . . . of personnel employed by the Agency[.]" 50 U.S.C. § 3507. However, Plaintiff's argument that under the CIA's interpretation,

10

this protection extends even to those officials whose Agency employment has been officially acknowledged (such as the CIA Director) is, transparently, a straw man, as CIA has advanced no such argument. Rather, the question before the Court is whether Plaintiffs have carried their burden to demonstrate that the redacted names *at issue here* meet the strict test for an official acknowledgement. For all of the reasons set forth above, they have not.

Accordingly, CIA is entitled to partial summary judgment as to its Exemption 1 withholding, and summary judgment in full as to its Exemption 3 withholding.

**B.     CIA Properly Withheld Information under Exemption 6.**

Plaintiffs also challenge CIA's application of Exemption 6 to the information at issue. Here, Plaintiffs do not advance any argument that the Exemption 6 withholding has been waived through an official acknowledgement, but rather appear to argue that even in the absence of any official acknowledgement, the Exemption 6 withholding is improper.[2] This argument likewise fails.

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]"5 U.S.C. § 552(b)(6). Exemption 6 thus has two prongs, and requires an agency to prove both the nature of the files and that the files' disclosure "would constitute a clearly unwarranted invasion of personal privacy." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599-603 (1982). The first criterion does not require that the information be contained in a specifically designated "personnel" file. *Id.* at 601. It is met if the information applies to a "particular individual[]" and

---

[2] Insofar as Plaintiffs do challenge the Exemption 6 withholdings on an official acknowledgement theory, their argument would fail for all of the same reasons set forth above.

is "personal" in nature. *N.Y. Times Co. v. NASA*, 852 F.2d 602, 606 (D.C. Cir. 1988). The second step of an Exemption 6 analysis is to strike a "balance between the protection of an individual's right of privacy and the preservation of the public's right to Government information." *Wash. Post Co.*, 456 U.S. at 599. The "public interest" in the analysis is limited to the "core purpose" for which Congress enacted the FOIA, *i.e.*, to "shed [] light on an agency's performance of its statutory duties[.]" *DOJ v. Reporters Comm. for Freedom of Press,* 489 U.S. 749, 773, 775 (1989). Plaintiff bears the burden of demonstrating disclosure would serve this interest. *See Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 390-91 nn. 8 & 13 (D.C. Cir. 1987).

As set forth in the Shiner Declaration and CIA's opening memorandum, CIA properly applied these principles to "withhold names of CIA personnel contained in the redaction at issue." Shiner Decl. ¶ 23. CIA personnel identified in the challenged document have a substantial privacy interest in not having their identities and/or contact information disclosed, because disclosure of their relationship with CIA "could subject them to harassment or unwanted contact by the media." *Id.*; *see, e.g.*, *Long v. OPM*, 692 F.3d 185, 192 (2d Cir. 2012) (noting that "[i]t is not uncommon for courts to recognize a privacy interest in a federal employee's work status . . . if the occupation alone could subject the employee to harassment or attack."); *Davy v. CIA*, 357 F. Supp. 2d 76, 87-88 (D.D.C. 2004) (upholding Exemption 6 assertion over CIA employee names).

In rejoinder, Plaintiffs again offer only unfounded speculation on this subject. Specifically, they posit that "[d]isclosure of the authors' names here would implicate, at most, a *de minimis* privacy interest because the authors have *apparently* already decided to write publicly under their own names about their experiences in government." Pls.' Mem. at 17 (emphasis added). But for all of the same reasons given above, *see supra* § I.A.2, Plaintiffs'

12

assertion that the publications in question are, necessarily, "about [the authors'] experiences in government"—or, for that matter, were made "under their own names"—is pure supposition, utterly lacking in factual support. Pls.' Mem. at 17. So, too, is Plaintiffs' assertion that the redacted names will vindicate their speculative theory that CIA's prepublication review processes have been "used in part to censor agency critics." *Id.* at 19.

Thus, Plaintiffs have not met their burden of demonstrating that disclosure of these identities would shed any light on CIA operations or activities. *Cf. Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989) ("[S]omething, even a modest privacy interest, outweighs nothing every time."). Accordingly, the Court should also grant summary judgment in CIA's favor on the basis of Exemption 6.

## II.     No Additional Information Is Necessary to Resolve This Case.

Finally, in a last-ditch effort, Plaintiffs also call upon this Court to order *in camera* review or, alternatively, to require the submission of a more detailed affidavit from CIA. Pls.' Mem. at 21-23. Plaintiffs provide no valid basis for why either action would be appropriate, and their request should be denied.

At its discretion, a district court "may examine the contents of . . . agency records in camera[.]" 5 U.S.C. § 552(a)(4)(B). But "[i]f the agency's affidavits 'provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith,'" then it is well-established that "summary judgment is appropriate without *in camera* review of the documents." *ACLU v. DoD*, 628 F.3d at 626. Further, "*[i]n camera* inspection is particularly a last resort in national security situations like this case." *Mobley v. CIA*, 806 F.3d 568, 588 (D.C. Cir. 2015) (alteration in original) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 870

13

(D.C. Cir. 2009)); *see also*, *e.g.*, *Larson*, 565 F.3d at 865 ("[W]e have consistently deferred to executive affidavits predicting harm to the national security . . . . [and] therefore reject [plaintiff's] encouragement to cross-examine the CIA until we are satisfied that its assessment of the national security risk is correct."); *Ray v. Turner,* 587 F.2d 1187, 1195 (D.C. Cir. 1978) (per curiam) ("*In camera* inspection requires effort and resources and therefore a court should not resort to it routinely on the theory that 'it can't hurt.'"). Thus, while *in camera* review is permitted under FOIA in special circumstances, "[u]ltimately . . . courts disfavor [such] inspection and it is more appropriate in only the exceptional case." *Elec. Privacy Info. Ctr. v. DHS*, 384 F. Supp. 2d 100, 119 (D.D.C. 2005); *Ctr. for Auto Safety v. U.S. Dep't of Treasury*, 133 F. Supp. 3d 109, 136 (D.D.C. 2015) (collecting cases). This is not the exceptional case.

Plaintiffs argue that "the Court cannot conduct a meaningful *de novo* determination on the CIA's exemption claims without revealing the authors' names." Pls.' Mem. at 22. But for all of the reasons set forth at length in CIA's opening memorandum and *supra*, CIA's justifications for its withholdings are logical and plausible, and—particularly in the national security-related context presented by this case—entitle the Agency to the entry of summary judgment in its favor without any further fact-finding. *ACLU v. CIA*, 710 F.3d at 427; *see SafeCard Servs., Inc.*, 926 F.2d at 1200 (agencies' FOIA declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims."); *Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 927 (D.C. Cir. 2003) ("[I]n the FOIA context, we have consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review."). Further, *in camera* review is not a mechanism to satisfy a plaintiff's curiosity, absent a meritorious legal basis for why a redaction is improper. As set forth above, Defendants' withholdings are amply supported by the extant record. Because Plaintiffs have

14

failed to advance any meritorious legal argument as to why the withholding in question is inappropriate or has been waived through any official acknowledgement, their request should soundly be denied.

Likewise, and for the same reasons—*i.e.*, because the Court has all the information that it needs to resolve this case—Plaintiffs' request that CIA be required to submit a more detailed affidavit should also be denied.

## **CONCLUSION**

For the reasons stated above, and in the CIA's opening brief, the CIA's motion for summary judgment should be granted and Plaintiff's motion for summary judgment should be denied.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

_____/s/_____
Antonia Konkoly
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW, Room 11110
Washington, DC 20005
(202) 514-2395 (direct)
(202) 616-8470
antonia.konkoly@usdoj.gov

*Counsel for the Defendants*

DATED: November 6, 2019

15