## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMERICAN CIVIL LIBERTIES UNION
and AMERICAN CIVIL LIBERTIES
UNION FOUNDATION,

                  Plaintiffs,

     v.

CENTRAL INTELLIGENCE AGENCY,
*et al.*,

                Defendants.

**Oral Argument Requested**

Civil Action No. 1:16-cv-1256

### PLAINTIFFS' REPLY IN SUPPORT OF CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT CIA'S MOTION FOR SUMMARY JUDGMENT

Brett Max Kaufman (D.D.C. Bar No.
  NY0224)
Alexia Ramirez (N.Y. bar application
pending)
American Civil Liberties Union
125 Broad Street—18th Floor
New York, NY 10004
T: 212.549.2500
F: 212.549.2654
bkaufman@aclu.org

Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union
  of the District of Columbia
915 15th Street, NW—2d floor
Washington, D.C. 20005
T: 202.601.4266
aspitzer@acludc.org

Ramya Krishnan
Meenakshi Krishnan (D.C. Bar No. 1617229)
Alex Abdo
Knight First Amendment Institute
  at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
T: 646.745.8500
ramya.krishnan@knightcolumbia.org

*Counsel for Plaintiffs*

# Table of Contents

Table of Authorities ...................................................................................................... ii

Introduction .................................................................................................................... 1

Argument ........................................................................................................................ 2

    I.     The CIA has failed to establish that the approved authors' names are
          withholdable under Exemption 3. ................................................................ 2

          A.     The CIA has failed to show that the approved authors' names fall
                     within Section 6 of the CIA Act. ..................................................... 3

          B.     In the alternative, the CIA has failed to rebut Plaintiffs' initial showing
                     under the official acknowledgement test, and accordingly has waived
                     its Exemption 3 claim. .................................................................... 4

    II.    The CIA has failed to establish that the approved authors' names are
          withholdable under Exemption 6. ................................................................ 7

    III.   The CIA has failed to establish that the name of the "covert Agency officer" is
          withholdable under Exemption 1. ............................................................. 10

    IV.   At a minimum, this Court should order a supplemental declaration and
          conduct an *in camera* review. ................................................................. 12

Conclusion .................................................................................................................. 13

## Table of Authorities

**Cases**

*Am. Civil Liberties Union v. U.S. Dep't of Def.* (*ACLU*), 628 F.3d 612 (D.C. Cir. 2011) ............................................................................................................................ 11

*Canning v. DOJ*, No. CV11-1295(GK), 2017 WL 2438765 (D.D.C. June 5, 2017).................... 11

*Competitive Enter. Inst. v. Nat'l Sec. Agency*, 78 F. Supp. 3d 45 (D.D.C. 2015) ......................... 6

*Cottone v. Reno*, 193 F.3d 550 (D.C. Cir. 1999) ............................................................................ 6

*DiBacco v. U.S. Army*, 795 F.3d 178 (D.C. Cir. 2015)................................................................. 11

*DiBacco v. U.S. Dep't of Army*, 983 F. Supp. 2d 44 (D.D.C. 2013) ............................................ 11

*Friedman v. U.S. Secret Serv.*, 923 F. Supp. 2d 262 (D.D.C. 2013) .............................................. 8

*Hall v. CIA*, 268 F. Supp. 3d 148 (D.D.C. 2017)........................................................................... 3

*Inner City Press/Cmty. on the Move v. Bd. of Governors of Fed. Reserve Sys.*, 463 F.3d 239 (2d Cir. 2006)........................................................................................................ 6

*James Madison Project v. CIA*, 607 F. Supp. 2d 109 (D.D.C. 2009) ............................................ 3

*Juarez v. Dep't of Justice*, 518 F.3d 54 (D.C. Cir. 2008) ............................................................ 12

*Judicial Watch, Inc. v. Dep't of the Navy*, 25 F. Supp. 3d 131 (D.D.C. 2014).............................. 9

*Klayman v. CIA*, 170 F. Supp. 3d 114 (D.D.C. 2016) .................................................................. 11

*Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246 (D.D.C. 2005) ......................................................................................................................... 8

*Long v. Office of Pers. Mgmt.*, 692 F.3d 185 (2d Cir. 2012) ......................................................... 9

*Moore v. CIA*, 666 F.3d 1330 (D.C. Cir. 2011) ............................................................................ 6

*N.Y. Times Co. v. NASA*, 852 F.2d 602 (D.C. Cir. 1988) .............................................................. 8

*N.Y. Times Co. v. NASA*, 920 F.2d 1002 (D.C. Cir. 1990) ............................................................ 8

*Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26 (D.C. Cir. 2002)................................... 7, 8

*Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16 (D.C. Cir. 1999) ...................................................................................................................... 5, 7

*SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197 (D.C. Cir. 1991) ..................................................... 5

*Spirko v. U.S. Postal Serv.*, 147 F.3d 992 (D.C. Cir. 1998)............................................................... 13

*U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595 (1982) ........................................................ 8

*Valfells v. CIA*, 717 F. Supp. 2d 110 (D.D.C. 2010)...................................................................... 6

*VoteHemp, Inc. v. Drug Enforcement Admin.*, 567 F. Supp. 2d 1 (D.D.C. 2004)......................... 8

*Wood v. FBI*, 432 F.3d 78 (2d Cir. 2005) .................................................................................. 8, 9

**Statutes**

5 U.S.C. § 552.................................................................................................................................. 7

**Other Authorities**

Greg Miller & Julia Tate, *CIA Probes Publication Review Board over Allegations
    of Selective Censorship*, Wash. Post (May 31, 2012), http://wapo.st/2iLpUuP
    [https://perma.cc/3VND-3DP6]............................................................................................. 10

H.R. Rep. No. 89–1497.................................................................................................................... 8

**Introduction**

This case concerns the CIA's redaction of the names of several current or former employees who were granted an exemption from the Agency's prepublication review requirement based on their record of complying with that requirement.

As explained in Plaintiffs' opening brief, the CIA's redaction is improper primarily because the approved authors' names and their affiliation with the CIA have likely already been made public with the approval of the Agency. This flows directly from the record in the case. The CIA has acknowledged that, as of May 2009, it had exempted several authors from its prepublication review requirement based on their "established record of prepublication review compliance." Krishnan Decl. Ex. B. Based on that fact and the CIA's prepublication review policy at the time, Plaintiffs have met their initial burden to show that the CIA authorized those authors to publish works under their own names, and did so in writing; that those works mentioned, with the CIA's authorization, the authors' affiliation with the Agency; and that the works included the Agency's required disclaimer, effectively confirming that affiliation. Krishnan Decl. Ex. B; Krishnan Decl. Ex. C. §§ 2(b)(4); 2(f)(1) & (2); 2(g)(1).

The CIA responds that Plaintiffs cannot know whether the authors have in fact published works that disclose their names and Agency affiliation. But this argument is an improper attempt to shift the government's burden under FOIA to Plaintiffs. Plaintiffs' argument is based on a straightforward and logical inference from the undisputed facts that the authors whose names are redacted have an established record of publishing information requiring prepublication review and of complying with the prepublication review process. Based on these facts, it is likely that those individuals have already—and with the CIA's approval—publicly confirmed their affiliation with the Agency.

1

Tellingly, the CIA does not dispute this conclusion. Nor does it offer contrary evidence—though it would be easy enough for it to do so if, in fact, it were untrue. Instead, it speculates about information in its possession. The CIA argues, for example, that it is possible the approved authors wrote under aliases, that their works are "intelligence-related" novels or screenplays that do not mention their Agency association, or that the Agency waived its disclaimer requirement. These arguments fundamentally misunderstand Plaintiffs' burden. Plaintiffs have pointed to the CIA's policy and default practices as evidence that its withholding is improper. If the Agency did not follow those practices, or permitted the approved authors to depart from them, the burden is on it to demonstrate this occurred. But it has failed to do so.

Plaintiffs asked for much of this information prior to filing their motion, in an effort to avoid unnecessary litigation, and the Agency refused to provide it. Krishnan Decl. Ex. E. But the government cannot satisfy its burden under FOIA with a game of hide and seek. It is the government's obligation now to respond with evidence rather than speculation as to whether the authors have already publicly disclosed their affiliation with the CIA, with the CIA's approval. Because the CIA has refused to do so, and for the other reasons explained below, this Court should grant Plaintiffs' motion for summary judgment, or alternatively, require the CIA to submit a supplemental declaration addressing certain questions about the authors' prior publications, and conduct an *in camera* review.

## Argument

## I.     The CIA has failed to establish that the approved authors' names are withholdable under Exemption 3.

The CIA's reliance on Exemption 3 to withhold the approved authors' names fails for two reasons. First, the CIA has failed to carry its burden of demonstrating that the approved authors' names fall within Section 6 of the CIA Act. Second, even if the CIA has a valid Exemption 3 claim,

it has waived that claim: Plaintiffs have met their initial burden under the official acknowledgement test, and the CIA has failed to rebut that showing.

### A.   The CIA has failed to show that the approved authors' names fall within Section 6 of the CIA Act.

In their prior brief, Plaintiffs explained that because the CIA has not treated the redacted names as confidential, those names do not fall within Section 6 of the CIA Act. Pls.' Br. at 7–10. In its reply, the CIA entirely ignores that argument, apparently contending that Section 6 categorically bars disclosure of the names of all CIA employees, period. Gov't Reply at 3–4. But as Plaintiffs showed before, that argument is wrong.

In support of its reading of Section 6, the CIA cites two cases. Gov't Reply Br. at 4 (citing *Hall v. CIA*, 268 F. Supp. 3d 148, 164 (D.D.C. 2017); *James Madison Project v. CIA*, 607 F. Supp. 2d 109, 126 (D.D.C. 2009)). But neither of those cases involved the names of CIA employees that the Agency repeatedly treated as non-confidential. *See* 268 F. Supp. 3d at 164; 607 F. Supp. 2d at 126. And while in *Hall*, the court denied a plaintiff's attempt to uncover the names of deceased former CIA employees, its reasoning illuminates why this is a very different kind of case. In *Hall*, the plaintiff advanced an interpretation of Section 6 that would render unprotected the names of all deceased former employees, including those "killed in a recent covert operation," even though the disclosure of some of these names "would be profoundly likely to cause damage to the national security of the United States of exactly the sort that the CIA Act is meant to prevent." 268 F. Supp. 3d at 164. *Hall*, therefore, reflects the court's recognition that Section 6 guards against revealing closely held information, the disclosure of which could cause grave national security harm. Here, Plaintiffs' point is that Section 6 cannot authorize the withholding of names the Agency has not treated as confidential or closely held. As described in Plaintiffs' opening brief, this reading of Section 6 is supported by other precedent as well as the legislative history of the statute. Pls.' Br.

at 7–9. The government, however, ignores this material, doubling down on an interpretation that would permit it to withhold the names of even the most senior or widely known employees.

Under the proper reading of Section 6, it is clear that the approved authors' names are not protected. As Plaintiffs explained at length in their opening brief, far from treating the approved authors' names as confidential, the CIA has presumptively authorized their disclosure. Pls.' Br. at 9–10. Because the authors were granted an exemption from prepublication review "based on an established record of prepublication review compliance," Krishnan Decl. Ex. B, it is very likely that the authors submitted works for review and received approval to publish on multiple occasions, and that these works mentioned their Agency affiliation. It is also very likely that the CIA required the authors to include a disclaimer in their publications effectively confirming that they were Agency employees subject to the Agency's prepublication review requirement. Krishnan Decl. Ex. C. § 2(b)(4). Moreover, by granting the authors a review exemption, it is very likely that the CIA authorized them to continue publishing works containing their names and Agency affiliation. Krishnan Decl. Ex. B. These facts, independently of Plaintiffs' official acknowledgement argument, *see infra* Part I.B., establish that the CIA has not met its burden of showing that the approved authors' names fall within the scope of Section 6.[1]

**B.      In the alternative, the CIA has failed to rebut Plaintiffs' initial showing under the official acknowledgement test, and accordingly has waived its Exemption 3 claim.**

The CIA's reliance on Exemption 3 fails for an additional reason. Plaintiffs have satisfied their initial burden under the official acknowledgment test of showing that the approved authors'

---

[1] It is true that Plaintiffs can only say these facts are "very likely" at this point, but it is the CIA's burden to show that it kept the names of these authors confidential. The record demonstrates that it is very likely that the CIA did not, and the CIA—the only party in a position to know—has simply refused to say. Accordingly, it has failed to justify its withholding under Exemption 3.

names have been made public with the Agency's approval. While the Agency knows *where* that information is, and could easily disclose it (or point to information that rebuts Plaintiffs' initial showing), it has chosen not to do so. Accordingly, it has failed to carry its burden.

The CIA claims that Plaintiffs' initial showing amounts to speculation. Gov't Reply at 7 (citing *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). But far from the "purely speculative" claims rejected by the D.C. Circuit in *SafeCard*, Plaintiffs' claims are grounded in the record: (1) the document at issue shows that the approved authors were, in May 2009, CIA employees with "an established record of prepublication review compliance," Krishnan Decl. Ex. B; (2) the CIA's prepublication review policy at the time required the Agency to provide "formal approval in writing of submissions" to authors, and it required authors to publish a disclaimer disclosing their affiliation with the Agency, Krishnan Decl. Ex. C §§ 2(b)(4); 2(f)(1) & (2); 2(g)(1); and (3) several clearance letters sent by the Publications Review Board to authors indicate that the Agency routinely complied with those requirements, Krishnan Decl. Exs. F, G, H & I. Based on this record, Plaintiffs presume, and the CIA does not dispute, that the approved authors submitted works for review, and received approval to publish, on several occasions, and that the authors were subject to the CIA's prepublication review policy. As Plaintiffs have explained, if this policy was followed, the facts that the CIA is trying to protect—that certain people worked for the CIA—are already in the public domain with the assent of the Agency. *See* Pls.' Br. at 11–14.

As the D.C. Circuit has recognized, a FOIA plaintiff may fulfill their initial burden of production by showing that the sought information is duplicative of information required to be disclosed under a policy or regulation. *Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16, 19–20 (D.C. Cir. 1999) (concluding that the plaintiff met their initial burden of proof

upon citing to a regulation requiring the filing of a public form); *see also Inner City Press/Cmty. on the Move v. Bd. of Governors of Fed. Reserve Sys.*, 463 F.3d 239, 249 (2d Cir. 2006) (same). Here, Plaintiffs have pointed both to a CIA policy requiring authors publishing under their own names to include a disclaimer disclosing their Agency affiliation, and to clearance letters establishing that the CIA routinely adhered to that policy. *See* Krishnan Decl. Exs. C § 2(b)(4); F, G, H & I. Accordingly, Plaintiffs have met their initial burden under the official acknowledgment test.[2]

With Plaintiffs' initial burden met, the burden shifts to the CIA to rebut Plaintiffs' showing by demonstrating that the acknowledgements either have not occurred or have been "removed from the public domain." *Cottone v. Reno*, 193 F.3d 550, 556 (D.C. Cir. 1999). The CIA knows whether it followed its policy and default practices with respect to the authors at issue, and it could easily rebut Plaintiffs' showing, if in fact it departed from them. Yet it has failed to do so. Instead, the CIA relies on hypothetical scenarios that it does not even attempt to substantiate.

First, the CIA asserts that Plaintiffs have failed to meet their burden because the CIA's prepublication review requirement applies to a broad swath of materials, including works of fiction and screenplays, and that it is possible the approved authors' works do not mention their CIA service. Gov't Reply at 8–9. Common sense counsels that CIA employees are much more likely

---

[2] The government argues that "inferences and assumptions fall well short of an official and actual acknowledgment." Gov't Reply at 5 (internal quotation marks omitted) (citing *Competitive Enter. Inst. v. Nat'l Sec. Agency*, 78 F. Supp. 3d 45, 58 (D.D.C. 2015); *Valfells v. CIA*, 717 F. Supp. 2d 110, 117 (D.D.C. 2010), *aff'd sub nom. Moore v. CIA*, 666 F.3d 1330 (D.C. Cir. 2011)). But neither of the cases it relies on is apposite. In *Competitive*, the plaintiffs sought to satisfy their burden by pointing to court opinions that themselves were based on "inferences and assumptions" about the agency's practices. 78 F. Supp. 3d at 49, 58. In *Valfells*, the plaintiffs sought to rely on "logical deductions" based on a different agency's records. 717 F. Supp. 2d at 117. Here, however, Plaintiffs point to the Agency's *own* policy and default practices.

to write works about their government service than they are to author spy novels and screenplays. But at any rate, the CIA possesses this knowledge, so its feigned ignorance on this point strains credulity. And, ultimately, it does not matter. Irrespective of whether the approved authors' works mentioned their service, their mandated disclaimers effectively did. Krishnan Decl. Ex. C § 2(b)(4).

Second, the CIA asserts that Plaintiffs have failed to meet their burden because the CIA's prepublication review policy provides that the Publications Review Board may waive the disclaimer requirement and Plaintiffs "point to no evidence that . . . waivers were not given to the employees whose names have been withheld." Gov't Reply at 9. Again, bearing in mind that the CIA definitively *knows* whether such waivers were given to the authors at issue in this case and could easily disclose that information, the CIA misstates Plaintiffs' burden. Having pointed to the CIA's policy and default practices, Plaintiffs do not bear the burden of establishing that they *do not* apply. *See Niagara*, 169 F.3d at 20. That burden falls squarely on the CIA.

In sum, the CIA knows, and could easily disclose, the facts in this case that could refute Plaintiffs' official acknowledgment showing. Tellingly, it has not done so. Accordingly, the CIA has waived any Exemption 3 claim it has over the approved authors' names.

## II.   The CIA has failed to establish that the approved authors' names are withholdable under Exemption 6.

The CIA's reliance on Exemption 6 to withhold the approved authors' names also fails for two reasons. First, the CIA has failed to demonstrate that the names are "personnel, medical, or similar" files. 5 U.S.C. § 552(b)(6). Second, assuming that the names are such files, the CIA has failed to demonstrate that the "information is of such a nature that its disclosure would constitute a clearly unwarranted privacy invasion." *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002).

The CIA apparently concedes that the approved authors' names are not "personnel" or "medical" files. Instead, it argues that the names are "similar files" because they include information that "applies to a 'particular individual[]' and is 'personal' in nature." Gov't Reply at 11–12 (quoting *N.Y. Times Co. v. NASA*, 852 F.2d 602, 606 (D.C. Cir. 1988)). However, as the D.C. Circuit explained on rehearing en banc in *NASA*, courts must "look 'not [to] the nature of the files' that contain the information sought in a FOIA request, but to the nature of the information requested." *N.Y. Times Co. v. NASA*, 920 F.2d 1002, 1006 (D.C. Cir. 1990) (quoting *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599 (1982)). Here, the information sought by Plaintiffs is not information that can be described as "detailed [g]overnment records on an individual." *Dep't of State*, 456 U.S. at 602 (quoting H.R. Rep. No. 89–1497, at 11 (1966)). Rather, Plaintiffs' FOIA request sought information about the CIA's prepublication review policies and practices. The redacted information is simply a list of names of authors that the CIA has exempted from those policies. Consistent with cases from this circuit, therefore, the authors' names are not "similar files" under Exemption 6. *See VoteHemp, Inc. v. Drug Enforcement Admin.*, 567 F. Supp. 2d 1, 14–15 (D.D.C. 2004); *see also Friedman v. U.S. Secret Serv.*, 923 F. Supp. 2d 262, 281 (D.D.C. 2013); *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 257 (D.D.C. 2005).

Even assuming the approved authors' names are "similar files," the CIA has not established that disclosure would result in a clearly unwarranted invasion of privacy. When evaluating the weight of an asserted privacy interest, courts look to "the individual characteristics that the disclosure reveals and the consequences that are likely to ensue from disclosure of the names." *Norton*, 309 F.3d at 36; *see also Wood v. FBI*, 432 F.3d 78, 88 (2d Cir. 2005). "Potential adverse consequences of disclosure must be real rather than speculative." *Judicial Watch, Inc. v. Dep't of*

*the Navy*, 25 F. Supp. 3d 131, 142 (D.D.C. 2014) (citations omitted). A "bare assertion" that a significant privacy interest is at stake will not suffice. *Id.*

The CIA claims that disclosure of the approved authors' names "could subject them to harassment or unwanted contact by the media." Shiner Decl. ¶ 23. This claim, however, is "entirely speculative."[3] *Judicial Watch*, 25 F. Supp. 3d at 142. The authors here have ostensibly decided to write publicly using their own names and to disclose their affiliation with the Agency, and they have done so frequently enough to receive an exemption from prepublication review.[4] *See Wood*, 432 F.3d at 88 (placing weight on whether the "identities of the [employees] have already been disclosed"). This is not a case where, for example, redactions protect individual names in the context of documents demonstrating government wrongdoing, or involvement in the implementation of a controversial government policy. While the government may, in certain of those cases, plausibly raise concerns about harassment or undue attention, this case raises nothing of the sort. As Plaintiffs have made clear from the outset, they do not seek disclosure of the name of any currently covert officer, or formerly covert officer who has not already disclosed their

---

[3] Instead of meeting its burden of demonstrating real harm, the CIA misreads an out-of-circuit case to claim that the mere fact of the authors' affiliation with the Agency establishes a risk of harassment. Gov't Reply at 12 (citing *Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 192 (2d Cir. 2012)). But in *Long*, the court emphasized that the privacy analysis is "context specific" and recognized that risk of harassment stemmed not from the mere fact of the employee's occupation, but rather the connection between the employee's occupation and a *specific* agency action or investigation. *Id.* at 191–92. Accordingly, the court favorably cited cases in which courts recognized a privacy interest in the names of employees who "worked on the regulatory approval of a controversial drug" or of "law enforcement agents who participated in an investigation." *Id.* at 192 (citations omitted).

[4] The government's suggestion that the approved authors may have used aliases to write their works, Gov't Reply at 12–13, is entirely unsupported. It merits emphasizing that the government *knows* whether the approved authors used aliases and bears the burden of justifying its Exemption 6 claim by pointing to that evidence, if true. The government has failed to do so.

Agency affiliation to the public with the Agency's assent. *See infra* Part III. Any privacy interest in the names is therefore *de minimis*.

In any event, the substantial public interest in disclosure of the authors' names outweighs any asserted privacy interest. As Plaintiffs' opening brief explained, prepublication review processes, both at the CIA and other agencies, have drawn increasing public scrutiny. Pls.' Br. at 18–19. For example, in 2012, the CIA opened an internal investigation into whether the Agency's processes discriminate between Agency supporters and critics. *See* Greg Miller & Julia Tate, *CIA Probes Publication Review Board over Allegations of Selective Censorship*, Wash. Post (May 31, 2012), http://wapo.st/2iLpUuP [https://perma.cc/3VND-3DP6]. Disclosure of the approved authors' names would help the public assess whether the CIA applies its prepublication review processes in a discriminatory manner. The government ignores the obvious public interest in knowing the answer to that question. It fails, therefore, to carry its burden of demonstrating that the privacy interest in the approved authors' names outweighs public interest in disclosure.

## III.    The CIA has failed to establish that the name of the "covert Agency officer" is withholdable under Exemption 1.

The CIA's reliance on Exemption 1 to withhold the name of a single "covert Agency officer" also fails for two reasons. Shiner Decl. ¶ 17. First, the CIA can satisfy its burden of demonstrating that the name falls within Exemption 1 only if one of two facts is true—that the officer is currently covert, or, if the officer is no longer covert, that they did not disclose their Agency affiliation in any of their publications—but the only declaration submitted by the Agency contains neither of those facts. The reason is simple: absent those circumstances, disclosure of the officer's name would reveal only what, with the Agency's assent, the public already knows—that the officer, who has repeatedly published under their own name, is affiliated with the CIA. By failing to address these facts, the CIA's declaration does not meet its burden under Exemption 1

because it fails to show that disclosure of the name could reasonably be expected to cause identifiable or describable damage to the national security. *Am. Civil Liberties Union v. U.S. Dep't of Def.* (*ACLU*), 628 F.3d 612, 624 (D.C. Cir. 2011); Pls.' Br. at 20.

The cases cited by the CIA are inapposite, because in those cases, the FOIA requesters did not argue that the names of the covert CIA officers had been previously disclosed. Gov't Reply at 3 (citing *DiBacco v. U.S. Dep't of Army*, 983 F. Supp. 2d 44, 58–61 (D.D.C. 2013), *aff'd in relevant part, remanded in part sub nom. DiBacco v. U.S. Army*, 795 F.3d 178 (D.C. Cir. 2015); *Canning v. DOJ*, No. CV11-1295(GK), 2017 WL 2438765, at *7 (D.D.C. June 5, 2017); *Klayman v. CIA*, 170 F. Supp. 3d 114, 120 (D.D.C. 2016)). Nor was there any indication in the record, as there is here, that the officers were no longer covert. Record evidence in this case shows that the CIA published the officer's name on an internal, unclassified blog, alongside the names of other non-covert officers, an act strongly suggesting that the officer is no longer covert. Krishnan Decl. Ex. B. But the Agency has not countered this suggestion or even tried to.

Second, even if the CIA has a valid Exemption 1 claim, it has waived that claim because (for similar reasons as those discussed above, *supra* I.B) the officer's name has been officially acknowledged. Plaintiffs have satisfied their initial burden under the official acknowledgment test, and the CIA has failed to rebut it. *See supra* I.B. The CIA argues that because the Agency's prepublication review policy provides that "disclaimers are only required 'consistent with cover status,'" there is no evidence that the CIA required the covert officer to include the disclaimer. Gov't Reply at 9 (citing Krishnan Decl. Ex. C § (b) (4)). Plaintiffs have made clear, however, that they challenge the CIA's withholding only insofar as two facts are true: the officer is formerly covert, and they have disclosed their CIA affiliation in one or more of their publications. Pls.' Br. at 19. As Plaintiffs previously explained to the government, they will withdraw their Exemption 1

challenge if the CIA confirms in writing that one of these facts is not true. To date, however, the CIA has refused to do so.

## IV.  At a minimum, this Court should order a supplemental declaration and conduct an *in camera* review.

At a minimum, this Court should order the CIA to submit a supplemental declaration and conduct an *in camera* review of the single withholding at issue in this litigation.

The CIA suggests that Plaintiffs have failed to show why a supplemental declaration is appropriate. Gov't Reply at 13. But as Plaintiffs have explained from the very beginning, the CIA has failed to establish key facts on which its claimed exemptions hinge. Specifically, the CIA has failed to answer several questions set out in Plaintiffs' opening brief, which address whether the authors have published works in their own names, whether the works mention their Agency affiliation and/or include the Agency's required disclaimer, and whether the "covert Agency officer" is currently or merely formerly covert. *See* Pls.' Br. at 21–22. The CIA has refused to provide this information despite Plaintiffs' repeated requests. But this Court should not sustain the CIA's claimed exemptions without it.

The CIA also argues that this case is beyond the scope of *in camera* review. Gov't Reply at 13–14. However, the D.C. Circuit has repeatedly made clear that courts have discretion to conduct *in camera* review where they believe that inspection is necessary "to make a responsible *de novo* determination on the claims of exemption." *Juarez v. Dep't of Justice*, 518 F.3d 54, 60 (D.C. Cir. 2008) (citation omitted). In fact, this is precisely the type of case in which the D.C. Circuit has considered *in camera* inspection appropriate: the CIA's affidavit is "insufficiently detailed to permit meaningful review of exemption claims," "the number of withheld documents is relatively small"—here, a single redaction in a single document—and "the dispute turns on the contents of the withheld documents[.]" *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 996 (D.C. Cir.

1998). Paired with a supplemental declaration addressing the questions set out above, *in camera* review would permit the Court to determine whether the CIA's withholdings in this case are proper. Accordingly, the Court should order both.

## Conclusion

For the reasons stated above, and in Plaintiffs' opening brief, this Court should grant summary judgment in favor of Plaintiffs, deny the CIA's motion for summary judgment, and order the CIA to release the authors' names. Alternatively, Plaintiffs respectfully urge the Court to require the CIA to submit a supplemental declaration to determine the propriety of the Agency's withholding, to conduct an *in camera* review of the withholding, and to identify any segregable information for prompt production to Plaintiffs.

November 22, 2019                                     Respectfully submitted,

 */s/ Brett Max Kaufman*                                */s/ Ramya Krishnan*
Brett Max Kaufman (D.D.C. Bar No.              Ramya Krishnan
  NY0224)                                                  Meenakshi Krishnan (D.C. Bar No. 1617229)
Alexia Ramirez (N.Y. bar application           Alex Abdo
  pending)                                                   Knight First Amendment Institute
American Civil Liberties Union                     at Columbia University
125 Broad Street—18th Floor                     475 Riverside Drive, Suite 302
New York, NY 10004                                 New York, NY 10115
T: 212.549.2500                                        T: 646.745.8500
F: 212.549.2654                                        ramya.krishnan@knightcolumbia.org
bkaufman@aclu.org

Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union
  of the District of Columbia
915 15th Street, NW – 2d floor
Washington, D.C. 20005
T: 202.601.4266
aspitzer@acludc.org

*Counsel for Plaintiffs*