## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION, ET AL.,<br><br>            Plaintiffs,<br>v.<br><br>CENTRAL INTELLIGENCE AGENCY, ET AL.,<br><br>            Defendants. | Civ. Action No. 16-1256 (EGS) |

## MEMORANDUM OPINION

This case arises out of Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, requests Plaintiffs the American Civil Liberties Union and American Civil Liberties Union Foundation (collectively "ACLU") made to 19 federal agencies, including the Central Intelligence Agency ("CIA"). *See generally* Compl., ECF No. 1. Plaintiffs stipulated to the dismissal of 16 federal agencies. *See* ECF No. 28, ECF No. 51.[1] What remains at issue is the redaction of the names of current and/or former CIA employees who had been granted an exemption from the Agency's prepublication process.

---

[1] The Air Force remains a Defendant. The ACLU seeks resolution of readability concerns with several charts produced to Plaintiffs. Plaintiffs have declined to dismiss the Air Force until these issues (which are not relevant to the instant motion) are fully resolved. Def.'s Mot., ECF No. 52-1.

Pending before the Court are the CIA's Motion for Summary Judgment and the ACLU's Cross-Motion for Summary Judgment. Upon careful consideration of the motions, the oppositions and replies thereto, the applicable law, the entire record, and for the reasons stated below, Court **GRANTS IN PART AND DENIES IN PART** the CIA's Motion for Summary Judgment and **GRANTS IN PART AND DENIES IN PART** the ACLU's Cross-Motion for Partial Summary Judgment.

## I.   Factual Background

The following facts are not in dispute. On March 3, 2016, the ACLU submitted FOIA requests to a number of federal agencies, including the CIA, seeking information regarding the agencies' respective prepublication review process. Plaintiff's Counter-Statement of Material Facts ("SOF"), ECF No. 55-4 ¶ 1. Current or former CIA employees may be granted an exemption from this process "based on an established record of prepublication review compliance and [the exemption] is usually limited to a narrow topic or circumstance." Pls.' Cross-Mot. for Partial Summ. J. and Opp'n to Def. CIA's Mot. for Summ. J. ("Pls.' Cross-Mot."), ECF No. 55-5 at 2. On April 7, 2017, the CIA made an initial production and released nine documents in full, 20 documents in part, and withheld seven documents in full. CIA's Reply to Plaintiffs' Counter-Statement of Disputed Facts, ECF No. 58-1 ¶ 3. The ACLU challenges one of the CIA's withholdings,

which is a redaction of the names of several CIA employees." *Id*. ¶¶ 5-6. The redactions are based on FOIA exemptions 1, 3, and 6. Def.'s Mot., ECF No. 54-1 at 6.[2]

## II.  Standard of Review

FOIA cases are typically and appropriately decided on motions for summary judgment. *Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 130 (D.D.C 2011) (citations omitted). Summary judgment is warranted "if the movant shows [by affidavit or other admissible evidence] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party opposing a summary judgment motion must show that a genuine factual issue exists by "(A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c). Any factual assertions in the moving party's affidavits will be accepted as true unless the opposing party submits his own affidavits or other documentary evidence contradicting the assertion. *See Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992). However, "the inferences to be drawn from the underlying

---

[2] When citing electronic filings throughout this Opinion, the Court cites to the ECF page number, not the page number of the filed document

facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

An agency has the burden of demonstrating that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt from the Act's inspection requirements." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal citation and quotation omitted). In reviewing a summary judgment motion in the FOIA context, the court must conduct a *de novo* review of the record, *see* 5 U.S.C. § 552(a)(4)(B), but may rely on agency declarations. *See SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Agency affidavits or declarations that are "relatively detailed and non-conclusory" are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Id.* (internal citation and quotation omitted). "[T]he Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by

4

either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (internal quotation marks and citation omitted).

### A.   FOIA Exemptions

Congress enacted FOIA to "open up the workings of government to public scrutiny through the disclosure of government records." *Judicial Watch, Inc.* 375 F. Supp. 3d at 97 (quoting *Stern v. FBI*, 737 F.2d 84, 88 (D.C. Cir. 1984) (internal quotation marks and alterations omitted)). Although the legislation is aimed toward "open[ness] . . . of government," *id.;* Congress acknowledged that "legitimate governmental and private interests could be harmed by release of certain types of information," *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (internal quotation marks and citations omitted). As such, pursuant to FOIA's nine exemptions, an agency may withhold requested information. 5 U.S.C. § 552(b)(1)-(9). However, because FOIA established a strong presumption in favor of disclosure, requested material must be disclosed unless it falls squarely within one of the exemptions. *See Burka v. U.S. Dep't of Health and Human Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996).

The agency bears the burden of justifying any withholding. *See Bigwood v. U.S. Agency for Int'l Dev.*, 484 F.Supp.2d 68, 74

(D.D.C. 2007). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Judicial Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013) (internal quotation marks omitted).

## B. Considerations in National Security Cases

"It is . . . well-established that the judiciary owes some measure of deference to the executive in cases implicating national security, a uniquely executive purview." *Center for Nat. Sec. Studies v. U.S. Dept. of Justice*, 331 F.3d 918, 926-27 (D.C. Cir. 2003). "Courts . . . accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record because the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse [e]ffects might occur as a result of a particular classified record." *Id.* at 927 (quotation marks and citation omitted)

## III. Analysis

### A. Exemption 1

The CIA invokes Exemption 1 to redact the name of one covert agency officer. Def.'s Mot., ECF No. 54-1 at 11. Exemption 1 protects from disclosure records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly

classified pursuant to such Executive order." 5 U.S.C. §

552(b)(1). Executive Order No. 13526 ("the Order"), governs the

classification of national security information, and sets forth

four prerequisites:

> (1) an original classification authority
> classifies the information; (2) the U.S.
> Government owns, produces, or controls the
> information; (3) the information is within one
> of eight protected categories listed in
> Section 1.4 of the Order; and (4) the original
> classification authority determines that the
> unauthorized disclosure of the information
> reasonably could be expected to result in
> damage to the national security, and
> identifies or describes that damage.

Exec. Order No. 13526, § 1.1(a). Furthermore, the information

must "pertain[] to" one of the categories of information

specified in the Executive Order, including "intelligence

activities (including covert action), intelligence sources or

methods." *Id*. § 1.4(c).

The CIA has provided a declaration which attests to the

first and second prerequisites, Decl. of Antoinette B. Shiner

("Shiner Decl."), ECF No. 54-2 ¶ 16; and explains that the

information falls under classification category § 1.4(c) of the

Order because it concerns "intelligence activities (including

covert action), [or] intelligence sources or methods" and that

"its unauthorized disclosure could reasonably be expected to

result in damage to national security." *Id*. The Declaration

explains:

> The redaction made pursuant to Exemption (b)(1) protects the name of a covert Agency officer. In order to carry out the mission of gathering and disseminating intelligence information, the CIA places many Agency officers under cover to protect the fact, nature, and details of the CIA's interest in foreign activities and the intelligence sources and methods employed to assist those activities. Revealing the identify of a covert officer puts the officer and his or her family in jeopardy, exposes the cover provider to unwarranted risk, and degrades the effectiveness of current and future intelligence activities. Compromise of an officer's cover can also allow hostile intelligence services and terrorist organizations to determine the locations in which the officer has worked and the people with whom the officer has met. Disclosing the identity of a covert officer can thus jeopardize anyone—even innocent individuals—with whom the officer had contact.

Shiner Decl., ECF No. 54-2 ¶ 17. Accordingly, the CIA argues that it properly withheld the name of the covert officer because the name of the officer "is currently and properly classified 'because it concerns intelligence activities (including covert action), intelligence sources or methods." Def.'s Mot., ECF No. 54-1 at 11 (quoting Exec. Order No. 13526 § 1.4(c)).

The ACLU states that it challenges this reaction "only insofar as two facts are true, first, the individual is a former, rather than a current, covert officer, and second, the formerly covert officer disclosed their affiliation with the CIA in one or more of their publications." Pls.' Cross-Mot., ECF No. 55-1 at 24. But as the CIA points out, the ACLU "cite[s] no

authority—because none exists—for the proposition that they may simply assert wholly hypothetical propositions, 'take' them to be true, and seek summary judgment in their favor based on nothing more than such wishful, and wholly speculative, thinking." Def.'s Reply, ECF No. 58 at 12. The ACLU has no response to this argument, *see* Pls.' Reply, ECF No. 60 at 14-16; only reiterating that "they will withdraw their Exemption 1 challenge if the CIA confirms in writing that one of these facts is not true", *id.* at 15-16.

The ACLU argues that the CIA has not established that the name of the covert officer is properly classified because the CIA "has not provided 'reasonable specificity of detail' to demonstrate that disclosure of the name would cause harm to national security." **Pls.' Cross-Mot.**, ECF No. 55 at 25 (quoting Larson, 565 F.3d at 865). The ACLU points out "the officer . . . received an exemption from prepublication review 'based on an established record of prepublication review compliance.'" *Id.* (quoting Krishnan Decl., Ex. B.). The ACLU believes it likely "that the officer has published multiple works under their name about their time in government" and if that is true releasing the information "would not reveal any more than the public already knows . . .." *Id.*

The Court disagrees with the ACLU that the CIA's affidavit is deficient. In its declaration, the CIA explains in detail the

harm that the disclosure of the covert officer's name would cause to national security. Shiner Decl., ECF No. 54-2 ¶ 17. Given the national security context and substantial weigh accorded to agency affidavits, *see James Madison Project*, 607 F. Supp. 2d at 21; the CIA properly invoked Exemption 1 due to the reasonable expectation of damage disclosure will have on national security. Shiner Decl., ECF No. 54-2 ¶ 17.

The ACLU also argues that even if the CIA's claim was valid, it "waived the claim by officially acknowledging the author's name" on an "unclassified internal blog." Pls.' Cross-Mot., ECF No. 55-1 at 26. The CIA responds—and the Court agrees—that the intra-agency dissemination of information does not amount to making the information "public through an official and documented disclosure." *Wolf*, 473 F.3d at 378 (internal quotation omitted).

Finally, the ACLU argues that even if the CIA had a valid Exemption 1 claim, it waived it by "officially acknowledging" the employee's name. Pls.' Cross-Mot., ECF No. 55-1 at 26. The Court rejects this argument for the reasons explained *infra* at Section III.B.2.

For these reasons, the Court **GRANTS** the CIA's Motion for Summary Judgment as to Exemption 1, and **DENIES** the ACLU's Motion for Summary Judgment as to Exemption 1.

**B. Exemption 3**

The CIA also invokes Exemption 3 to protect from disclosure all of the names in the contested withholding. Def.'s Mot., ECF No. 54-1 at 13. Exemption 3 allows an agency to withhold or redact records that are "specifically exempted from disclosure by statute ... provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). "To invoke Exemption 3, the government 'need only show  . . . that the material falls within' a statute meeting the exemption's conditions." *DiBacco v. Dep't of the Army*, 926 F.3d 827, 835 (D.C. Cir. 2019) (quoting *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 20009). "'If an agency's statements supporting exemption contain reasonable specificity of detail as to demonstrate that the withheld information logically falls within the claimed exemption and evidence in the record does not suggest otherwise, . . . the court should not conduct a more detailed inquiry to test the agency's judgment and expertise or to evaluate whether the court agrees with the agency's opinions.'" *Id*. (quoting *Larson*, 565 at 865).

The CIA invokes Exemption 3 to justify the redaction under the CIA Act of 1949 ("CIA Act"). Def.'s Mot., ECF No. 54-1 at

12. It is well established that the CIA Act is an Exemption 3 statute. *Fitzgibbon v. CIA*, 911 F.2d 755, 761 (D.C. Cir. 1990). Section 6 of the CIA Act provides that "the Agency shall be exempted from . . . any other law which require[s] the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency[.]" 50 U.S.C. § 3507. The CIA states that it invoked the CIA Act to protect the "names of personnel currently or formerly employed by the CIA, the disclosure of which the CIA Act expressly prohibits." Def.'s Mot., ECF No. 54-1 at 13 (quoting Shiner Decl., ECF No. 54-2 ¶ 20) ("The redaction at issue contains the names of personnel currently or formerly employed by the CIA, the disclosure of which the CIA Act expressly forbids.").

The ACLU argues that the CIA has failed to carry its burden to sustain a withholding under Exemption 3 because: (1) Section 6 of the CIA Act "protects only information that the CIA treats as confidential, not the names of authors it has repeatedly authorized to publish about their CIA service under their own names"; and (2) the CIA waived reliance on the CIA Act through "official acknowledgment." Pls.' Cross-Mot.", ECF No. 55 at 11-12.

### 1. The Names of the CIA Employees are Protected by Section 6 of the CIA Act

The ACLU argues that the names of the CIA employees do not fall within the scope of the CIA Act because "[b]ased on the record evidence . . . the only reasonable inference is that the CIA does not treat the authors' names and Agency affiliation as confidential," asserting that Section 6 of the CIA Act does not protect information that the CIA does not treat as confidential. Pls.' Cross-Mot., ECF No. 55-1 at 12. The ACLU's support for this assertion is thin, *see id*. (citing *Phillippi v. CIA*, 1009, 1015 n.14 (D.C. Cir. 1976) ("the authority [Section 6] confers is specifically directed at statutes that would otherwise require the Agency to divulge information about its internal structure")); and it provides no precedent for its assertion that "the CIA must demonstrate that it treats the information as confidential." *see id*.

"'Exemption 3 differs from other FOIA exemptions in that . . . the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage.'" *Morley v. CIA*, 508 F.3d 1108, 1126 (D.C. Cir. 2007) (quoting *Ass'n of Retired Rail Road Workers v. U.S. Rail Road Retirement Board*, 830 F. 2d 331, 336 (D.C. Cir. 1987)). Here, the relevant statute is Section 6 of the CIA Act which provides that "the Agency shall be exempted from . . . any

other law which require[s] the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency[.]" 50 U.S.C. § 3507. And the withheld material is the names of current and/or former CIA employees. In view of the "sole issue" before the Court, the names of the CIA employees are protected by Section 6 of the CIA Act.

### 2. The ACLU Has Not Met Its Burden To Establish that Names of the CIA Employees Have Been Officially Acknowledged

"[W]hen information has been 'officially acknowledged,' its disclosure may be compelled even over an agency's other valid exemption claim." *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990). "An agency's official acknowledgement of information by prior disclosure, however, cannot be based on mere public speculation, no matter how widespread." *Wolf v. C.I.A.*, 473 F.3d 370, 378 (D.C. Cir. 2007) (citing *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983)). "Instead, an official acknowledgement must meet three criteria:

> First, the information requested must be as specific as the information previously released. Second, the information requested must match the information previously disclosed … Third, … the information requested must have already been made public through an official and documented disclosure.

*Wolf*, 473 F.3d at 378 (quoting *Fitzgibbon*, 911 F.2d at 765).
Accordingly, "the fact that information exists in some form in
the public domain does not necessarily mean that official
disclosure will not cause harm cognizable under a FOIA
exemption." *Id.* (citing *Fitzgibbon*, 911 F.2d at 766).
Consequently, "a plaintiff asserting a claim of prior disclosure
must bear the initial burden of pointing to specific information
in the public domain that appears to duplicate that being
withheld." *Afshar*, 702 F.2d at 1130.

The ACLU argues that it has met its burden because: (1) the
employees who received an exemption have "an established record
of prepublication review compliance" and therefore have
published on more than one occasion; (2) since the CIA's
Prepublication Review of Certain Material Prepared for Public
Dissemination regulation generally requires that current and
former employees request prepublication review for works that
are based on their time in government service, any published
works disclosed the author's names and their association with
the CIA; (3) the CIA authorized the disclosure by clearing the
works for publication; (4) per the CIA process, it sent
clearance letters memorializing the authorization; and (5) the
regulation requires that the authors publish a disclaimer
explaining that the material was reviewed by the CIA and cleared
for publication. Pls.' Cross-Mot., ECF No. 55-1 at 17-18. The

ACLU also contends that the existence of the published works helps them satisfy their initial burden. Pls.' Cross-Mot., ECF No. 55-1 at 18.

The CIA responds that the ACLU has not met its burden because it "do[es] not even *purport* to identify any specific [CIA] statement or disclosure that satisfies the [three criteria] . . . [i]nstead … offer[ing] only a series of wholly speculative suppositions." Def.'s Reply, ECF No. 58 at 11. In reply, the ACLU contends that its initial showing does not amount to speculation because its claims are grounded in the record. Pls.' Reply, ECF No. 60 at 9.

The Court concludes that the ACLU has not met its burden because it has failed to point to "an official and documented disclosure" of the names of the CIA employees. *See Wolf v. C.I.A.*, 473 F.3d 370, 378 (D.C. Cir. 2007); *see also Competitive Enterprise Institute v. National Security Agency*, 78 F. Supp. 3d 45, 58 (D.D.C. 2015) (noting that there must be an official and actual acknowledgement by someone in a position to know …"). The CIA employee's publication of a book disclosing the employee's affiliation with the CIA does not satisfy the requirement that the disclosure be "official and documented." *Wolf*, 473. F.3d at 378.

The ACLU's reliance on *Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16 (D.C. Cir. 1999) is misplaced. It

cites *Niagara* to argue that it has met its initial burden because it cited to the CIA regulation. *Id.* at 18. In *Niagara*, the court concluded that plaintiff had met its initial burden because it cited to a regulation requiring the filing of a public form. *Niagara Mohawk Power Corp.,* 169 F.3d at 19-20. However, it takes more than citing the CIA regulation to satisfy the ACLU's burden. *See Fitzgibbon*, 911 F.2d at 765 ("First, the information requested must be as specific as the information previously released. Second, the information requested must match the information previously disclosed … Third, … the information requested must have already been made public through an official and documented disclosure.").

Furthermore, the ACLU's reliance on *Afshar* is unpersuasive. In *Afshar*, the court rejected the argument "that the CIA's screening and approval of the books brought them into the official realm and made the disclosures therein tantamount to official acknowledgements." *Afshar*, 702 F. 2d at 1133-34. According to the ACLU, that holding is distinguishable from the situation here because "[t]he court did not . . . address whether the fact of the CIA's approval would constitute an official acknowledgment of the authors' names and association with the CIA"; rather "the disclosures the court was addressing involved the contents of the books." Pls.' Cross-Mot., ECF No. 55-1 at 19. However, the CIA employee's publication of a book

disclosing the employee's affiliation with the CIA does not satisfy the requirement that the disclosure be "official and documented." *Wolf*, 473. F.3d at 378.

For these reasons, the Court **GRANTS** the CIA's Motion for Summary Judgment as to Exemption 3, and **DENIES** the ACLU's Motion for Summary Judgment as to Exemption 3.

### C. Exemption 6

Exemption 6 permits withholding of information when two requirements have been met. *See U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 598 (1982). The first is that "the information must be contained in personnel, medical or 'similar' files." *Id.* The statutory formulation "similar files" is understood broadly to include any "[g]overnment records on an individual which can be identified as applying to that individual." *Id.* at 602 (citation and internal quotation marks omitted). Thus, Exemption 6 permits exemption of "not just files, but also bits of personal information, such as names and addresses, the release of which would create[ ] a palpable threat to privacy." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006) (citation and internal quotation marks omitted).

The second requirement is that "the information must be of such a nature that its disclosure would constitute a clearly unwarranted invasion of personal privacy." *See Wash. Post Co.*,

456 U.S. at 598. This requirement requires a court to "weigh the privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of privacy." *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (citation and internal quotation marks omitted). The only relevant public interest in this balancing analysis in a FOIA case is "the extent to which disclosure of the information sought would she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Id.* (citation and internal quotation marks omitted).

The CIA contends that it properly withheld the names of the CIA personnel because they "have a substantial privacy interest in not having their identities and/or contact information disclosed, because such disclosure "could subject them to harassment or unwanted contact by the media." Def.'s Mot., ECF No. 54-1 at 14 (quoting Shiner Decl., ECF No. 54-2 ¶ 23). Additionally, the CIA argues that disclosing the identity of the CIA personnel "would shed no light on CIA operations or activities." *Id.* (citing Shiner Decl., ECF No. 54-2 ¶ 24).

The ACLU argues that the CIA has failed to meet the Exemption 6 requirements. First, the names are not "'personnel, medical, or similar file[s],' because they do not contain

detailed personal information about agency employees." Pls.'
Cross-Mot., ECF No. 55-1 at 20. Second, "disclosure of the names
would not involve a clearly unwarranted privacy invasion because
the privacy interest in them is *de minimis*, and because this
interest is clearly outweighed by the public's interest in
further understanding the CIA's prepublication review regime,
including, for example, whether it favors agency supporters and
discriminates against agency critics." Pls.' Cross-Mot., ECF No.
55-1 at 20.

The Court is persuaded that the list of the names of the
CIA employees are "similar files." "The Supreme Court has
interpreted the phrase, 'similar files' to include all
information that applies to a particular individual."
*Leppelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999). It has
also recognized that "the protection of Exemption 6 is not
determined merely by the nature of the file in which the
requested information is contained." *U.S. Dep't of State v.
Wash. Post Co.*, 456 U.S. 595, 601 (1982) (citation omitted). The
Court of Appeals for the District of Columbia Circuit ("D.C.
Circuit") has understood Exemption 6 "to exempt not just files,
but also bits of personal information such as names and
addresses … ." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 152
(D.C. Cir. 2006). For these reasons, the names of the CIA
employees qualify as "similar files." *See Judicial Watch, Inc.*,

25 F. Supp. 3d at 141 ("there is little doubt that the names at the end of the Memorandum satisfy Exemption 6's "similar file" categorization").

"The Court must now determine whether there is a substantial privacy interest that would be compromised if the [CIA employees'] names are disclosed." *Judicial Watch, Inc. v. Dep't of the Navy*, 25 F. Supp. 3d 131, 141 (D.D.C. 2014). A "substantial privacy interest is anything greater than a de minimis privacy interest." *Judicial Watch, Inc., v. U.S. Dep't of State*, 875 F. Supp. 2d 37, 46 (D.D.C. 2012). "[W]hether [disclosure of a list of names] is a significant or de minimis threat depends upon the characteristics revealed by virtue of being on the particular list, and the consequences likely to ensue." *NARFE*, 879 F.2d at 877.

> Recent decisions in this jurisdiction appear generally sympathetic to the argument that "[t]he privacy interest of civilian federal employees includes the right to control information related to themselves and to avoid disclosures that could conceivably subject them to annoyance or harassment in either their official or private lives[.]" *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.,* 384 F. Supp. 2d 100, 116 (D.D.C. 2005) ("*EPIC* ") (internal quotation marks and citations omitted); *see also Judicial Watch, Inc. v. Dep't of State,* 875 F. Supp. 2d at 47 ("There is a substantial interest in bits of personal information where there is a justified and articulable risk of media harassment" as a result of the release of such information.) But it is also clear that the potential adverse consequences must be "real rather than

> speculative[,]" *EPIC,* 384 F. Supp. 2d at 116,
> and a bare assertion that a document's
> "disclosure would constitute a clearly
> unwarranted invasion of [an individual's]
> personal privacy" is not sufficient to
> establish that a substantial privacy interest
> in preventing disclosure exists. *Morley v.
> CIA,* 508 F.3d 1108, 1127-28 (D.C. Cir.2007).
> Rather, the agency must *demonstrate* that
> "disclosure would constitute a 'clearly
> unwarranted' invasion of personal privacy."
> *Id.; see also id.* at 1128 ("To the extent the
> [defendant] suggests that the privacy interest
> in biographical information is self evident,
> it is mistaken."). Moreover, it is the agency
> that bears this initial burden. *Judicial
> Watch, Inc. v. Dep't of State,* 875 F. Supp. 2d
> at 45.

*Judicial Watch, Inc.*, 25 F. Supp. 3d at 142.

The Court concludes that the CIA has failed to meet its burden to justify withholding the names pursuant to Exemption 6. First, the CIA contends that it properly withheld the names of the CIA personnel because they "have a substantial privacy interest in not having their identities and/or contact information disclosed, because such disclosure "could subject them to harassment or unwanted contact by the media." Def.'s Mot., ECF No. 54-1 at 14 (quoting Shiner Decl., ECF No. 54-2 ¶ 23). This conclusory statement falls short of establishing a substantial privacy interest. The CIA has not explained why disclosing the list of CIA employees' names could subject them to harassment nor who would harass them. This situation is entirely distinguishable from, for example, cases associated

with substantial press coverage. *See e.g.*, *Judicial Watch v. Dep't of State*, 875 F. Supp. 2d 37, 47 (D.D.C. 2012) (withholding of employee names justified because of "a justified and articulable risk of media harassment"), *Elec. Privacy Info. Ctr. V. U.S. Dep't of Homeland Sec.*, 384 F. Supp. 2d. 100, 118 (D.D.C. 2005) (withholding of employee names upheld where media scrutiny and harassment were likely). Where the affidavit supporting an exemption is conclusory, courts will provide the agency the opportunity to submit a supplemental motion with revised declarations or affidavits to explain in more detail the privacy interest the published authors have in their names. *Judicial Watch*, 25 F. Supp. 3d at 143-144. Because the Court has concluded *supra* that the names are properly withheld pursuant to Exemption 1 and Exemption 3, and accordingly will not be disclosed, the Court need not provide the CIA with the opportunity here.

Second, the CIA's assertion that disclosing the identity of the personnel "would shed no light on CIA operations or activities," Def.'s Mot., ECF No. 54-1 at 14 (citing Shiner Decl., ECF No. 54-2 ¶ 24); is unpersuasive because, as the ACLU points out, disclosure of the CIA personnel, each of whom had been granted an exemption from the Agency's prepublication process would shed light on "how the CIA's prepublication review processes operate, including whether the CIA's processes have

been politicized and discriminate on the basis of viewpoint," Pls.' Cross-Mot., ECF No. 55-1 at 24. Weighing these two interests, the public interest outweighs the privacy interest of the published authors. Accordingly, the CIA did not properly invoke Exemption 6 to withhold the names of the CIA employees because disclosure of the names is a de minimis threat outweighed by the public interest in learning how the CIA's prepublication review processes work.

For these reasons, the Court **DENIES** the CIA's Motion for Summary Judgment as to Exemption 6, and **GRANTS** the ACLU's Motion for Summary Judgment as to Exemption 6.

### D. Neither a Supplemental Declaration Nor *In Camera* Review Are Warranted

The ACLU asks the Court to require the CIA to submit a supplemental declaration and to conduct an in camera review. Pls.' Cross-Mot., ECF No. 55-1 at 26. The ACLU does not argue that there has been bad faith on the part of the CIA, but contends that "the CIA's declaration is insufficiently detailed to permit meaningful review of [its] exemption claims," *see id.* at 27; because the CIA has not responded to the ACLU's questions regarding whether: (1) "the authors have published worked in their own names"; (2) "the works mention their Agency affiliation and/or include the Agency's required disclaimer"; and (3) the covert Agency Officer is currently covert, Pl.'s

Reply, ECF No. 60 at 16. The Court disagrees. The affidavits supporting the withholdings pursuant to Exemptions 1 and 3 are reasonably detailed, explain why the names of the current and former employees "logically fall[] within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project*, 656 F.2d at 738 (D.C. Cir. 1981) (citation omitted). Accordingly, the Court finds that it can rely on the declarations to conduct its de novo determination.

The ACLU also asks the Court to conduct an *in camera* review of the document containing the withheld author's names. Pls.' Cross-Mot., ECF No. 55-1 at 27. FOIA gives district courts the discretion to examine the contents of requested agency records *in camera* "to determine whether such records or any part thereof shall be withheld." *See* 5 U.S.C. § 552(a)(4)(B). It is within the Court's "broad discretion" to decline to conduct *in camera* review where the Court determines that *in camera* inspection is unnecessary "to make a responsible de novo determination on the claims of exemption." *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 392 (D.C. Cir. 1987). Because the Court has found that it can rely on the declarations to conduct its de novo determination, *in camera* review is unwarranted. Additionally, it is unclear what the *in camera* review of a list of names would accomplish.

**E. Segregability**

Under FOIA, "even if [the] agency establishes an exemption, it must nonetheless disclose all reasonably segregable, nonexempt portions of the requested record(s)." *Roth v. U.S. Dept. of Justice*, 642 F. 3d 1161, 1167 (D.C. Cir. 2001) (internal quotation marks and citation omitted). "[I]t has long been the rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 18 (D.D.C. 2004) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F. 2d 242, 260 (D.C. Cir. 1977)). Thus, an agency must provide "a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released*." Valfells v. CIA*, 717 F. Supp. 2d 110, 120 (D.D.C. 2010) (internal quotation marks and citation omitted). However, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" from the requester. *Sussman v. U.S. Marshals Serv.*, 494 F. 3d 1106, 1117 (D.C. Cir. 2007).

The CIA's declaration states that a line-by-line review was conducted and all reasonable segregable non-exempt information has been released. Shiner Decl., ECF No. 54-2 ¶ 25. The ACLU

does not contend that the CIA has failed to comply with its segregation requirements. The only withheld information are the names of current and/or former CIA officials. Accordingly, the Court concludes that the CIA has satisfied its segregability obligations under FOIA.

**IV.  Conclusion**

For the reasons set forth above, the CIA's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART** and the ACLU's Cross-Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART.** An appropriate order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **November 24, 2021**