**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION and AMERICAN CIVIL LIBERTIES UNION FOUNDATION, <br><br> Plaintiffs, <br><br> v. <br><br> CENTRAL INTELLIGENCE AGENCY, *et al.*, <br><br> Defendants. | Case No. 1:16-cv-01256 (EGS) |

**PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS**

Brett Max Kaufman
American Civil Liberties Union
125 Broad Street—18th Floor
New York, NY 10004
T: 212.549.2500
F: 212.549.2654
bkaufman@aclu.org

Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union
  of the Nation's Capital
4301 Pennsylvania Avenue, NW,
Suite 434
Washington, D.C. 20008
T: 202.457.0800
F: 202.457.0805
artspitzer@aclu-nca.org

Ramya Krishnan (admitted *pro hac vice*)
Alex Abdo (admitted *pro hac vice*)
Knight First Amendment Institute
  at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
T: 646.745.8500
F: 646.661.3361
ramya.krishnan@knightcolumbia.org

*Counsel for Plaintiffs*

**Table of Contents**

Table of Authorities ................................................................................................ii

Introduction ........................................................................................................... 1

Factual Background ................................................................................................3

  A. Plaintiffs' requests and the commencement of litigation .................................3

  B. Proceedings before this Court and the disclosure of responsive information .............................................................................................7

  C. Summary judgment motions and briefing .......................................11

Argument ...............................................................................................................11

 I. Plaintiffs are eligible to receive an award of fees and expenses. .................12

 II. Plaintiffs are entitled to their fees and expenses. ...................................16

  A. The litigation produced a clear benefit to the public. .......................17

  B. Plaintiffs derived no commercial benefit from the records they obtained, and they sought the records solely to serve the public interest. .....................................................................................21

  C. Defendants lacked any reasonable basis for their dilatory conduct.................22

 III. Plaintiffs' requested fee is reasonable. ...................................................23

  A. The hours billed by Plaintiffs' counsel are reasonable.....................24

  B. The rates billed by Plaintiffs' counsel reflect prevailing market rates. ..........25

Conclusion ............................................................................................................26

## Table of Authorities

**Cases**

*All. for Responsible CFC Policy, Inc. v. Costle*, 631 F. Supp. 1469 (D.D.C. 1986) .................... 21

*Barnard v. DHS*, 656 F. Supp. 2d 91 (D.D.C. 2009) ..................................................... 3

*Blum v. Stenson*, 465 U.S. 886 (1984) .................................................................. 25

*Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521 (D.C. Cir. 2011) ...................... 12

*CREW v. DOJ*, 142 F. Supp. 3d 1 (D.D.C. 2015) ......................................................... 23

*CREW v. DOJ*, 820 F. Supp. 2d 39 (D.D.C. 2011) ....................................................... 21

*CREW v. FEC*, 66 F. Supp. 3d 134 (D.D.C. 2014) ....................................................... 25

*CREW v. FEC*, 711 F.3d 180 (D.C. Cir. 2013) .......................................................... 13

*Davy v. CIA*, 550 F.3d 1155 (D.C. Cir. 2008) ............................................... 17, 21, 22, 23

*Eley v. District of Columbia*, 793 F.3d 97 (D.C. Cir. 2015) ........................................... 25

*Env't Def. Fund v. EPA*, No. 17-cv-02220 (APM), 2022 WL 136792 (D.D.C. Jan. 13, 2022) ........................................................................... 12, 13, 14, 15

*Env't Integrity Project v. Gen. Servs. Admin.*, No. 18-cv-0042 (KBJ), 2021 WL 3464337 (D.D.C. Aug. 6, 2021) ......................................................... 12

*EPIC v. DHS*, 218 F. Supp. 3d 27 (D.D.C. 2016) ............................................... 13, 14, 22

*EPIC v. DHS*, 999 F. Supp. 2d 61 (D.D.C. 2013) ................................................. 20, 22

*Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94 (D.C. Cir. 2020) ................................... 12, 16

*Judicial Watch, Inc. v. DOJ*, 878 F. Supp. 2d 225 (D.D.C. 2012) ................................... 25

*Judicial Watch, Inc. v. FBI*, 522 F.3d 364 (D.C. Cir. 2008) ........................................ 16

*Lane v. Franks*, 573 U.S. 228 (2014) .................................................................. 20

*McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707 (D.C. Cir. 2014) .................................. 17

Memorandum Opinion & Order, *Sierra Club v. EPA,* No. 19-cv-3018 (APM) (D.D.C. Mar. 31, 2021) ........................................................... 15, 16

*N.Y. Times Co. v. U.S.*, 403 U.S. 713 (1971) ......................................................... 20

*Pinson v. Lappin*, 806 F. Supp. 2d 230 (D.D.C. 2011) ............................................................17, 23

*Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988)......................23

*Webster v. DOJ*, No. 02-603 (RC), 2021 WL 4243414 (D.D.C. Sept. 17, 2021) ........................17

**Statutes**

5 U.S.C. § 552 ..................................................................................................................passim

**Other Authorities**

115 Cong. Rec. H3300–01 (daily ed. May 3, 2017)................................................................1, 17

115 Cong. Rec. S2750 (daily ed. May 4, 2017) ....................................................................1, 17

Alex Abdo, Jameel Jaffer, Meenakshi Krishnan, & Ramya Krishnan, *How A New Administration—And A New Congress—Can Fix Prepublication Review: A Roadmap for Reform*, Just Security (Nov. 24, 2020), https://perma.cc/TZT5-ZZ99 ...............................................................................................................................20

Alex Emmons, *Widespread Censorship of Former Government Employees Violates the First Amendment, Lawsuit Says*, The Intercept (Apr. 2, 2019), https://perma.cc/WCQ9-C46W ........................................................................................19

Charlie Savage, *Ex-National Security Officials Sue to Limit Censorship of Their Books*, N.Y. Times (Apr. 2, 2019), https://perma.cc/J2Z9-BHF6 ...........................................19

Deanna Paul, *These Former Officers Say the CIA and NSA Are Censoring Them. Now They're Suing.*, Wash. Post (Apr. 2, 2019), https://perma.cc/WN49-RHV8.............................................................................................................................20

Jack Goldsmith & Oona A. Hathaway, *How the U.S. Government Built the Largest System of Prior Restraint in History*, Lawfare (Feb. 7, 2022), https://perma.cc/4Y5Q-5RPE .........................................................................................20

Jack Goldsmith & Oona A. Hathaway, *Prepublication Review and the Quicksand Foundation of* Snepp, Lawfare (Jan. 31, 2022), https://perma.cc/47U8-F7AW ....................20

Jack Goldsmith & Oona A. Hathaway, *The Government's Prepublication Review Process is Broken*, Wash. Post (Dec. 25, 2015), https://perma.cc/GZR9-8H2M...................17

Jack Goldsmith & Oona Hathaway, *The Government's System of Prepublication Review Is Broken*, Wash. Post (Dec. 25, 2015), https://perma.cc/2JST-ZJ52...........................1

John Wagner, *Former Defense Secretary Esper Sues Pentagon, Claiming Portions of Memoir Are Being Improperly Redacted*, Wash. Post (Nov. 29, 2021), https://perma.cc/NQD3-99CU ...................................................................................18

Knight First Amendment Institute at Columbia University, ACLU v. CIA &
    Knight Institute v. DOD, https://knightcolumbia.org/cases/knight-institute-v-
    dod (last accessed Feb. 21, 2022) ........................................................................................18

Knight First Amendment Institute at Columbia University, *Interactive Chart:
    Prepublication Review by Agency and Secrecy Agreement* (Aug. 27, 2019),
    https://knightcolumbia.org/content/prepublication-review-by-agency-and-
    agreement ..............................................................................................................................19

Knight First Amendment Institute at Columbia University, *Reading Rooms*,
    https://knightcolumbia.org/reading-room/ (last accessed Feb. 21, 2022) ...........................18

Michael S. Schmidt & Charlie Savage, *White House Accused of Improperly
    Politicizing Review of John Bolton's Book*, N.Y. Times (Sept. 23, 2020),
    https://perma.cc/97S7-HDN7 ...............................................................................................18

Nada Bakos & John Nixon, *The CIA is Delaying Our Books' Publication and
    That Hurts Our Democracy*, Wash. Post (Dec. 22, 2016),
    https://perma.cc/NA9G-PLK6...............................................................................................17

Ramya Krishnan, Knight First Amendment Institute at Columbia University,
    *Comey's Book and Prepublication Review* (Apr. 16, 2018),
    https://knightcolumbia.org/content/comeys-book-and-prepublication-review .....................18

Ramya Krishnan, Knight First Amendment Institute at Columbia University, *The
    Government's Own Documents Show That Prepublication Review Is Broken*
    (Apr. 4, 2019), https://knightcolumbia.org/content/governments-own-
    documents-show-prepublication-review-broken.............................................................18, 19

Scott Shane, *A.C.L.U. Lawyers Mine Documents for Truth*, N.Y. Times (Aug. 29,
    2009), https://perma.cc/Y9HQ-9UPP....................................................................................26

**Introduction**

Plaintiffs American Civil Liberties Union and American Civil Liberties Union Foundation (collectively, "Plaintiffs") initiated this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, in June 2016 seeking the disclosure of records of substantial public interest. Specifically, Plaintiffs sought records that would shed light on a far-reaching system of government censorship, known as "prepublication review." Under this system, millions of current and former intelligence agency employees and military personnel are prohibited from speaking or writing publicly without first obtaining the government's approval. And government officials review and censor tens of thousands of submissions every year.

Until Plaintiffs filed this lawsuit, the details of this system were hidden from public view. Prepublication review is not governed by any executive-branch-wide policy, but instead by an unruly patchwork of regulations, policies, and non-disclosure agreements adopted by individual agencies. Former public servants who have had to navigate agency schemes have deplored them as "racked with pathologies,"[1] and the House and Senate Intelligence Committees have called strenuously for reform,[2] but before Plaintiffs filed this action, key facts about agencies' prepublication review processes remained obscure.

To inform the public about these processes and their implementation, Plaintiffs filed identical FOIA requests with nineteen federal agencies and agency components, seeking several categories of records—including policies, standards, and guidance related to prepublication review; statistics related to prepublication review; titles, subject matters, and dates of works

---

[1] Jack Goldsmith & Oona Hathaway, *The Government's System of Prepublication Review Is Broken*, Wash. Post (Dec. 25, 2015), https://perma.cc/2JST-ZJ52.

[2] *See* 115 Cong. Rec. H3300–01 (daily ed. May 3, 2017) (statement of Rep. Nunes); 115 Cong. Rec. S2750 (daily ed. May 4, 2017) (statement of Sen. Burr).

submitted for review; and information about enforcement proceedings instituted or contemplated on the basis of violations of prepublication review requirements. But after waiting for well over three months, they had received only ten pages and two spreadsheets from one agency, and a single page from another.

To ensure timely disclosure of the rest of the records responsive to their request, Plaintiffs filed this suit. After nearly three years of negotiations, reflected in more than a dozen joint status reports, Plaintiffs eventually obtained from eighteen defendants over eighteen thousand pages of records describing the agencies' systems of prepublication review in unprecedented detail. Included among the thousands of pages Plaintiffs obtained were policy statements and guidance governing speech by current and former public employees that had never before been made public. Also included were logs of prepublication review submissions revealing that favored officials were sometimes afforded special treatment, with review of their manuscripts fast-tracked. Plaintiffs made all of these documents available to the public. They published several lengthy analyses of the documents. They proposed comprehensive reform of prepublication review based on the documents. They released an interactive tool allowing members of the public to study and compare the key features of agency review schemes. And several news organizations cited these documents in commentary about the prepublication review system and classification issues in general.

Based on their success in illuminating the policies and practices of prepublication review, Plaintiffs now seek reasonable attorney's fees for their work. FOIA authorizes district courts to award attorney's fees and costs to a plaintiff in a FOIA case "in which the complainant has substantially prevailed," including where the plaintiff obtains relief through "a voluntary or unilateral change in position by the agency," 5 U.S.C. § 552(a)(4)(E). "FOIA provides for awards of attorney's fees and costs to prevailing parties for two main purposes: (1) to encourage [FOIA]

suits that benefit the public interest and (2) to serve as compensation for enduring an agency's unreasonable obduracy in refusing to comply with the [FOIA]'s requirements." *Barnard v. DHS*, 656 F. Supp. 2d 91, 97 (D.D.C. 2009) (cleaned up).

Plaintiffs substantially prevailed in this action, and an attorney's fees award in this case would serve the purposes of FOIA's fees provision. The filing of this action catalyzed the processing and production of over eighteen thousand pages of records that would not have been produced on the same timeline (and possibly would still not have been produced today) had Plaintiffs not filed suit. These records have added very significantly to the public's understanding of the prepublication review system at a time of substantial public interest in that system. And Defendants' failure to process the records in earnest until *after* the filing of this suit was unreasonable.

Plaintiffs respectfully request that the Court grant an award of $17,622.53 for reasonable attorney's fees and $700.00 in costs, both of which were incurred in successfully seeking the release of the requested records.

## Factual Background

### A.    Plaintiffs' requests and the commencement of litigation

On March 3, 2016, Plaintiffs submitted identical FOIA requests (the "Request") to the CIA, DOD (and its components the DIA, Air Force, Navy, NGIA, NRO, NSA, Army, and Marines), DOE, DHS, (and its component the Coast Guard), DOJ (and its components the DEA and FBI), DOS, DOT, and ODNI. The Request sought seven categories of records relating to the agencies' prepublication review policies and processes. Plaintiffs sought expedited processing of the Request pursuant to 5 U.S.C. § 552(a)(6)(E) and applicable regulations.

Of the nineteen Defendant agencies and agency components to which Plaintiffs submitted the Request, all failed to comply with the twenty-day time limit for responding to FOIA requests, and all but two, the ODNI and Army, failed to produce even a single record responsive to the Request prior to the filing of this action:[3]

1. **CIA:** By letter dated March 11, 2016, the CIA acknowledged receipt of the Request and denied Plaintiffs' request for expedited processing. Compl. ¶ 17. By letter dated July 16, 2016, the CIA informed Plaintiffs that the Request "was still in process," *id.* ¶ 19, however, Plaintiffs received no further correspondence, and the agency released no records responsive to the Request before the filing of this action, *id.* ¶ 20.

2. **DOD:** By letter dated March 14, 2016, the DOD acknowledged the Request and denied Plaintiffs' request for expedited processing. *Id.* ¶ 22. The DOD also informed Plaintiffs that the Request was being processed on behalf of the Office of the Secretary of Defense and Joint Staff. *Id.* By email dated March 17, 2016, the DOD sought clarification regarding the scope of the Request and indicated that it considered the scope of Item 5 of the Request too broad. *Id.* ¶ 23. During a telephone call with the DOD on March 18, 2016, Plaintiffs clarified the scope of the Request and agreed to a limiting construction of the Request for the purposes of the DOD's initial search, but reserved the right to proceed with the full extent of the Request after reviewing the results from the initial search. *Id.* On May 16, 2016 Plaintiffs timely filed an administrative appeal from the DOD's conclusion that Item 5 of the Request was too broad, which appeal the DOD acknowledged. *Id.* ¶ 25. However, Plaintiffs received no further correspondence, and the agency did not release any records responsive to the Request before the filing of this action. *Id.* ¶ 26.

3. **DIA:** By letter dated March 10, 2016, the DIA acknowledged receipt of the Request and denied Plaintiffs' request for expedited processing. *Id.* ¶ 28. However, Plaintiffs received no further correspondence from the DIA regarding the Request, and the DIA did not release any records responsive to the Request before the filing of this action. *Id.* ¶ 30.

4. **Air Force:** By letter dated March 22, 2016, the Air Force acknowledged receipt of the Request and denied Plaintiffs' request for expedited processing. *Id.* ¶ 32. During

---

[3] Plaintiffs' motion does not seek fees from the Army or the Marines. By letter dated May 7, 2016, the Army disclosed eight pages of records and two spreadsheets in partial response to the Request. Compl. ¶ 12 n.1. For that reason, the Army was not named in Plaintiffs' lawsuit. While the Marines were named in Plaintiffs' lawsuit, it issued a no-records response on June 24, 2016, shortly after Plaintiffs filed suit. Accordingly, Plaintiffs do not seek fees from it either. Neither the Army nor the Marines is discussed further below.

a telephone conversation with the Air Force on April 4, 2016, Plaintiffs agreed to a limiting construction of the Request for the purposes of the Air Force's initial search, but reserved the right to proceed with the full extent of the Request after reviewing the results from the initial search. *Id.* ¶ 33. Plaintiffs received no further correspondence from the Air Force regarding the Request, and the agency did not release any records responsive to the Request before the filing of this action. *Id.* ¶ 35.

5. **Navy:** By letter dated April 18, 2016, the Navy acknowledged receipt of the Request. *Id.* ¶ 37. Plaintiffs received no further correspondence from the Navy regarding the Request, and Navy did not release any records responsive to the Request prior to the filing of this action. *Id.* ¶ 38.

6. **NGIA:** By letter dated March 14, 2016, the NGIA acknowledged receipt of the Request. *Id.* ¶ 40. During a telephone conversation on March 25, 2016, the NGIA informed Plaintiffs that their request for expedited processing had been granted. *Id.* ¶ 41. During a subsequent conversation on April 20, 2016, the NGIA sought clarification regarding the scope of the Request. *Id.* ¶ 42. Plaintiffs agreed to a limiting construction of the Request for the purposes of the NGIA's initial search, but reserved the right to proceed with the full extent of the Request after reviewing the results from the initial search. *Id.* Following an email from NGIA to Plaintiffs on May 6, 2016 memorializing this agreement, *id.*, Plaintiffs received no further correspondence from the NGIA, and no records responsive to the Request were released prior to the filing of this action, *id.* ¶ 43.

7. **NRO:** By letter dated March 16, 2016, the NRO acknowledged receipt of the Request and denied Plaintiffs' request for expedited processing. *Id.* ¶ 45. Plaintiffs received no further correspondence from the NRO regarding the Request, and NRO did not release any records responsive to the Request prior to the filing of this action. *Id.* ¶ 47.

8. **NSA:** By letter dated March 17, 2016, the NSA acknowledged receipt of the Request and denied Plaintiffs' request for expedited processing. *Id.* ¶ 49. The NSA also explained that it had construed the Request as seeking only records related to prepublication review submissions for use in an "unofficial" capacity, and as excluding submissions for use during the course of "official" agency duties. *Id.* During a telephone conversation with the NSA on March 28, 2016, Plaintiffs objected to this construction of the Request. *Id.* ¶ 50. Plaintiffs also agreed to a limiting construction of the Request for the purposes of the NSA's initial search, but reserved the right to proceed with the full extent of the Request after reviewing the results from the initial search. *Id.* On May 16, 2016, Plaintiffs timely filed an administrative appeal from the NSA's decision to construe the Request as seeking only records related to prepublication review submissions for use in an "unofficial" capacity. *Id.* ¶ 52. Plaintiffs received no further correspondence from the NSA, and the agency released no records responsive to the Request, before Plaintiffs filed suit. *Id.* ¶ 53.

9. **DOE:** By letter dated March 24, 2016, the DOE acknowledged receipt of the Request and denied Plaintiffs' request for expedited processing. *Id.* ¶ 61. Plaintiffs received no further correspondence from the DOE regarding the Request, and DOE did not release any records responsive to the Request prior to the filing of this action. *Id.* ¶ 63.

10. **DHS:** By letter dated March 17, 2016, the DHS acknowledged receipt of the Request and denied Plaintiffs' request for expedited processing. *Id.* ¶ 65. Plaintiffs received no further correspondence from the DHS regarding the Request, and the DHS did not release any records responsive to the Request prior to the filing of this action. *Id.* ¶ 67.

11. **Coast Guard:** By email dated April 6, 2016, the Coast Guard acknowledged receipt of the Request. *Id.* ¶ 69. Plaintiffs received no further correspondence from the Coast Guard regarding the Request, and the Coast Guard did not release any records responsive to the Request prior to the filing of this action. *Id.* ¶ 70.

12. **DOJ:** By letter dated March 28, 2016, the DOJ acknowledged receipt of the Request and acknowledged forwarding the Request to the National Security Division as the component most likely to have responsive records. *Id.* ¶ 72. By letter dated April, 8, 2016, the NSD acknowledged receipt of the Request. *Id.* By email dated April 18, 2016, the NSD denied Plaintiffs' request for expedited processing. *Id.* Plaintiffs received no further correspondence from the DOJ regarding the Request, and the DOJ did not release any records responsive to the Request prior to the filing of this action. *Id.* ¶ 74.

13. **DEA:** By letter dated March 10, 2016, the DEA acknowledged receipt of the Request. *Id.* ¶ 76. On March 21, 2016, the DEA informed Plaintiffs that the Request had been forwarded to the Office of Chief Counsel as the office within the DEA most likely to maintain responsive records. *Id.* On March 22, 2016, the DEA denied Plaintiffs' request for expedited processing. By email dated June 10, 2016, the DEA sought clarification regarding the scope of Item 1 of the Request, which clarification the ACLU provided. *Id.* ¶ 78. Plaintiffs received no further correspondence from the DEA regarding the Request, and the DEA did not release any records responsive to the Request prior to the filing of this action. *Id.* ¶ 79.

14. **FBI:** By letter dated March 18, 2016, the FBI acknowledged receipt of the Request. *Id.* ¶ 81. By letter dated April 15, 2016, the FBI denied Plaintiffs' request for expedited processing. *Id.* On May 10, 2016, the FBI informed Plaintiffs that it had located responsive records and asked Plaintiffs whether they were willing to pay an estimated $85 in duplication fees. On June 9, 2016, Plaintiffs responded that they were willing to pay if the FBI's denial of their request for a fee waiver were eventually affirmed in litigation. *Id.* ¶ 83. Plaintiffs received no further correspondence from the FBI regarding the Request, and the FBI did not release any records responsive to the Request prior to the filing of this action. *Id.* ¶ 84.

15. **DOS:** By letter dated March 11, 2016, the DOS acknowledged receipt of the Request and denied Plaintiffs' request for expedited processing. *Id.* ¶ 86. Plaintiffs received no further correspondence from the DOS regarding the Request, and the DOS did not release any records responsive to the Request prior to the filing of this action. *Id.* ¶ 88.

16. **DOT:** By letter dated April 26, 2016, the DOT acknowledged receipt of the Request and denied Plaintiffs' request for expedited processing. *Id.* ¶ 90. Plaintiffs received no further correspondence from the DOT regarding the Request, and the DOT did not release any records responsive to the Request prior to the filing of this action. *Id.* ¶ 92.

17. **ODNI:** By letter dated March 11, 2016, the ODNI acknowledged receipt of the Request and denied Plaintiffs' request for expedited processing. *Id.* ¶ 94. The ODNI also enclosed a record that was partially responsive to Item 5 of the Request. *Id.* Plaintiffs received no further correspondence from the ODNI regarding the Request, and no further records were released by the ODNI prior to the filing of this action. *Id.* ¶ 96.

Thus, more than three months after Plaintiffs submitted the Request, only one Defendant agency, the ODNI, had produced anything, and it released only a single partially responsive record. Plaintiffs filed this lawsuit to enforce the Request on June 21, 2016. Dkt. No. 1.

## B.   Proceedings before this Court and the disclosure of responsive information

Only two Defendant agencies sent Plaintiffs final responses to the Request after Plaintiffs filed suit, but before the government filed its answer: the DEA on July 7, 2016 (after releasing ten pages, in full or in part); and DHS on September 2, 2016 (after releasing 305 pages, in full or in part).[4] Dkt. No. 23. None of the remaining agencies or agency components released any responsive records to Plaintiffs during this time.

On September 7, 2016, the government filed an answer denying that Defendants had improperly withheld records and raising as affirmative defenses that "[t]he Complaint fails to state a claim upon which relief may be granted," that "Defendants' actions did not violate the FOIA or

_____

[4] As noted above, Plaintiffs also received a no-records response from the Marines on June 24, 2016.

any other statutory regulatory provision," and that "Plaintiff is not entitled to compel production of records exempt from disclosure by one or more exemptions of the FOIA." Dkt. No. 20 at 1.

On September 30, 2016, the Court issued a Standing FOIA Order directing the parties to meet and confer and propose a joint scheduling order for further proceedings in the case by October 7, 2016, Dkt. No. 21, which deadline was later extended to November 4, 2016, Dkt. No. 22. The Standing Order provided that the proposed joint scheduling order must address seven matters, including "[t]he status of Plaintiff's FOIA request," "[t]he anticipated number of documents responsive to Plaintiff's FOIA request," and "[t]he anticipated date(s) for release of documents responsive to Plaintiff's FOIA request." Dkt. No. 21.

On November 4, 2016, the parties filed a proposed joint scheduling order, in which the government provided the following information:

1.  The DOD, Air Force, Navy, and NRO were "in the process of identifying" potentially responsive records and "anticipate[d]" processing and producing all responsive, non-exempt records by specified dates (March 1, 2017, June 1, 2017, May 1, 2017, and June 1, 2017, respectively).

2.  The DIA had "begun searching for" responsive records, and the ODNI had released one record, but was conducting further searches. They both "anticipate[d]" processing and producing all responsive, non-exempt records by February 3, 2017.

3.  The Coast Guard had "conducted a search" for responsive records and "anticipate[d]" processing and producing all responsive, non-exempt records by November 18, 2016. Similarly, the NSA and DOJ had conducted a "preliminary search" and identified approximately 96 potentially responsive pages and 150 records, respectively. They both "anticipate[d]" processing and producing all responsive, non-exempt records by February 3, 2017. In addition, the NSA had identified several spreadsheets with potentially responsive information and "anticipate[d] producing responsive information from these records by June 1, 2017.

4.  The CIA and DOT "estimate[d]" that they had approximately 100 potentially responsive records and 45 responsive records, respectively. They "anticipate[d]" processing and producing all responsive, non-exempt records by March 3, 2017 and January 30, 2017.

5.   The DOE had "completed its search" and identified 268 pages of potentially responsive records. DOE "anticipate[d]" processing and producing all responsive, non-exempt records by December 2, 2016. Similarly, the NGIA had preliminarily "located" approximately 96 pages of potentially responsive records and "anticipate[d]" processing and producing all responsive, non-exempt records by December 8, 2016. To the extent it located additional responsive records, it "anticipate[d] processing and producing responsive records by February 16, 2017.

6.   The DOS had located over 7,000 potentially responsive records. It "anticipate[d]" completing an initial production of responsive, non-exempt records by December 16, 2016, and would produce additional records on a rolling basis as necessary.

7.   The FBI had located approximately 2,602 pages of potentially responsive records and begun making rolling productions, starting on October 3, 2016. It "anticipate[d]" processing and producing all responsive, non-exempt records by February 3, 2017.[5]

Five Defendant agencies and agency components issued final responses over the next several months: the Coast Guard on November 17, 2016 (after releasing one page, in part); the DOE on December 30, 2016 (after releasing 24 documents, in full or in part); the DOD on February 23, 2017 (after releasing 2,931 pages of "charts/spreadsheets," in full or in part); the DOJ-NSD on April 7, 2017 (after producing three documents, in full or in part); and the NGIA on July 12, 2017 (after releasing 208 pages, in full or in part).

On August 24, 2017, Plaintiffs stipulated to the dismissal with prejudice of their claims against the Coast Guard, DOE, DOD, DOJ-NSD, NGIA, the Marines, and DEA, while reserving

---

[5] Upon consideration of this proposed scheduling order, the Court entered a minute order directing the parties to file another joint proposed scheduling order by April 7, 2017. The parties submitted additional joint proposed scheduling orders updating the Court on the status of the Request on April 7, 2017; June 23, 2017; August 25, 2017; October 20, 2017; December 22, 2017; March 9, 2018; May 18, 2018; August 10, 2018; September 21, 2018; December 10, 2018; February 11, 2019; July 26, 2019; and August 7, 2019. Dkt. Nos. 26, 27, 29, 30, 32, 36, 37, 39, 40, 42, 45. On each occasion, save the last one, the Court also entered a minute order directing the filing of a further joint proposed scheduling order. The last joint proposed scheduling order proposed a summary judgment briefing schedule.

their right to seek any attorney's fees to which they were entitled from those agencies or agency components. Dkt. No. 28.

In the months following this stipulation, Plaintiffs received several additional final responses from: the NRO on January 20, 2017 (after releasing 100 pages, in full or in part); the DIA on March 10, 2017 (after releasing 107 pages, in full or in part); the ODNI on March 28, 2017 (after releasing 534 pages, in full or in part); the DOT on April 7, 2017 (after releasing four documents, in full or in part); the Air Force on June 9, 2017 (after releasing 735 pages of difficult-to-read scanned charts); the DOS on June 11, 2018 (after releasing 732 documents, in full or in part); the Navy on June 15, 2017 (after releasing 258 pages, in full or in part); the CIA on June 23, 2017 (after releasing 88 documents, in full or in part); the NSA on June 22, 2017 (after releasing 24 documents, in full or in part); and the FBI on July 1, 2019 (after releasing 9,006 pages, in full or in part).[6]

On August 15, 2019, Plaintiffs stipulated to the dismissal with prejudice of their claims against Defendants DIA, DHS, DOS, DOT, FBI, NRO, NSA, Navy, ODNI, while again reserving their right to seek any attorney's fees to which they were entitled from those agencies or agency components. Dkt. No. 51. That left only Defendants CIA and Air Force. Although Plaintiffs did not intend to challenge any of the Air Force's withholdings, it declined to dismiss the agency component at this time because there were outstanding issues concerning the legibility of several charts it had produced.

---

[6] In the Joint Proposed Scheduling Order filed on September 21, 2018, the FBI initially represented that it had finished producing all responsive, non-exempt records. The government subsequently informed Plaintiffs that the FBI had conducted additional searches and located 5,738 potentially responsive records. Dkt. No. 45. The agency did not provide any explanation for why it had not previously located these records. *Id.* The FBI completed production of all responsive, non-exempt material from these records on July 1, 2019.

### C.        Summary judgment motions and briefing

On October 10, 2019, Plaintiffs filed a cross-motion for partial summary judgment, challenging a single redaction in a single CIA document. The redacted information consisted of a list of several current or former CIA employees who, as of May 2009, had been granted an exemption from the agency's prepublication review process. The names were redacted pursuant to FOIA Exemptions 3 and 6. One of the names was also redacted pursuant to Exemption 1. In a memorandum opinion and order entered on November 24, 2021, the Court granted in part and denied in part the Plaintiffs' cross motion. Dkt. No. 66. The Court concluded that the CIA properly invoked Exemptions 1 and 3 to withhold the names of the CIA employees, but not Exemption 6. Plaintiffs do not seek any attorney's fees for the time spent litigating this partial summary judgment motion.

On December 8, 2021, the parties jointly requested that the Court enter final judgment in this matter in favor of the CIA. Dkt. 68. Plaintiffs stipulated to the dismissal with prejudice of their claims against the Air Force—which had by then resolved the legibility issues concerning the charts it produced—while reserving their right to seek attorney's fees. Dkt. No. 67. Plaintiffs also moved to extend the deadline for filing a motion for attorney's fees until February 21, 2021. Dkt. 69. On December 9, 2021, the Court entered judgment against the CIA, Dkt. 71, and granted Plaintiffs' motion to extend the deadline for filing a fees motion, *id.*

### Argument

Plaintiffs are entitled to an award of attorney's fees and litigation costs in the amounts of $17,622.53 plus $700.00, respectively. FOIA provides that courts "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred" during a FOIA lawsuit "in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). To

recover attorney's fees and costs, plaintiffs must satisfy two tests: (1) "fee eligibility," which "asks whether the plaintiff substantially prevailed and thus may receive fees," and (2) "fee entitlement," which "considers a variety of factors to determine whether the plaintiff *should* receive fees." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011) (cleaned up). If a plaintiff satisfies these two tests, courts must then consider whether the requested award is "reasonable." 5 U.S.C. § 552(a)(4)(E)(i).

## I.    Plaintiffs are eligible to receive an award of fees and expenses.

A plaintiff is eligible for a fee award if they "substantially prevail[]" in the lawsuit by "obtain[ing] relief through" (1) "a judicial order," or (2) "a voluntary or unilateral change in position by the agency, if [their] claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii); *see also Brayton*, 641 F.3d at 525. Under the second theory of eligibility, often termed the "catalyst theory," the relevant question is "whether the institution of and prosecution of the litigation caused the agency to release the documents obtained." *Grand Canyon Tr. v. Bernhardt*, 947 F.3d 94, 95, 97 (D.C. Cir. 2020) (cleaned up). "[T]he mere filing of the complaint and the subsequent release of documents is insufficient to establish causation" for purposes of this theory, *id.* (quoting *Weisberg v. DOJ*, 745 F.2d 1476, 1496 (D.C. Cir. 1984)), although "such timing remains a salient factor in the Court's analysis," *Env't Integrity Project v. Gen. Servs. Admin.*, No. 18-cv-0042 (KBJ), 2021 WL 3464337, at *4 (D.D.C. Aug. 6, 2021) (cleaned up). Instead, "the plaintiff has the burden of showing 'that it is more probable than not that the government would not have performed the desired act absent the lawsuit.'" *Env't Def. Fund v. EPA*, No. 17-cv-02220 (APM), 2022 WL 136792, at *3 (D.D.C. Jan. 13, 2022) (quoting *Pub. Citizen Health Res. Grp. v. Young*, 909 F.2d 546, 550 (D.C. Cir. 1990)).

Plaintiffs satisfy that test for several reasons. First, all of the Defendant agencies and agency components missed the statutory twenty-day deadline for making a determination on the Request. *See id.* at \*4 (treating EPA's failure to make a "determination" within the time limit as relevant to establishing the plaintiff's eligibility under the catalyst theory); *EPIC v. DHS*, 218 F. Supp. 3d 27, 42–43 (D.D.C. 2016) (same); *see also CREW v. FEC*, 711 F.3d 180 (D.C. Cir. 2013) (holding that to make a "determination," an agency "must at least (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse").

Second, the agencies' initial communications with Plaintiffs were largely "sporadic and nonsubstantive." *Env't Def. Fund*, 2022 WL 136792, at \*4. The bulk of the agencies (including the DIA, Navy, NRO, DOE, DHS, Coast Guard, DOJ, DOS, and DOT) did not follow up at all after acknowledging receipt of the Request and/or denying Plaintiffs' request for expedited processing. The CIA provided Plaintiffs only the empty assurance that the Request was "still in process." Compl. ¶ 19. While the DEA, DOD, Air Force, and NGIA sought clarifications regarding the scope of the Request, resulting in some cases in Plaintiffs agreeing to a limiting construction of the Request for the purposes of an agency's initial search, very little seemed to come from this back-and-forth. Plaintiffs did not hear back from any of the agencies after providing clarification until they filed suit. Compl. ¶¶ 26, 35, 43, 59, 79. Similarly, while the FBI informed Plaintiffs that it had located responsive records and asked whether Plaintiffs would be willing to pay duplication fees, the agency did not follow up after Plaintiffs promptly responded. *Id.* ¶¶ 83–84. Finally, although the ODNI released a single record that was partially responsive to one item of the

Request, it did not apprise Plaintiffs of any further efforts to search for and review responsive documents. *Id.* ¶¶ 94, 96.

Third, except for the ODNI, none of the Defendant agencies produced any responsive records before Plaintiffs filed suit, and the vast majority of them failed to produce anything until *after* the Court issued a FOIA Standing Order, which directed the parties to file a Joint Proposed Scheduling Order that addressed the status of the Request, the anticipated number of documents responsive to the Request, and the anticipated date of release of those documents. *See* Dkt. 21. The only agencies that followed up with Plaintiffs before the Court's Standing Order, which was issued on September 30, 2016, were the DEA (which sent a final response just two weeks after Plaintiffs sued), and the DHS (which sent a final response five days before the government was due to file an answer to Plaintiffs' complaint). All agencies were plainly motivated to process the Request more quickly by the lawsuit. *See EPIC v. DHS*, 218 F. Supp. 3d at 41 ("[A]n agency's sudden acceleration in processing a FOIA request may lead to the conclusion that the lawsuit substantially caused the agency's compliance with FOIA.") (cleaned up). The FBI made its first rolling production on October 3, 2016, more than three months after Plaintiffs sued. The remaining agencies released records only after proposing a timeline for doing so in the parties' first Joint Proposed Scheduling Order, which was filed on November 4, 2016. Dkt. No. 23. *See, e.g.*, *Env't Def. Fund*, 2022 WL 136792, at *5 (treating as significant the lack of "genuine production of responsive documents prior to the initiation of litigation"); *see also EPIC v. DHS*, 218 F. Supp. 3d at 41–42 (similar). As a result of these productions, Plaintiffs received over 18,000 additional pages, dwarfing Defendants' pre-litigation production of one page.

Fourth, the Defendant agencies "did not acknowledge any legal obligation to produce responsive records before the litigation commenced." *See Env't Def. Fund*, 2022 WL 136792, at

*5; *see also* Memorandum Opinion & Order, Sierra Club v. EPA*, No. 19-cv-3018 (APM) (D.D.C. Mar. 31, 2021), ECF No. 30, at 4 (considering the agency's change in litigation position as to whether it would be producing responsive records between the answer and subsequent status reports). As noted above, none of the agencies complied with the twenty-day time limit for making a determination on the Request, and apart from the ODNI (which produced a lone partially responsive record), the CIA (which provided only a hollow assurance of processing), and the FBI (which indicated it had located some unspecified number of records without committing to release them), they did not "indicate[] in [any] pre-lawsuit communications that [they] would begin producing responsive records." *See id.* The answer filed by the government on September 7, 2016, more than six months after Plaintiffs submitted the Request, contained no such indication either. *See* Dkt. No. 20. In other words, it was only after Plaintiffs sued to enforce the Request that the agencies finally acknowledged that they would process and produce all responsive, non-exempt records. *See* Dkt. No. 23 (Joint Proposed Scheduling Order). "That is a change in position by the agency, and it was catalyzed by the commencement of the lawsuit." *Env't Def. Fund*, 2022 WL 136792, at *5.

Fifth, two agencies, the DOD and NSA, initially objected to the production of certain categories of documents sought by the Request, but effectively withdrew their objection after Plaintiffs sued. By email dated March 17, 2016, the DOD informed Plaintiffs that it considered the scope of Item 5 of the Request—which sought "statistics relating to prepublication review"—too broad. Compl. ¶ 23. Plaintiffs timely filed an administrative appeal from that conclusion, which the DOD acknowledged. *Id.* ¶ 25. But they received no further correspondence from the agency before they filed suit. *Id.* ¶ 26. The NSA, for its part, informed Plaintiffs that it had unilaterally narrowed the Request without any consultation whatsoever. By letter dated March 17, 2016, it

explained that it had construed the Request as seeking only records related to prepublication-review submissions for use in an "unofficial" capacity, and as excluding submissions for use during the course of "official" agency duties. *Id.* ¶ 49. Here, too, Plaintiffs timely filed an administrative appeal from the NSA's limiting construction, but received no further response before filing this action. *Id.* ¶ 53. When the agencies "dragged [their] feet" in issuing a decision on Plaintiffs' administrative appeals, Plaintiffs felt they had no recourse but to sue—and this decision caused the agencies to reverse their earlier positions. *See* Memorandum Opinion & Order at 5, Sierra Club v. EPA*,* No. 19-cv-3018 (APM) (finding that Sierra Club's lawsuit caused the EPA to reverse its position on the reasonable specificity of their FOIA request in similar circumstances).

It follows that it is "more probable than not" that Plaintiffs' lawsuit caused the requested records to be released and to be released far more quickly than they would have been without litigation. *Grand Canyon Tr.*, 947 F.3d at 97. Plaintiffs have therefore substantially prevailed under the catalyst theory.

## II.   Plaintiffs are entitled to their fees and expenses.

To determine whether FOIA requestors are entitled to attorney's fees, courts in this Circuit look to four factors: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding." *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 371 (D.C. Cir. 2008) (quoting *Tax Analysts v. DOJ*, 965 F.2d 1092, 1093 (D.C. Cir. 1992)). Courts weigh these factors to honor the intent behind the attorney's fees provision of FOIA, which is to incentivize FOIA suits that would provide useful information to citizens about matters of public concern. Here, all four factors—and the intent behind them—counsel in favor of granting Plaintiffs fees.

### A.     The litigation produced a clear benefit to the public.

The first factor assesses the public benefit derived from the case, based on two considerations: "the effect of the litigation for which the fees are requested and the potential public value of the information sought." *Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008). Both of these considerations clearly support a fees award.

First, this litigation is responsible for the release of thousands of pages of agency records. As discussed above, all eighteen Defendant agencies and agency components missed the statutory deadline for making a determination on the requests, and all but one of them began producing documents only in response to this lawsuit—making the litigation the cause of this contribution to public understanding. *Webster v. DOJ*, No. 02-603 (RC), 2021 WL 4243414, at *5 (D.D.C. Sept. 17, 2021) ("The factor is a variation on the earlier question of whether a plaintiff has substantially prevailed" (quotations omitted)).

Second, the records released as a result of this litigation directly and substantially served the public interest. This prong measures "the significance of the contribution that the released information makes to the fund of public knowledge." *McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 712 (D.C. Cir. 2014); *see also Pinson v. Lappin*, 806 F. Supp. 2d 230, 236 (D.D.C. 2011). The records obtained by Plaintiffs through this litigation amply satisfy this prong. The increasing dysfunction and politicization of the prepublication review system has been an ongoing matter of public debate for some years.[7] And recent high-profile fights concerning the review of

---

[7] *See, e.g.*, Nada Bakos & John Nixon, *The CIA is Delaying Our Books' Publication and That Hurts Our Democracy*, Wash. Post (Dec. 22, 2016), https://perma.cc/NA9G-PLK6; Jack Goldsmith & Oona A. Hathaway, *The Government's Prepublication Review Process is Broken*, Wash. Post (Dec. 25, 2015), https://perma.cc/GZR9-8H2M; *see also* 115 Cong. Rec. H3300–01 (daily ed. May 3, 2017) (statement of Rep. Nunes) (recognizing dysfunction of the system and calling for reform); 115 Cong. Rec. S2750 (daily ed. May 4, 2017) (statement of Sen. Burr) (same).

books by former National Security Advisor John Bolton and former Secretary of Defense Mike Esper have increased public attention further.[8]

The released records contributed to this vital debate in several ways. First, Plaintiffs have published all of the records online through the website of Plaintiffs' co-counsel, the Knight First Amendment Institute at Columbia University.[9] Second, counsel for Plaintiffs have published multiple blog posts analyzing the documents and drawing out key insights.[10] For example, one blog post highlighted the ways in which the documents confirm that the system of prepublication review is broken. The post explained that, prior to this lawsuit, many of the documents outlining agencies' prepublication review requirements were not publicly available—leaving members of the public and in some cases even former employees in the dark as to the scope of agency review

---

[8] Michael S. Schmidt & Charlie Savage, *White House Accused of Improperly Politicizing Review of John Bolton's Book*, N.Y. Times (Sept. 23, 2020), https://perma.cc/97S7-HDN7 (discussing White House intervention into prepublication review of a memoir by a former national security advisor); John Wagner, *Former Defense Secretary Esper Sues Pentagon, Claiming Portions of Memoir Are Being Improperly Redacted*, Wash. Post (Nov. 29, 2021), https://perma.cc/NQD3-99CU (describing litigation around a manuscript written by a former defense secretary "arbitrarily redacted" through the prepublication review process).

[9] Knight First Amendment Institute at Columbia University, ACLU v. CIA *&* Knight Institute v. DOD, https://knightcolumbia.org/cases/knight-institute-v-dod (last accessed Feb. 21, 2022). The links on this page currently direct members of the public to a repository of documents that resides on DocumentCloud. The Knight Institute intends to make all of the documents available through a "Reading Room" on its own website in due course. *See* Knight First Amendment Institute at Columbia University, *Reading Rooms*, https://knightcolumbia.org/reading-room/ (last accessed Feb. 21, 2022). This Reading Room will present the documents in a way that makes them easier to search, understand, and analyze.

[10] *See, e.g.*, Ramya Krishnan, Knight First Amendment Institute at Columbia University, *The Government's Own Documents Show That Prepublication Review Is Broken* (Apr. 4, 2019), https://knightcolumbia.org/content/governments-own-documents-show-prepublication-review-broken; Ramya Krishnan, Knight First Amendment Institute at Columbia University, *Comey's Book and Prepublication Review* (Apr. 16, 2018), https://knightcolumbia.org/content/comeys-book-and-prepublication-review.

schemes.[11] The post also linked to documents illuminating a system in crisis, with the amount of material submitted for review increasing dramatically over time, creating more frequent and more severe delays for authors. For example, the post linked to a draft CIA Inspector General report indicating that "PRB is struggling with achieving timeliness, and to some extent thoroughness/quality"—with book-length manuscripts "tak[ing] over a year."[12] Third, based on the records they obtained, Plaintiffs were for the first time able to create an interactive resource summarizing the prepublication review obligations imposed by each of the intelligence community agencies, and linking to annotated versions of the underlying documents.[13] Plaintiffs' counsel have referred multiple former employees to this resource to understand their obligations, a particularly important contribution in light of many agencies' reluctance to clarify former employees' obligations on request. *See* Abdo Declaration ¶ 4. Fourth, several news organizations have published articles about the prepublication review process citing or otherwise relying on documents obtained through this litigation.[14] *See EPIC v. DHS*, 999 F. Supp. 2d 61, 68 (D.D.C.

---

[11] For instance, as a result of this litigation, the CIA disclosed an agency regulation "set[ting] forth CIA policies and procedures for the submission and review of material proposed for publication"; prior to this, the only version available to the public was heavily redacted and more than eleven years old. It also provided three nondisclosure agreements, including two that are in use across intelligence agencies, a particularly vital contribution in light how *even former employees* frequently do not have access to the agreements governing their obligations—another fact learned from this release of documents. *See* Krishnan, *The Government's Own Documents Show That Prepublication Review Is Broken*, *supra* note 10.

[12] *See id.*

[13] Knight First Amendment Institute at Columbia University, *Interactive Chart: Prepublication Review by Agency and Secrecy Agreement* (Aug. 27, 2019), https://knightcolumbia.org/content/prepublication-review-by-agency-and-agreement.

[14] *See* Charlie Savage, *Ex-National Security Officials Sue to Limit Censorship of Their Books*, N.Y. Times (Apr. 2, 2019), https://perma.cc/J2Z9-BHF6 (discussing the increase in materials reviewed under prepublication review, based on "documents the A.C.L.U. and Knight Institute obtained under the Freedom of Information Act"); Alex Emmons, *Widespread Censorship of Former Government Employees Violates the First Amendment, Lawsuit Says*, The Intercept (Apr. 2, 2019), https://perma.cc/WCQ9-C46W (citing "a draft inspector general's report unearthed" in

2013) (describing coverage in the Washington Post and "several other prominent media outlets" as leaving "no doubt" that documents served the public understanding). Fifth, Plaintiffs have called for comprehensive reform of the prepublication review system based on the documents.[15] Sixth, the documents formed part of the factual substrate of a major First Amendment challenge to several agency review schemes, which has spurred further debate about the schemes' constitutionality.[16]

Moreover, the public interest in the released records is inarguable: they shed light on how federal agencies review and censor their current and former employees—individuals who are "often in the best position to know what ails the agencies for which they work." *Lane v. Franks*, 573 U.S. 228, 236 (2014) (quotations omitted). This is particularly important for the military and intelligence agencies that are Defendants in this suit, because executive power is at its height in the context of national security and foreign policy, making public knowledge an even more vital check on the exercise of executive authority. *See N.Y. Times Co. v. U.S.* (*Pentagon Papers*), 403 U.S. 713, 728 (1971) (Stewart, J., concurring) ("[T]he only effective restraint upon executive policy and power in the areas of national defense and international affairs may lie . . . in an informed and critical public opinion . . . .").

---

response to this lawsuit); Deanna Paul, *These Former Officers Say the CIA and NSA Are Censoring Them. Now They're Suing.*, Wash. Post (Apr. 2, 2019), https://perma.cc/WN49-RHV8 (citing records "obtained by the ACLU and the Knight Institute through a Freedom of Information Act request").

[15] *See* Alex Abdo, Jameel Jaffer, Meenakshi Krishnan, & Ramya Krishnan, *How A New Administration—And A New Congress—Can Fix Prepublication Review: A Roadmap for Reform*, Just Security (Nov. 24, 2020), https://perma.cc/TZT5-ZZ99.

[16] The lawsuit was filed by Plaintiffs and their co-counsel on behalf of five former intelligence agency employees, and seeks only injunctive relief. *See* Complaint, Edgar v. Coats, No. 8:19-cv-00985-GJH, at ¶¶ 28, 32, 42, 48, 54 (D. Md. Apr. 4, 2019); *see also* Jack Goldsmith & Oona A. Hathaway, *Prepublication Review and the Quicksand Foundation of* Snepp, Lawfare (Jan. 31, 2022), https://perma.cc/47U8-F7AW; Jack Goldsmith & Oona A. Hathaway, *How the U.S. Government Built the Largest System of Prior Restraint in History*, Lawfare (Feb. 7, 2022), https://perma.cc/4Y5Q-5RPE.

Thus, the documents Plaintiffs obtained through this litigation have contributed directly to the public's understanding of a subject of significant public interest. As a result, the first factor of the Court's entitlement analysis weighs decisively in Plaintiffs' favor.

### B.   Plaintiffs derived no commercial benefit from the records they obtained, and they sought the records solely to serve the public interest.

The second and third factors—the existence of any commercial benefit to Plaintiffs and the nature of their interests—also clearly cut in favor of awarding fees. These two factors, which are "closely related and often considered together," *CREW v. DOJ*, 820 F. Supp. 2d 39, 45 (D.D.C. 2011), speak to the Plaintiffs' motivation in bringing suit, and allow courts to "distinguish[] between requesters who seek documents for public informational purposes and those who seek documents for private advantage," *Davy*, 550 F.3d at 1160. Plaintiffs and their counsel are not-for-profit organizations that work to further government transparency and public understanding, making them squarely among the set of requestors that FOIA's fees provision intends to compensate.

Plaintiffs derive no commercial benefit from the records released as a result of this litigation. As the D.C. Circuit has recognized, it is generally inappropriate to award fees to litigants who seek information through FOIA for a personal commercial benefit. *See Davy*, 550 F.3d at 1160 ("[T]hose who seek documents for private advantage . . . cannot deserve a subsidy as they benefit only themselves and typically need no incentive to litigate."). In contrast, courts have routinely found organizations such as Plaintiffs—non-profit, mission-driven organizations that promote transparency and accountability in government, *see* Compl. ¶¶ 9–10—to be the exact type of requestor that FOIA's fee provision aims to compensate. *See All. for Responsible CFC Policy, Inc. v. Costle*, 631 F. Supp. 1469, 1471 (D.D.C. 1986) ("[A] court would usually allow recovery

of fees where the complainant was . . . a nonprofit public interest group" (quoting S. Rep. No. 854, at 19)).

Plaintiffs' sole motivation in filing this suit—as with all of their FOIA suits—was to serve the public interest. Plaintiffs pursue their mission in part by using FOIA requests to obtain documents concerning government activities, posting those documents on their websites, and educating the public on their contents. Compl. ¶ 9. Here, as discussed, the documents produced in response to Plaintiffs' suit directly fed into their litigation, advocacy, and public education efforts relating to matters of public concern. This is the exact interest contemplated by FOIA fee awards. *See EPIC*, 999 F. Supp. 2d, at 69 ("[T]hose 'requesters who seek documents for public informational purposes' are favored by FOIA, and they 'engage in the kind of endeavor for which a public subsidy makes some sense.'" (quoting *Davy*, 550 F.3d at 1160)).

Because Plaintiffs are "non-profit organizations . . . which 'aim to ferret out and make public worthwhile, previously unknown information—precisely the activity that FOIA's fees provision seeks to promote'"—both the second and third factors weigh heavily in favor of granting fees to Plaintiffs. *Id.*

### C. Defendants lacked any reasonable basis for their dilatory conduct.

The final factor—the reasonableness of the agency's conduct—asks whether the government "had a reasonable basis in law" to withhold the records, and generally whether it had "been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Davy*, 550 F.3d at 1162. The burden rests on the government "of showing it behaved reasonably." *EPIC*, 218 F. Supp. 3d, at 45–46.

In this case, the Defendant agencies and agency components did not act reasonably, as they delayed acting on Plaintiffs' Request in violation of FOIA's deadlines, until compelled to by this

lawsuit. *See Davy*, 550 F.3d at 1166 (Tatel, J., concurring) ("[T]his fourth factor is intended to . . . incentiviz[e] the government to promptly turn over—before litigation is required—any documents that it ought not withhold."); *Pinson*, 806 F. Supp. 2d, at 237 ("Only after this litigation commenced did the BOP fulfill its obligations under the FOIA . . . . The BOP's response to plaintiff's FOIA request was not reasonable under the circumstances . . . ."). Plaintiffs submitted the Request on March 3, 2016. All eighteen defendant agencies failed to comply with the twenty-day time limit for responding to the Request, without any "reasonable basis in law." *See* 5 U.S.C. § 552(a)(6)(A)(i); *Davy*, 550 F.3d at 1162. Although the agencies timely acknowledged receipt of the Request, only one (the ODNI) produced anything prior to the filing of this suit more than three months later, and it produced only a single, partially responsive record. Plaintiffs resorted to litigation out of necessity to force Defendants into compliance with their statutory duties, based on their failure to respond.

## III.  Plaintiffs' requested fee is reasonable.

Plaintiffs seek an award of $17,622.53 in attorney's fees and $700.00 in costs based on the reasonable number of attorney hours Plaintiffs and their counsel devoted to this matter and applicable billing rates. In a FOIA case, a court may award "reasonable" fees to the plaintiff. 5 U.S.C. § 552(a)(4)(E)(i). To determine whether a request is reasonable, courts look at the number of hours reasonably billed by counsel and the hourly rate counsel requests. *See Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1517 (D.C. Cir. 1988) (en banc). The plaintiff has "the burden of establishing the reasonableness of its fee request." *CREW v. DOJ*, 142 F. Supp. 3d 1, 9 (D.D.C. 2015) (cleaned up). Because counsel for Plaintiffs are seasoned FOIA litigators who handled a complex multi-agency FOIA lawsuit efficiently, requiring a modest amount of time to be reimbursed, and because Plaintiffs' requested billing rates fairly approximate

23

prevailing market rates for attorneys with the experience and credentials of Plaintiffs' counsel, Plaintiffs' request for fees is reasonable.

### A.  The hours billed by Plaintiffs' counsel are reasonable.

Plaintiffs seek reimbursement of reasonable costs and approximately twenty-three hours of time spent by their attorneys working on the case. The hours for which Plaintiffs seek reimbursement are eminently reasonable, particularly in light of the complexity of their lawsuit, and the negotiations necessitated by it.

Plaintiffs' action is no ordinary FOIA lawsuit. It involved eighteen separate defendant agencies and agency components, making processing negotiations challenging and time-consuming, and necessitating frequent follow-up. The agencies took nearly three years to complete the processing and production of responsive, non-exempt records, during which time the parties submitted over a dozen status reports. Nevertheless, Plaintiffs have requested reimbursement for less than twenty-four hours spent on the case.

The requested hours represent a conservative estimate of the time counsel expended pursuing this case. For example, counsel request compensation for only 3.55 hours of time prior to the filing of this lawsuit. *See* Declaration of Alex Abdo, Exhibit B. By any metric, this is a significantly underinclusive estimate of the time required to track document requests to nineteen agencies, develop a litigation strategy, and draft, edit, and file a twenty-page Complaint. Additionally, the requested fees do not include the very substantial amount of time spent by legal fellows, paralegals, and other staff who contributed to the filing and management of the case. *See* Abdo Declaration ¶ 8.

Plaintiffs have produced "contemporaneous, complete and standardized time records [that] accurately reflect the work done by each attorney." *CREW v. FEC*, 66 F. Supp. 3d 134, 148 (D.D.C.

2014). The attorneys whose time is billed have prepared and submitted declarations describing their involvement in this case and attaching contemporaneously recorded time records. *See* Abdo Declaration; Declaration of Jameel Jaffer; Declaration of Brett Max Kaufman; Declaration of Arthur Spitzer. Plaintiffs will submit with any reply brief a complete accounting of attorney time and costs incurred in seeking attorney's fees. *See Judicial Watch, Inc. v. DOJ*, 878 F. Supp. 2d 225, 240 (D.D.C. 2012) (noting that it "is settled in this circuit that hours reasonably devoted to a request for fees are compensable" (cleaned up)).

### B.  The rates billed by Plaintiffs' counsel reflect prevailing market rates.

Reasonable attorney fee billing rates in the context of attorney's fees awards are assessed based on the "prevailing market rates of the relevant community" for the attorney's services, regardless of whether the attorneys are private counsel or employed by a non-profit organization. *Blum v. Stenson*, 465 U.S. 886, 894–95 (1984); *see also Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015). Plaintiffs have submitted sufficient evidence that their billing rates represent fair-market rates for their attorneys. *See* Abdo Declaration ¶ 7; Jaffer Declaration ¶ 5; Kaufman Declaration ¶ 5; Spitzer Declaration ¶ 4.

The reasonableness of Plaintiffs' requested rates is especially justified in light of their attorneys' substantial FOIA litigation experience and close knowledge of the prepublication review system. Plaintiffs' attorneys have litigated FOIA cases in the Supreme Court and in federal district courts and courts of appeal across the country, including this one. *See* Abdo Declaration ¶ 3; Jaffer Declaration ¶ 2; Kaufman Declaration ¶ 2; Spitzer Declaration ¶ 2. Members of Plaintiffs' legal team litigated a high-profile FOIA case regarding the abuse of prisoners overseas following the 9/11 attacks, which the New York Times called "among the most successful in the

history of public disclosure."[17] This experience allowed them to efficiently manage this suit, leading to the low number of hours requested for compensation. Plaintiffs' attorneys' specialized expertise in prepublication review similarly reduced the number of hours spent on managing the suit. *See* Abdo Declaration ¶ 4; Jaffer Declaration ¶ 3; Kaufman Declaration ¶ 3. This expertise allowed Plaintiffs' attorneys to more effectively evaluate Defendants' proposals to narrow the Request, negotiate production priorities, and generate a mutually agreeable plan for processing than counsel without this background would have been able to. Their rates reasonably reflect this.

## Conclusion

For the reasons above, the Court should award Plaintiffs $17,622.53 in attorney's fees and $700.00 in costs.

Dated: February 22, 2022

Respectfully submitted,

/s/ Ramya Krishnan

Brett Max Kaufman
American Civil Liberties Union
125 Broad Street—18th Floor
New York, NY 10004
T: 212.549.2500
F: 212.549.2654
bkaufman@aclu.org

Arthur B. Spitzer (D.C. Bar No. 235960)
.merican Civil Liberties Union
of the Nation's Capital
4301 Pennsylvania Avenue, NW,
Suite 434
Washington, D.C. 20008
T: 202.457.0800
F: 202.457.0805
artspitzer@aclu-nca.org

Ramya Krishnan (admitted *pro hac vice*)
Alex Abdo (admitted *pro hac vice*)
Knight First Amendment Institute
at Columbia University
475 Riverside Drive, Suite 302
New York, NY 10115
(646) 745-8500
ramya.krishnan@knightcolumbia.org

*Counsel for Plaintiffs*

---

[17] Scott Shane, *A.C.L.U. Lawyers Mine Documents for Truth*, N.Y. Times (Aug. 29, 2009), https://perma.cc/Y9HQ-9UPP.